**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF TENNESSEE**
**NASHVILLE DIVISION**

| | | |
|---|---|---|
| **K.W., ex rel KANISA DAVIS, et al.,** | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| **v.** | ) | **No. 3:17-cv-01014** |
| | ) | |
| **RUTHERFORD COUNTY, TENNESEE** | ) | |
| | ) | |
| **Defendant.** | ) | |

**MEMORANDUM OPINION AND ORDER**

Pending before the Court is Plaintiffs' Amended Rule 23 Motion to Certify Class. (Doc. No. 30.) Rutherford County, Tennessee ("Rutherford") has filed a response in opposition, Plaintiffs have replied, Rutherford has filed a sur-reply, and Plaintiffs have responded to that sur-reply. (Doc. Nos. 44, 50, 67, 75.) For the reasons below, the Court will hold in abeyance any ruling on Plaintiffs' class certification motion.

A. <u>Background</u>

Dylan Geerts filed the initial Complaint on July 7, 2017, bringing a civil rights action pursuant to 42 U.S.C. § 1983. (Doc. No. 1.) Essentially, Plaintiffs alleged that two policies Rutherford followed in relation to arresting and prosecuting juveniles violated those juveniles' civil rights. (<u>See</u> Doc. No. 1 at 1-9.) First, Plaintiffs alleged that Rutherford maintained a de facto policy requiring all children charged with any delinquent or unruly offense be taken into custody and delivered to the Rutherford Juvenile Detention Center ("RJDC"). (Doc.. No. 19 at 1.) This "Always Arrest" policy was in violation of a Tennessee state law, which limited the use of custodial arrests to situations in which: (1) the child was charged with a statutorily enumerated offense; or (2) a court-issued "arrest order" had previously been entered. (<u>Id.</u> at 2.) Plaintiffs

alleged that Rutherford's "Always Arrest" policy resulted in mass violation of juveniles' civil rights, including their state law right against false arrest. (Id.)

Second, Plaintiffs alleged that Rutherford maintained a de facto policy of incarcerating juveniles at the RJDC before trial whenever RJDC staff subjectively determined that incarceration was in the "best intersts" of the child, regardless of state law restrictions making it illegal to incarcerate children outside of certain narrowly prescribed circumstances. (Id.) Accordingly, Rutherford's use of the "Filter System" resulted in rampant, *en masse* violations of potentially thousands of children's substantive and procedural due process rights. (Id.)

Plaintiffs, on behalf of themselves and the purported class, sought certification pursuant to Federal Rules of Civil Procedure 23(a), 23(b)(2), and 23(b)(3). (See Doc. No. 30.) Plaintiffs initially set forth the following class definitions:

1.    Illegal Custodial Arrest Classes (Subclass A: The Injunctive Arrest Class)

All juveniles who may, because of Rutherford County's policies or de facto practices, be illegally taken into custody by Rutherford County Sheriff's deputies for a status or misdemeanor delinquent charge where such juveniles have a Tennessee state law right to be released with a summons or citation in lieu of custodial arrest because (a) no law enforcement officer personally witnesses the offense, (b) the alleged offense is not one of the few named misdemeanors for which a warrantless arrest is specifically authorized even if the offense occurs outside the presence of an officer, (c) the offense is not one of the categorical exceptions to T.C.A. § 40-7-118's mandatory "cite and release" requirement, and (d) no court orders has issued an arrest order prior to the custodial arrest being conducted.

2.    Subclass B: The Damages Arrest Class

All persons[1] who have been taken into custody as juveniles by Rutherford County Sheriff's deputies for unruly or misdemeanor delinquent charges where such juveniles had a Tennessee state law right to be released with a summons or citation in lieu of a custodial arrest because (a) no law enforcement officer personally witnessed the alleged offense, (b) the alleged offense was not one of a few named

_____

[1] Subject to the one-year limitations period for "civil actions . . . brought under the federal civil rights statutes," which period is in turn tolled by Plaintiffs' and putative class members' minority until their respective 18th birthdays. T.C.A. § 28-3-104; T.C.A. § 28-1-106.

misdemeanors for which a warrantless arrest is specifically authorized even if the offense occurred outside the officer's presence, (c) the alleged offense was not one of the categorical exceptions to T.C.A. § 40-7-118's mandatory "cite and release" requirement, and (d) the arrest was not made pursuant to a previously-issued court arrest order.

3.     Detention Class (Subclass C: The Injunctive Detention Class)

All juveniles who may, because of Rutherford County's policies or de facto practices, be securely detained pretrial as a juvenile in circumstances that do not meet the perquisites for secure detention under T.C.A. § 37-1-114(c) and the United States Constitution.

4.     Detention Class (Subclass D: The Damages Detention Class)

All persons (subject to the statute of limitations) who have, because of Rutherford County's policies or de facto practices, been securely detained pretrial as a juvenile in circumstanes that did not satisfy any of the categorical prerequisites for secure detention listed in T.C.A. § 37-1-114(c)(1)-(6).

(Doc. No. 30.)

B.  <u>Plaintiffs' Class Certification Arguments and Rutherford's Response</u>

Plaintiffs assert that their proposed class satisfies Rule 23(a)'s prerequisites because: (1) the proposed class includes hundreds of children, satisfying numerosity; (2) there are common questions of law and fact, as the central factual questions are the nature, scope, and application of Rutherford's challenged policies and the relevant law consists of the Tennessee state statutes that Rutherford allegedly violated; (3) the named plaintiffs are typical of the class because they experienced either the "Always Arrest" policy or "Filter System" policy; and (4) the named plaintiffs interests are coextensive with, and not adverse to, the other potential class members. (Doc. No. 21 at 9-22.) With regard to the proposed injunctive classes, Plaintiffs contend that these classes qualify for certification pursuant to Rule 23(b)(2) because Rutherford's "Always Arrest" and "Filter System" policies applied universally to all juveniles charged with delinquent or status offenses, these illegal policies will continue if left unchecked, and the policies are susceptible to

injunctive relief. (Id. at 23.) As to the two damages classes, Plaintiffs assert that these classes are appropriate for certification pursuant to Rule 23(b)(3) because questions of law or fact common to the class members predominate—as the lawsuit revolves around Rutherford's allegedly illegal policies and conduct that were uniformly applied to the proposed class. (Id. at 24.) Plaintiffs stress that these common questions predominate even if the measurement of damages will vary. (Id. at 24-27.) Plaintiffs also maintain that a class action is superior to other forms of adjudication because the common questions predominate so strongly. (Id. at 28.) Finally, Plaintiffs argue that the class definitions are sufficiently definite because the class is objectively structed in such a way that it includes only claimants who were categorically ineligible for custodial arrest and/or pretrial incarceration. (Id. at 29.)

Rutherford responds in opposition, first arguing that Plaintiffs' proposed class is not ascertainable. (Doc. No. 44 at 9.) Rutherford argues that the proposed class is a "fail-safe" class because it is one that includes only those who are entitled to relief, and such classes are prohibited because they allow class members to seek a remedy but not be bound by an adverse judgment. (Id. at 9-11.) Second, Rutherford contends that the class members cannot be identified without extensive and individualized fact-finding, making class certification inappropriate. (Id. at 12.) Rutherford maintains that because membership in the proposed classes is dependent on whether a juvenile's rights were violated, which, in turn, requires an analysis of the totality of circumstances of the arrest, individual issues would overwhelm the class. (Id. at 14.) Third, Rutherford argues that, in certain circumstances, juvenile arrests and detentions are non-violative if probable cause exists, which again requires a totality of the circumstances analysis that destroys commonality. (Id. at 15-18.) Rutherford also asserts that these required "probable cause" analyses prevent Plaintiffs from establishing typicality. (Id. at 18-21.) Further, Rutherford maintains that the

speculative nature of the class definition prevents a finding of numerosity and that named plaintiffs have interests that are adverse to the proposed class. (Id. at 21-22.)

As to Rule 23(b)(3), Rutherford argues that the individual issues and required analyses (i.e., probable cause determinations) defeat predominance. (Id. at 22-23.) Additionally, Rutherford asserts that Plaintiffs' damages formula is too arbitrary and proceeding as a class will not fairly and efficiently resolve the allegations and claims. (Id. at 23-26.) Finally, Rutherford contends that Plaintiffs lack standing to pursue the requested injunctive relief, and, alternatively, the injunctive class definition is not cohesive and would not provide classwide relief. (Id. at 26-32.)

Thereafter, Plaintiffs replied and Rutherford filed a sur-reply, largely reiterating the arguments detailed above. (See Doc. Nos. 50, 67.) However, in Plaintiffs' Response to Defendant's Sur-Reply (Doc. No. 75), Plaintiffs monumentally shift the goalposts by finding that "their proposed class definitions should be revised." (Id. at 1.) Plaintiffs acknowledge that their class definitions "could have been clearer," argue that the revised class definitions provide this greater clarity, and therefore propose the following new class definitions:

A. Injunctive Arrest Class

All children who may, in the future, be taken into custody by a Rutherford County Sheriff's deputy on an unruly or misdemeanor delinquent offense, where:

1. No law enforcement officer personally witnesses the child's alleged offense;

2. The child's alleged offense is not for runaway, violation of probation, violation of valid court order, domestic assault, driving under the influence, a traffic offense in connection with a motor vehicle collision, or stalking; and

3. The arrest is not made pursuant to a previously-issued court arrest order based on individualized findings that a summons would be ineffective.

B. Arrest Damages Class

5

All persons who have been taken into custody by a Rutherford County Sheriff's deputy for a juvenile unruly or misdemeanor delinquent charge, where the child was taken into custody on or after July 20, 2016 or the child was born on or after July 20, 1999, and:

1. The Sheriff's file reflects that no law enforcement officer personally witnessed the alleged offense;

2. The alleged offense was not for runaway, violation of probation, violation of valid court order, domestic assault, driving under the influence, a traffic offense in connection with a motor vehicle collision, or stalking: and,

3. The arrest was not made pursuant to a previously-issued court arrest order based on individualized findings that a summons would be ineffective.

C.     <u>Injunctive Detention Class</u>:

All children who may, in the future, be securely detained at the Rutherford County Juvenile Detention Center on a delinquent or unruly charge where:

1. The child is not charged with the delinquent offense of Aggravated Assault, any form of robbery, any form of kidnapping, any form of criminal homicide, any rape or sexual battery offense, Aggravated Arson, or any illegal weapons offense;

2. The child is not charged with a felony delinquent offense, probation violation, or aftercare violation while the child:

    a) Is already on supervised probation;

    b) Is already awaiting court action on a previously alleged delinquent offense;

    c) Is alleged to have escaped or absconded from a juvenile facility, institution, or other court-ordered placement; or

    d) Has, within the previous twelve months, been charged with failing to appear at any juvenile court hearing or committing a violent felony delinquent offense involving a risk of serious bodily injury or death;

    e) Has, within the previous twelve months, been adjudicated delinquent of a felony delinquent offense.

3. There are not "special circumstances" justifying the secure detention because of a risk of immediate harm to the child if he or she is not securely detained;

4. The child is not alleged to be an escapee from a secure juvenile facility or institution;

5. The child is not wanted in another jurisdiction for a felony delinquent offense;

6. The child is not charged as an unruly child for violating a valid court order.

D. Detention Damages Class

All persons who have been securely detained at the Rutherford County Juvenile Detention Center on a delinquent or unruly allegation, where the person was detained on or after October 14, 2015, or the person was born on or after October 14, 1998, and the Juvenile Court and Juvenile Detention Center files reflect:

1. The person was not charged with the delinquent offense of Aggravated Assault, any form of robbery, any form of kidnapping, any form of criminal homicide, any rape or sexual battery offense, Aggravated Arson, or any illegal weapons offense;

2. The person was not charged with a felony delinquent offense, probation violation, or aftercare violation while the person:

   a) Was already on supervised probation;

   b) Was already awaiting court action on a previously alleged delinquent offense;

   c) Was alleged to have escaped or absconded from a juvenile facility, institution, or other court-ordered placement; or

   d) Had, within the previous twelve months, been charged with failing to appear at any juvenile court hearing or committing a violent felony delinquent offense involving a risk of serious bodily injury or death;

   e) Had, within the previous twelve months, been adjudicated delinquent of a felony delinquent offense.

3. No court order was issued within 24 hours of the detention, excluding nonjudicial days, documenting "special circumstances" justifying the secure detention because of a risk of immediate harm to the person if he or she was not securely detained;

4. The person was not alleged to be an escapee from a secure juvenile facility or institution;

5. The person was not wanted in another jurisdiction for a felony delinquent offense;

6. The person was not charged as an unruly child for violating a valid court order already in effect.

(Doc. No. 75-1.) The Court must now confront the implications of Plaintiffs' eleventh-hour changes.

C. Applicable Law

Federal class actions are governed by Rule 23 of the Federal Rules of Civil Procedure. To obtain class certification, Plaintiffs must first demonstrate that the putative class meets the requirements of Rule 23(a) by showing that:

(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a). see also Pilgrim v. Universal Health Card, LLC, 660 F.3d 943, 945 (6th Cir. 2011).

The Court has the authority to alter or amend an order that grants or denies class certification before final judgment is entered. See Fed. R. Civ. P. 23(c)(1)(C). A district court "retains significant discretion to make . . . modification decisions and its decision is reviewed only for abuse of discretion." See Powers v. Hamilton Cty. Pub. Defender Comm'n, 501 F.3d 592, 619 (6th Cir. 2007) ("[D]istrict courts have broad discretion to modify class definitions."). However, prior to certification, plaintiffs may amend their class definition subject to the requirements of

Federal Rule Civil Procedure 15. <u>Clarke v. Baptist Mem'l Healthcare Corp.</u>, 264 F.R.D. 375, 381 (W.D. Tenn. 2009) (explaining that amending the class definition involves amending the complaint).

Courts are to freely give parties leave to amend their pleadings "when justice so requires." Fed. R. Civ. P. 15(a)(2). In deciding whether to grant a motion to amend, courts should consider undue delay in filing, lack of notice to the opposing party, bad faith by the moving party, repeated failure to cure deficiencies by previous amendments, undue prejudice to the opposing party, and futility of amendment. <u>Brumbalough v. Camelot Care Ctrs., Inc.</u>, 427 F.3d 996, 1001 (6th Cir. 2005). "In the absence of any apparent or declared reason—such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.—the leave sought should, as the rules require, be 'freely given.'" <u>Pittman v. Experian Info. Sols., Inc.</u>, 901 F.3d 619, 640 (6th Cir. 2018) (quoting <u>Forman v. Davis</u>, 371 U.S. 178, 182 (1962)). "[T]he grant or denial of an opportunity to amend is within the discretion of the District Court," however "outright refusal to grant the leave without any justifying reason appearing for the denial is not an exercise of discretion," but "abuse of that discretion and inconsistent with the spirit of the Federal Rules." <u>Id.</u> (quoting <u>Forman</u>, 371 U.S. at 182.)

"Although Rule 15(a) indicates that leave to amend shall be freely granted, a party must act with due diligence if it intends to take advantage of the Rule's liberality." <u>United States v. Midwest Suspension & Brake</u>, 49 F.3d 1197, 1202 (6th Cir. 1995) (citation omitted). The Court of Appeals "has required at least some significant showing of prejudice to deny a motion to amend based solely upon delay." <u>Prater v. Ohio Educ. Ass'n</u>, 505 F.3d 437, 445 (6th Cir. 2007) (internal

quotations omitted). "The longer the period of an unexplained delay, the less will be required of the nonmoving party in terms of a showing of prejudice." Phelps v. McClellan, 30 F.3d 658, 662 (6th Cir. 1994).

      D.  Application to Plaintiffs' Motion to Amend Class Definition

At the outset, the Court acknowledges that Plaintiffs' pending request for amendment of the class definition comes rather late in the game. The parties had conducted discovery, fully briefed the issues, and the Court stood ready to make a dispositive ruling. Plaintiffs' actions come dangerously close to "eleventh-hour brinkmanship" that has no place in this Court. See Leys v. Lowe's Home Ctrs., Case No. 1:08-cv-1084, 2009 WL 1911818, at *1 (W.D. Mich. Jul. 1, 2009) ("The court cannot condone plaintiffs' exercise in eleventh-hour brinkmanship.")

Nevertheless, this Court is imbued with "sound discretion" to determine whether justice requires permission to amend a pleading. Moore v. City of Paducah, 790 F.2d 557, 559 (6th Cir. 1986) (quoting Tefft v. Seward, 689 F.2d 637, 639 (6th Cir. 1982)). However, here, the Court cannot make such a determination as Plaintiffs have not provided the Court with any justification for doing so. Plaintiffs sur-reply response does not reference their obligations under Rule 15, but, rather, assumes that the Court will simply take their new proposed definition as a given. Such an approach would be contrary to the law and manifestly unfair to Rutherford. Accordingly, Plaintiffs shall file a Motion to Amend setting out their arguments for amending the class definition on or before July 26, 2019. Rutherford shall file its response on or before August 2, 2019. No reply shall be necessary. Depending on the outcome of Plaintiffs Motion to Amend, new briefing will be required on the new class definitions. The Court will therefore **HOLD IN ABEYANCE** Plaintiffs' pending Amended Rule 23 Motion to Certify Class.

IT IS SO ORDERED.

_____
WAVERLY D. CRENSHAW, JR
CHIEF UNITED STATES DISTRICT JUDGE