| | | |
|---|---|---|
| DYLAN GEERTS, ET AL.. | ) | |
|     PLAINTIFFS, | ) | No. 3:17-1014 |
| V. | ) | |
| | ) | CRENSHAW/ HOLMES |
| RUTHERFORD COUNTY, TENNESSEE, | ) | |
|     DEFENDANT. | ) | |

## JOINT MOTION AND SUPPORTING MEMORANDUM FOR AN ORDER PRELIMINARILY APPROVING THE CLASS ACTION SETTLEMENT, PRELIMINARILY CERTIFYING CLASSES FOR SETTLEMENT PURPOSES, APPOINTING CLASS REPRESENTATIVES, APPOINTING CLASS COUNSEL, APPROVING AND DIRECTING THE ISSUANCE OF A CLASS NOTICE, AND SCHEDULING A FINAL FAIRNESS HEARING

Plaintiffs Kazmere Watts, A.B., by and through her next friend, Sandra Brien, J.B., by and through next friend, Jacqueline Brinkley, and Dylan Geerts, individually on behalf of themselves and all members of the Class, and the Defendant Rutherford County, Tennessee, all of whom are Parties to this litigation, through their respective undersigned counsel, jointly move for an order (1) preliminarily approving the proposed class action settlement, (2) preliminarily certifying Classes for settlement purposes, (3) appointing the above-named Plaintiffs as Class Representatives, (4) appointing Kyle Mothershead, of The Law Office of Kyle Mothershead, Frank Brazil, of Brazil Clark, PLLC, and Mark J. Downton, of counsel for Brazil Clark, PLLC as lead counsel for the Classes, (5) approving and directing notice to the Classes by the Claims Administrator, and (6) scheduling a final fairness hearing. A Joint Memorandum of Support is included herein, and the Settlement Agreement and Release, dated June 7, 2021, and executed by the Parties (the "Settlement" or the "Settlement Agreement"), is attached as Exhibit A hereto. Additionally, the Settlement Agreement includes six exhibits, all of which are attached as part of and to Exhibit A (Exhibit 1—Arrest Claim Form; Exhibit 2—Final Approval Order; Exhibit 3—

Detention Claim Form; Exhibit 4—the Notice; Exhibit 5—Preliminary Approval Order; and Exhibit 6—Public Safety Report).

<u>**MEMORANDUM IN SUPPORT**</u>

## I.  PRELIMINARY STATEMENT

Plaintiffs and Defendant jointly seek this Court's approval of the Settlement Agreement. Plaintiffs have asserted (1) state-law false arrest claims alleging Defendant's policies regarding juveniles charged with delinquent or unruly offenses were in violation of Tennessee state law, and (2) federal civil rights claims under 28 U.S.C. § 1983, alleging Defendant's policies on secured detention of juveniles charged with delinquent or unruly offenses violated Tennessee state law and their procedural and substantive due process rights under the Fourteenth Amendment to the U.S. Constitution. Defendant at all times has denied these allegations and further denies any wrongdoing in any of the lawsuits filed against it.

The proposed Settlement is in the best interests of Plaintiffs because it resolves vigorously defended lawsuits with considerable litigation risk and provides consensual injunctive relief and direct compensation in the form of payments of hundreds and even multiple thousands of dollars to members of the Arrest and Detention Classes (estimated to consist of approximately 439 and 1,000 members, respectively). The Settlement is also in the best interest of Defendant because it efficiently resolves hotly contested litigation which has been pending for almost 5 years.

As discussed in more detail below, all of the requirements of Fed. R. Civ. P. 23 have been satisfied and the Settlement Agreement should be preliminarily approved.

2

## II.     FACTS

### A.     __Procedural History__.

Minor children K.W., A.B., and J.B. filed the initial lawsuit on October 14, 2016, in the United States District Court for the Middle District of Tennessee (the "Court") as a proposed class action (Case No. 3:16-cv-01975) with their guardians Kanisa Davis, Sandra Brien, and Jacqueline Brinkley, against Defendants Murfreesboro Police Officer Chrystal Templeton, Rutherford County, Tennessee, and the City of Murfreesboro, Tennessee. The claims against Defendant Templeton were severed, and the claims against City of Murfreesboro were dismissed, leaving Rutherford County as the sole Defendant in Case No. 3:16-cv-01975. On July 7, 2017, Dylan Geerts filed the second lawsuit against Rutherford County (Case No. 3:17-cv-1014). Following a consolidation, the two lawsuits are now proceeding together as a single case under Case No. 3:17-cv-1014. Both lawsuits are referred to herein and in the Settlement Agreement as the "Litigation".[1]

Plaintiffs allege that Defendant's policies relating to arresting and detaining juveniles violated state law and federal constitutional rights. First, Plaintiffs assert state-law false arrest claims based on allegations that Defendant maintained a policy that violated Tennessee arrest laws by requiring Defendant's deputy sheriffs to take all juveniles charged with delinquent or unruly offenses into custody for delivery to the Rutherford County Juvenile Detention Center ("RCJDC"). Second, Plaintiffs asserted federal civil rights claims under 28 U.S.C. § 1983 for violation pf Plaintiffs' procedural and substantive due process rights under the Fourteenth Amendment of the U.S. Constitution based on allegations that Defendant maintained a policy of placing juveniles in secure detention at the RCJDC in violation of state law statutory predicates with mandatory outcomes.

---

[1] Capitalized terms not defined herein shall have the meanings ascribed in the Settlement Agreement.

3

Throughout the Litigation, Defendants have denied these allegations and maintained that Plaintiffs' claims are without merit.

Plaintiffs, on behalf of themselves and the purported class, filed a motion seeking class action certification pursuant to Federal Rules of Civil Procedure 23(a), 23(b)(2), and 23(b)(3) and Defendant filed a response opposing such certification. As of the date hereof, the Court has not yet ruled on this Motion. Additionally, Rutherford County has filed two motions for summary judgment, contested by Plaintiffs, which are still pending as of the date hereof.

Since the filing of the initial lawsuit, Class Counsel and Defendant have vigorously litigated these lawsuits through (a) extensive motion practice, including motions, extensive briefing and hearings on Plaintiffs' request for preliminary injunctions; (b) far- reaching written discovery; (c) vast production and review of electronic data and other paper documents; (d) briefing related to numerous discovery motions filed by both Parties; (e) investigation with and interviews of former members and former employees; (f) 28 depositions of Defendant's employees, former employees, and corporate representatives; (g) depositions of class representatives; (h) retention of experts for each side, who each prepared and produced expert reports; (i) depositions of experts for each side; (j) preparing for and filing Motions for Class Certification and responses thereto; and (k) Defendant's filing of various dispositive motions and Plaintiffs' responses thereto.

### B.  **Mediation and Settlement**

The Settlement Agreement is the result of Court ordered mediated negotiations between the Parties that began in May 2019 and spanned over the next twenty (20) months. The Parties participated in numerous in-person mediation sessions conducted at the direction of the Court and under the supervision of the Mediator, telephonic conferences, exchange of written documents and

4

intense negotiations. The Parties and their counsel affirmatively represent and attest that the Settlement Agreement is the result of arm-lengths negotiation guided and directed by the Mediator. The initial 2019 negotiations proved unsuccessful. The Parties paused further negotiations, completed extensive discovery and continued litigating the matter. Beginning in about May 2020, the Parties reengaged in informal negotiation sessions using the Mediator, and on May 21, 2020, the parties met in-person for a full day of mediation. While an agreement was not reached, the parties continued to exchange written information and engage in telephonic sessions, and then met for another in-person mediation sessions on June 2, 2020. Again, following the in-person meeting, the Parties continued to negotiate telephonically and participated in another full day of mediation in person on September 11, 2020. Over the summer of 2020, the Parties made progress towards terms that might be acceptable, engaged in telephonic follow-up under the guidance of the Mediator, and on October 13, 2020 they met in person for another full day of mediation in Murfreesboro, Tennessee. At the conclusion of the October 13, 2020 mediation, the parties reached a tentative agreement regarding many of the material and important terms for a settlement of the Litigation (the "Partial Terms"). Defendants' counsel then obtained approval from the Rutherford County Commission of the Partial Terms and were directed to attempt to complete the negotiation of the outstanding material terms. The additional material terms were negotiated from October through December and on December 17, 2020, the Rutherford County Commission approved those additional material terms. Thereafter, the Parties negotiated the precise language of the Settlement Agreement.

The Settlement Agreement provides for the certification of two Classes, the Arrest Class and the Detention Class. A person qualifies as a Class Member if (1) the person fits into one of the categories described below. Class Members are entitled to compensation if they (1) submit a

timely and valid claim form; and (2) the claim form is approved by the Settlement Administrator in accordance with the procedures set forth in the Settlement Agreement. The Settlement provides monetary compensation as follows:

- The Arrest Class is defined as all persons who at any time, up until the date of the Preliminary Approval Order, were taken into custody by a Rutherford County Sheriff's deputy and transported to the RCJDC for either a juvenile unruly or a juvenile misdemeanor delinquent offense, where (a) such person was taken into custody on or after July 26, 2016 or the person was born on or after July 26, 1998, and (b) at the time of such custody none of the circumstances justifying such custody under T.C.A. §§ 37-1-113 or 40-7-103 were present.[2] [Settlement Agreement § 5.1]. Class Counsel estimates that there are approximately 500 total arrests falling within the Arrest Class.

  - For the Arrest Class as a whole, this Settlement provides up to a Maximum Arrest Class Settlement Fund in the sum of Five Hundred Sixteen Thousand Six Hundred and Sixty-Six Dollars and 67/100 ($516,666.67) to pay

---

[2] More specifically, to satisfy subparagraph (b) all of the following must apply: (1) Such person was not taken into custody pursuant to an order of the Juvenile Court directing that the person be taken into custody based on findings that a summons would be ineffective due to the particular circumstances of the person's case; (2) Such person was not charged with a delinquent offense that would have been classified as a felony under Tennessee law if the person had been an adult; (3) Where such person was taken into custody based on a misdemeanor delinquent charge, such person was not alleged to have been in the presence of law enforcement when the person committed the alleged delinquent offense for which they were arrested; (4) Such person was not taken into custody in connection with a formal allegation that such person was a neglected, dependent or abused child, and alleging that either (A) the child's detention or shelter care was required because the child was subject to an immediate threat to the child's health or safety to the extent that delay for a hearing would be likely to result in severe or irreparable harm, or (B) the child may have absconded or been removed from the jurisdiction of the court; and, in either case, (C) there was no less drastic alternative to removal of the child from the custody of the child's parent, guardian, legal custodian or the person who physically possesses or controls the child available that would reasonably and adequately protect the child's health or safety or prevent the child's removal from the jurisdiction of the court pending a hearing; (5) The records do not document that such person was, at the time of arrest, a "runaway." "Runaway" means any person under eighteen (18) years of age who is away from the home or residence of such person's parents or guardians without such parents' or guardians' consent. "Runaway" does not include persons under eighteen (18) years of age who lawfully reside with a close relative or those attending educational institutions, or those placed by court order, on a contractual agreement with a parent or guardian; (6) Such person was not charged with the offense of stalking; (7) The records do not document that such person was taken into custody based on reasonable grounds to believe that the person had attempted to commit suicide; (8) Such person was not charged with committing a traffic offense in connection with a traffic accident involving either personal injury or property damage of at least $1,000; (9) Such person was not charged with driving under the influence of an intoxicant or otherwise committing an offense under Tenn. Code Ann. § 55-10-401; (10) Such person was not charged with committed a crime involving domestic abuse; (11) The records do not allege that (A) such person was a driver in a motor vehicle accident resulting in serious bodily injury or death, or (B) such person did not have a valid driver license at the time of the accident, or (C) such person did not have evidence of financial responsibility at the time of the accident as required by § 55-12-139; (12) Such person was not charged with violating the terms of probation, home placement supervision, or diversion; (13) Such person was not charged with violating the terms of a valid court order; (14) The person was not alleged to be an escapee from a secure juvenile facility or institution; (15) The person was not wanted in another jurisdiction for an offense that, if committed by an adult, would be a felony in that jurisdiction; and, (16) The person was not alleged to have committed a public offense or threatened breach of the peace in the presence of law enforcement (the terms "public offense" and "breach of peace" in the Settlement Agreement carry the same meaning as the terms have in Tennessee Code Annotated § 40-7-103).

6

compensable and approved false arrest claims. Moreover, as this is a claims-made settlement, the Arrest Class approved claimants as a whole may receive less than the maximum amount. The Arrest Class approved claimants as a whole shall in no event receive in total less than the sum of the Minimum Arrest Class Settlement Fund, which is One Hundred Twenty-Nine Thousand One Hundred and Sixty-Six Dollars and 67/100 ($129,166.67). The amount paid to the Arrest Class approved claimants will depend on the final number of Approved False Arrest Claims, as provided for in Section 9 of the Settlement Agreement. [Settlement Agreement § 4.2, 9].

  o The following hypothetical potential cash payments for members of the <u>Arrest Class</u> are offered for illustration purposes only. If there is a total of between 125 and 500 Approved False Arrest Claims, each approved claimant of the Arrest Class will receive $1,033 for each Approved False Arrest Claim. If there are 600 Approved False Arrest Claims, each approved claimant of the Arrest Class will receive $861.11 for each Approved False Arrest Claim. If there are 120 Approved False Arrest Claims, each approved claimant of the Arrest Class will receive $1,076.39 for each Approved False Arrest Claim. [Settlement Agreement § 9.1].

- The <u>Detention Class</u> is defined as all persons who at any time were on a juvenile delinquent or unruly charge admitted, subjected to and confined, up until the date of the Preliminary Approval Order, in secure detention at the RCJDC prior to a detention hearing, where (a) such person was born on or after October 14, 1997, or such secure detention occurred at any time from and after October 14, 2015, and (b) at the time of such admission and confinement none of the circumstances justifying such secure detention under T.C.A. § 37-1-114(c).[3] [Settlement Agreement § 5.2]. Class Counsel estimates that there are approximately 1,500 total detentions falling within the Detention Class.

---

[3] More specifically, to satisfy subparagraph (b) all of the following must apply: (1) The person was not charged with a crime against a person resulting in and having as one of its statutory elements the serious injury or death of the victim or involving the likelihood of serious injury or death to such victim, or the unlawful possession of a handgun or carrying of a weapon, as prohibited by T.C.A., title 39, chapter 17, part 13, and in particular not any one or more of the following delinquent offenses: a. Aggravated Assault, T.C.A. § 39-13-102, b. Vehicular Assault, T.C.A. § 39-13-106, c. Aggravated Vehicular Assault, T.C.A. § 39-13-115, d. Criminal homicide, T.C.A. § 39-13-201, e. First Degree murder, T.C.A. § 39-13-202, f. Second Degree murder, T.C.A. § 39-13-210, g. Voluntary manslaughter, T.C.A. § 39-13-211, h. Criminally negligent homicide, T.C.A. § 39-13-212, i. Vehicular homicide, T.C.A. § 39-13-213, j. Reckless homicide, T.C.A. § 39-13-215, k. Assisted suicide, T.C.A. § 39-13-216, l. Aggravated vehicular homicide, T.C.A. § 39-13-218, m. Robbery, T.C.A. § 39-13-401, n. Aggravated robbery, T.C.A. § 39-13-402, o. Especially aggravated robbery, T.C.A. § 39-13-403, p. Aggravated rape, T.C.A. § 39-13-502, q. Rape, T.C.A. § 39-13-503, r. Aggravated sexual battery, T.C.A. § 39-13-504, s. Sexual battery, T.C.A. § 39-13-505, t. Aggravated Arson, T.C.A. § 39-14-302, u. Prohibited weapons, T.C.A. § 39-17-1302, v. Unlawful carrying or possession of weapon, T.C.A. § 39-17-1307, w. Carrying weapons on school property, T.C.A. § 39-17-1309, x. Carrying weapons on public parks, playgrounds, civic centers, and other public recreational buildings and grounds, T.C.A. § 39-17-1311, y. Handgun possession prohibited, T.C.A. § 39-17-1319, or z. Possession of handgun while under the influence, T.C.A. § 39-17-1321; (2) The person was not charged with a delinquent offense categorized as a felony under Tennessee law, probation violation, or aftercare violation while the person: a. Was already on probation, or b. Was already awaiting court action on a previously alleged delinquent offense, or c. Was alleged to have escaped or absconded from a juvenile facility, institution, or other court-ordered placement, or d. Had, within the previous twelve months, failed to appear

o For the <u>Detention Class</u> as a whole, this Settlement provides up to a Maximum Detention Class Settlement Fund in the sum of Seven Million Two Hundred Thirty-Three Thousand Three Hundred and Thirty-Three Dollars and 33/100 ($7,233,333.33) to pay compensable and approved illegal detention claims. Moreover, as this is a claims-made settlement, the Detention Class approved claimants as a whole may receive less than the maximum amount. The Detention Class approved claimants as a whole shall in no event receive in total less than the sum of the Minimum Detention Class Settlement Fund, which is One Million Eight Hundred and Eight Thousand Three Hundred and Thirty-Three Dollars and 33/100 ($1,808,333.33). The amount paid to Detention Class approved claimants will depend on the final number of Approved Illegal Detention Claims, as provided for in Section 9 of the Settlement Agreement. [Settlement Agreement §§ 4.3, 9].

o The following hypothetical potential cash payments for members of the <u>Detention Class</u> are offered for illustration purposes only. If there is a total of between 375 and 1,500 Approved Illegal Detention Claims, each approved claimant of the Detention Class will receive $4,822 for each Approved Illegal Detention Claim. If there are 1,600 Approved Illegal Detention Claims, each approved claimant of the Detention Class will receive $4,520.83 for each Approved Illegal Detention Claim. If there are 350 Approved Illegal Detention Claims, each approved claimant of the Detention Class will receive $5,166.67 for each Approved Illegal Detention Claim. [Settlement Agreement § 9.2].

A Class Member may receive payments for multiple approved claims based upon the number of qualifying arrests and/or detentions such Class Member had. To file a claim, a Class Member need only complete a Claim Form for each qualifying event and submit it online or via U.S. Mail. Class Members do not need to attach any documents or provide any other proof to file

---

at any juvenile court hearing or been charged with committing a violent felony delinquent offense involving a risk of serious bodily injury or death, or e. Had, within the previous twelve months, been adjudicated delinquent of a felony delinquent offense; (3) No court order was issued within 24 hours of the detention, excluding nonjudicial days, documenting "special circumstances" that justified the person's secure detention based on a risk of immediate harm to the person due to issues of dependency, neglect, or abuse if they were not securely detained; (4) The person was not alleged to be an escapee from a secure juvenile facility or institution; (5) The person was not wanted in another jurisdiction for an offense that, if committed by an adult, would be a felony in that jurisdiction; and (6) The person was not charged with violating a "valid court order" that was already in effect prior to the instant charge giving rise to the detention, and was not a runaway from another jurisdiction.

a claim. Potential Claimants may contact Class Counsel for assistance in completing and filing Claim Forms. [Settlement Agreement, §§ 8.1 and 8.2, and Settlement Agreement Exhibit Nos. 1, 3 and 4] Notice will be provided to every Class Member by U.S. mail, by internet website publication notice, by email notice, text notification, and by general publication. Finally, pursuant to 28 U.S.C. § 1715, not later than ten (10) days after the Agreement is filed with the Court, Defendant shall serve upon the Attorneys General of each U.S. State, the Attorney General of the United States, and other required government officials, notice of the proposed settlement as required by law. [Settlement Agreement § 6.2(f)]

Under the Settlement Agreement, Class Counsel may seek approval from the Court of a Fee Award in an amount that will in no event exceed a maximum of $2,750,000 as part of the Settlement Agreement. Defendant has not agreed that the Maximum Fee Award is reasonable or appropriate, and Defendant has reserved the right to object to the amount of the Fee Award sought by Class Counsel. Defendant has agreed to pay the Court-approved Fee Award, subject to any appeal of that award it might bring, within thirty (30) days after the Fee Award becomes final and non-appealable. [Settlement Agreement § 4.6]

The Settlement also provides that the Defendant will pay each of the four (4) Class Representatives, subject to the approval of the Court, a service award in the amount of $25,000. This sum shall be paid in recognition of the Named Plaintiffs' time and effort serving as the Class Representatives in the Litigation. [Settlement Agreement § 4.7]

Finally, the Settlement provides that the Defendant will pay up to $290,000 for Settlement Administration costs. [Settlement Agreement § 4.4]

The payment of attorneys' fees, the service awards, and Settlement Administration costs were negotiated separately from the Class relief and will not reduce in any way payments made to the Class Members.

## III.   LEGAL STANDARDS AND ARGUMENT

There is a strong "federal policy favoring settlement of class actions." *Int'l Union, United Auto., Aerospace, & Agr. Implement Workers of Am. v. Gen. Motors Corp.*, 497 F.3d 615, 632 (6th Cir. 2007). A proposed class action settlement requires Court approval. Fed. R. Civ. P. 23(e). Approval of a class action settlement involves two-stages: 1) "The judge reviews the proposal preliminarily to determine whether it is sufficient to warrant public notice and a hearing"; and 2) "If so, the final decision on approval is made after the hearing." *Ann. Manual Complex Lit.* (Fourth) § 13.14 (2019); *see also Tenn. Ass'n of Health Maint. Orgs., Inc. v. Grier*, 262 F.3d 559, 565-66 (6th Cir. 2001)). "At the stage of preliminary approval, the questions are simpler, and the court is not expected to, and probably should not, engage in analysis as rigorous as is appropriate for final approval." *Ann. Manual Complex Lit.* § 21.662 (4th ed.)). Courts apply a degree of scrutiny to proposed settlement agreements sufficient to avoid "rubber-stamp[ing]" a proposed settlement agreement, while still being "mindful of the substantial judicial processes that remain to test the assumptions and representations upon which the [proposed settlement agreement] are premised." *In re Inter-Op Hip Liab. Litig.*, 204 F.R.D. 330, 338 (N.D. Ohio 2001).

### A.   The Settlement Agreement should be preliminarily approved.

To approve a proposed settlement, the court must determine whether it is "fair, reasonable, and adequate." *Whitlock v. FSL Mgmt., LLC*, 843 F.3d 1084, 1093 (6th Cir. 2016); Fed. R. Civ. P. 23(e)(2). Rule 23(e)(2) provides the court with factors to consider when making this determination. Additionally, the Advisory Committee, in amending Rule 23(e) in 2018, did not intend to displace

factors developed by the circuit courts in deciding whether to approve a proposed settlement agreement, but rather to "focus the court ... on the core concerns ... that should guide" the court's determination. Federal R. Civ. P. 23(e) advisory committee's note to 2018 amendment. A Court thus considers both the Rule 23(e) factors and the factors set forth by the Sixth Circuit. *Elliott v. LVNV Funding, LLC*, No. 3:16-CV-00675-RGJ, 2019 WL 4007219, at *7 (W.D. Ky. Aug. 23, 2019).

        1.        <u>Rule 23(e)(2) Factors</u>.

Under Fed. R. Civ. P. 23(e)(2) a proposed class action settlement is "fair, reasonable, and adequate" if:

> (A) the class representatives and class counsel have adequately represented the class;
>
> (B) the proposal was negotiated at arm's length;
>
> (C) taking into account:
>
>> (i) the costs, risks, and delay of trial and appeal;
>> (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
>> (iii) the terms of any proposed award of attorney's fees, including timing of payment; and
>> (iv) any agreement required to be identified under Rule 23(e)(3); and
>
> (D) the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2).

All of these factors have been satisfied. First, the class representatives and class counsel have adequately represented the class in reaching a favorable settlement. Class Counsel has experience in similar types of cases, and in this case they have conducted extensive discovery and engaged in vigorous litigation, all of which provided adequate information for evaluating the strength of Plaintiffs' case. *See* Fed. R. Civ. P. 23(e)(2) Advisory Committee's Note (2018

Amendment) (When considering the adequacy of representation, "the nature and amount of discovery in this or other cases, may indicate whether counsel negotiating on behalf of the class had an adequate information base.").

Second, the proposed Settlement was negotiated at arm's length. After engaging in intense and hotly contested litigation for almost 4 years, in May 2020 the Parties entered into settlement discussions and mediation before a Mediator. In October 2020, after almost 5 months of in-person, telephonic and written negotiations, the Parties reached agreement on many of the material terms to resolve the case. Thereafter, the Parties began another intense period of arms-length negotiations for several additional months negotiating the specific terms and language of the Settlement Agreement. *See Thacker v. Chesapeake Appalachia, L.L.C.,* 695 F. Supp. 2d 521, 531-532 (E.D. Ky. 2010) (finding that the settlement was fair, adequate, and reasonable when the "parties engaged in extensive, arms-length negotiations for over four months, which ... allowed the parties to fully explore their respective factual and legal positions").

Third, the relief provided for the class is adequate, taking into consideration the costs, risks, and delay of trial and appeal. Although the actual amounts paid per claim may be higher or lower depending upon the number of claimants, under the Settlement Agreement the Standard Arrest Distribution for an Approved False Arrest Claim would be $1,033.33 and the Standard Detention Distribution would be $4,822.22 for an Approved Illegal Detention Claim.[4] In evaluating the

---

[4] The Settlement is a "claims made settlement", which is a settlement that does not have a fixed settlement fund, but rather provides that the defendant will pay claims of class members who file them, usually up to some fixed ceiling. § 13:7. Terms of art in class action settlement agreements—"Claims-made" settlement, 4 Newberg on Class Actions § 13:7 (5th ed.). The Settlement Agreement has both maximum payments and minimum payments. [Settlement Agreement, Secs. 4.2 and 4.3] Courts in the Sixth circuit and elsewhere routinely approve claims-made class action settlements. *See Gascho v. Glob. Fitness Holdings, LLC,* 822 F.3d 269, 290 (6th Cir. 2016); *Saccoccio v. JP Morgan Chase Bank, N.A.*, 297 F.R.D. 683, 696 (S.D. Fla. 2014) (rejecting objection to claims-made settlement and noting that the court need not wait until claims are filed to approve the settlement, as settlements with low claiming rates have often been approved); *Shames v. Hertz Corp.*, 2012 WL 5392159, *9 (S.D. Cal. 2012), ("[T]here is nothing inherently

12

adequacy of the relief under the proposed settlement, courts look to the complexity, expense, and likely duration of the litigation. *Doe v. Ohio*, No. 2:91-CV-00464, 2020 WL 728276, at *4 (S.D. Ohio Feb. 12, 2020), *report and recommendation adopted*, No. 2:91-CV-464, 2020 WL 996561 (S.D. Ohio Mar. 2, 2020). This case has been pending for almost 5 years, and in the absence of settlement could continue for years to come. The Defendant has filed two motions for summary judgment which have not yet been resolved and could potentially dispose of all claims in the absence of settlement. If these issues are not resolved in Defendant's favor, Defendant would likely appeal. Further, a class has not yet been certified, and even if classes are certified, in the absence of settlement there would likely be a lengthy and costly period of fact-intensive hearings on the individual damages suffered by each class member. Further, the proposed claim process and method for distributing relief to the class under the Settlement is a far simpler means of providing substantial benefits to class members than the full adjudication of this matter. Fed. R. Civ. P. 23(e)(2)(C)(ii); *Ball v. Kasich*, No. 2:16-CV-282, 2020 WL 1969289, at *7 (S.D. Ohio Apr. 24, 2020) (approving settlement agreement which would result in both finality for the parties and immediate benefits for all class members).

The relief provided for the class is also adequate, taking into account the maximum potential attorneys' fees for Class Counsel. While the Settlement Agreement does not fix the attorney fee award, the proposed Class Counsel has not yet requested fees, and the Defendant has reserved the right to object to the requested fees, the Settlement Agreement does cap the maximum

---

objectionable with a claims-submission process, as class action settlements often include this process, and courts routinely approve claimsmade [sic] settlements."). *Trombley v. Nat'l City Bank*, 826 F.Supp.2d 179, 201 (D.D.C. 2011) (approving claims-made settlement and observing that "a claims process is often used to ensure that money is fairly distributed for valid claims"); *Schulte v. Fifth Third Bank*, 805 F. Supp. 2d 560, 593 (N.D. Ill. 2011) (approving claims made settlement where "the claims process is a negotiated facet of the settlement").

amount of attorneys' fees at $2,750,000. This amount represents only 25% of the total maximum settlement fund of $11,000,000. ($516,666.67 [Maximum Payment for Arrest Class] + $7,233,333.33 [Maximum Payment for Detention Class] + $100,000 [Total Service Fees for Class Representatives] $290,000 [Settlement Administrator Fee] + $2,750,000 [Maximum Attorney Fee Award] + $110,000 [Maximum reimbursement for litigation costs and expenses]. Defendant has not consented to the Fee Award and has reserved the right to object to the Class Counsel's request for Fees. [Settlement Agreement, § 4.6]

The Maximum Attorney Fee Award under the Settlement Agreement would be well within fee awards in this Circuit, which typically range from 20 to 50 percent of the common fund. *See, e.g. New England Health Care Employees Pension Fund v. Fruit of the Loom, Inc.*, 234 F.R.D. 627, 635 (W.D. Ky. 2006), *aff'd, sub nom. Fidel v. Farley*, 534 F.3d 508 (6th Cir. 2008); *Déjà Vu*, 925 F.3d at 898 ("It is not abnormal for negotiated attorneys' fee awards to comprise 20% to 30% of the total award"); *Dick v. Sprint Commc'ns Co. L.P.*, 297 F.R.D. 283, 299 (W.D. Ky. 2014) (24% of common fund was reasonable); *Spine & Sports Chiropractic, Inc. v. ZirMed, Inc.*, No. 3:13-CV-00489, 2015 WL 1976398, at *3 (W.D. Ky. May 4, 2015) (33% was reasonable); *In re Countrywide Fin. Corp. Customer Data Sec. Breach Litig.*, No. 3:08-MD-01998, 2009 WL 5184352, at *11 (W.D. Ky. Dec. 22, 2009) (50% was reasonable). Even if the number of claims made does not yield the maximum class payments, the Sixth Circuit has held that total benefit available to the class may be considered in evaluating attorneys' fees even if actual benefit paid for claims made is less. *Gascho v. Glob. Fitness Holdings, LLC*, 822 F.3d 269, 288 (6th Cir. 2016). Additionally, the attorney's fees, even at the maximum amount, will not reduce the amount each class member will receive.

14

The fourth and final factor of Rule 23(e)(2) is also satisfied because the Settlement treats class members equitably relative to each other. While members of the Detention Class will receive more than members of the Arrest Class, this difference is appropriate under the circumstances. Members of the Detention Class will be compensated for their confinement in secure detention at the RCJDC for the period preceding their initial detention and probable cause hearing. This situation would be more restrictive and of longer duration than an arrest, which would only involve transportation to, but not admission into and secure confinement at, the RCJDC. Thus, the difference in payment amounts would be equitably warranted. *See Hosp. Authority of Metropolitan Gov't of Nashville & Davidson Cty., Tennessee v. Momenta Pharm., Inc.*, No. 3:15-CV-01100, 2020 WL 3053467, at *2 (M.D. Tenn. May 29, 2020) (Settlement treated eligible claimants equitably where payment amount was based on qualifying purchases in each category); *Elliott v. LVNV Funding, LLC*, No. 3:16-CV-00675-RGJ, 2019 WL 4007219, at *9 (W.D. Ky. Aug. 23, 2019) (finding equitable treatment because payments were based upon amounts of improper assessments of claimants).

    2.    <u>Sixth Circuit Factors</u>.

The Sixth Circuit has set forth factors to help courts determine whether a settlement is "fair, reasonable, and adequate" for purposes of preliminary approval: "(1) the risk of fraud or collusion; (2) the complexity, expense and likely duration of the litigation; (3) the amount of discovery engaged in by the parties; (4) the likelihood of success on the merits; (5) the opinions of class counsel and class representatives; (6) the reaction of absent class members; and (7) the public interest." *Pelzer v. Vassalle*, 655 F. App'x 352, 359 (6th Cir. 2016) (citing *Int'l Union, United Auto., Aerospace, & Agr. Implement Workers of Am. v. Gen. Motors Corp.*, 497 F.3d 615, 641 (6th Cir. 2007)).

15

All of these factors are satisfied as well. First, "[c]ourts presume the absence of fraud or collusion in class action settlements unless there is evidence to the contrary." *Thacker v. Chesapeake Appalachia*, L.L.C., 695 F. Supp. 2d 521 (E.D. Ky. 2010) (citations omitted). "When a settlement is the result of extensive negotiations by experienced counsel, the Court should presume it is fair." *In re Skechers Toning Shoe Prod. Liab. Litig*., No. 3:11-MD-2308-TBR, 2012 WL 3312668, at *9 (W.D. Ky. Aug. 13, 2012) (internal quotation marks omitted) (quoting *In re Inter–Op Hip Prosthesis Liab. Litig.*, 204 F.R.D. 330, 351 (N.D. Ohio 2001)). Further, there is no evidence of fraud or collusion. To the contrary, negotiations were contentious and hard fought. This settlement was reached after protracted negotiations, motion practice, and trial preparation, and was definitely "not an expedited settlement with an eye towards making a quick buck." *See Kis v. Covelli Enterprises, Inc.*, No. 4:18-CV-434, 2020 WL 2812405, at *5 (N.D. Ohio May 29, 2020).

Second, the parties in reaching the Settlement Agreement, considered the "complexity, expense and likely duration of the litigation." The Plaintiffs believe that the Settlement Agreement provides prompt and effective relief to the class and avoids the uncertainty inherent in establishing liability and in the various theories of damages, even if liability is established. *See Elliott v. LVNV Funding, LLC*, No. 3:16-CV-00675-RGJ, 2019 WL 4007219, at *9 (W.D. Ky. Aug. 23, 2019) (granting preliminary approval to settlement agreement where plaintiff believed the plaintiff's and Class Members' claims, as well as the underlying matters "without undue expense to the Parties, while reducing the burdens and uncertainties associated with protracted litigation of these claims.").

Third, the parties have engaged in sufficient discovery. Fourth, given the Defendant's strong defenses to liability, there remains uncertainty surrounding the likelihood of success on the

16

merits, and thus the Settlement's provision of very substantial payments for approved claims warrants preliminary approval. *See Hainey v. Parrott*, 617 F. Supp. 2d 668, 674 (S.D. Ohio 2007) (finding that uncertainty of success in light of defenses weighed in favor of settlement). Fifth, Class Counsel, based on their extensive experience and expertise litigating similar cases, believe that the Settlement is in the best interest of the Plaintiffs and Class Members. *See Elliott*, 2019 WL 4007219, at *10 (deferring to class counsels' reasoned assessment as to the benefit of settlement where there was no collusion or reason to suspect fraud in the settlement).

Sixth, because the Court is reviewing this issue at the preliminary, pre-notice stage, the reaction of absent class members is impossible to know. *Id*. Finally, "there is a strong public interest in encouraging settlement of complex litigation and class action suits because they are 'notoriously difficult and unpredictable' and settlement conserves judicial resources." *In re Cardizem*, 218 F.R.D. at 530 (quoting *Granada Inv., Inc. v. DWG Corp.*, 962 F.2d 1203, 1205 (6th Cir. 1992)).

For these reasons, the Settlement should be preliminarily approved.

**B.      <u>The proposed Classes should be conditionally certified</u>.**

Rule 23(e)(1)(B)(ii) directs a court to determine, at the preliminary approval stage, whether it "will likely be able to ... certify the class for purposes of judgment on the proposal." If the court determines that it will likely be able to certify the class, it preliminarily certifies the class pending final approval of the settlement. The type of certification approval that courts provide with a preliminary settlement approval is accorded under a "more relaxed" standard than certification itself. *See* 3 Newberg on Class Actions § 7:33 (5th ed.). A court's preliminary approval of the settlement in a class action—triggering notice to the class—will often note that a class is proposed to be certified in conjunction with final approval of the settlement. *Id*.

For purposes of effectuating the parties' Settlement Agreement, the proposed Classes have satisfied the Rule 23(a) numerosity, commonality, typicality, and adequacy requirements as well as the Rule 23(b)(3) predominance, superiority, and ascertainability requirements.

1.    Numerosity, Rule 23(a)(1).

To satisfy the numerosity requirement, Plaintiffs must demonstrate that the settlement class is "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). The Arrest Class and the Detention Class are estimated to have 439 and 1000 members, respectively. These are sufficient to satisfy the numerosity requirement for Settlement purpose. *See Gilkey v. Cent. Clearing Co.*, 202 F.R.D. 515, 521 (E.D. Mich. 2001) (citing cases where courts have certified classes with as few as eighteen members).

2.    Commonality, Rule 23(a)(2).

To satisfy the commonality requirement, Plaintiffs must demonstrate that there are "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). Though the rule "speaks of 'questions' in the plural, [the Sixth Circuit has] said that there need only be one question common to the class." *See Sprague v. Gen. Motors Corp.*, 133 F.3d 388, 397 (6th Cir. 1998) (emphasis added). However, this one question must represent "a common issue the resolution of which will advance the litigation." *Id.* Plaintiffs assert that for the Arrest Class "[T]he central common factual question is the nature, scope and application of the County's juvenile arrest policy and the training and instruction received by RCSO deputies in connection with that policy." [*See* Memorandum in Support of Revised Motion to Certify Classes (ECF No. 114) ("Class Cert. Memo." at 12]. According to Plaintiffs, the common legal questions for the Arrest Class include "(1) whether arresting children in violation of T.C.A. § 37-1-113 constitutes a false arrest; and (2) whether the County can be held liable for these arrests under Tennessee's "Sheriffs statute"

18

(T.C.A. § 8-8- 302)." [*See Id.* at 13]. Plaintiffs maintain that these questions are common to all class members and can be resolved class-wide in one adjudication.

Plaintiffs assert that the common questions of fact for the Detention Class "include, but are not limited, to: (1) Defendant's policies and practices regarding the pretrial incarceration of juveniles; (2) the JDC's overall conditions of confinement; (3) the JDC's use of solitary confinement against children; and (4) the JDC's staff training program." [*See* Class Cert. Memo. at 13]. According to Plaintiffs, the Detention Class include the common legal questions "(1) whether T.C.A. § 37-1-114(c) establishes state-created liberty interests that enjoy Fourteenth Amendment Procedural Due Process protection; (2) whether incarcerating children at the JDC violates Fourteenth Amendment Substantive Due Process if it is not supported by a compelling, or at least important, state interest; (3) whether Defendant violated the substantive and/or procedural due process rights of the Detention Damages Class; and (4) whether a permanent injunction is necessary to protect the Due Process rights of the Injunctive Detention Class." [*Id.* at 14]. The Parties submit that the foregoing is sufficient to show "commonality" at the preliminary approval stage of the Settlement.

3. <u>Typicality, Rule 23(a)(3).</u>

To satisfy the typicality requirement, Plaintiffs must demonstrate that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). The typicality requirement is preliminarily satisfied for Settlement purposes because the representatives' claims (1) "arise[ ] from the same event or practice or course of conduct that gives rise to the claims of other class members"; and (2) are "based on the same legal theor[ies]" as other class members' claims." *See Powers v. Hamilton Cnty. Pub. Def. Comm'n*, 501 F.3d 592, 618 (6th Cir. 2007).

19

4.    Adequacy.

To satisfy the adequacy requirement, Plaintiffs must demonstrate that the class representatives "will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). "There are two criteria for determining whether the representation of the class will be adequate: 1) the representative must have common interests with unnamed members of the class, and 2) it must appear that the representatives will vigorously prosecute the interests of the class through qualified counsel." *Senter v. Gen. Motors Corp.*, 532 F.2d 511, 524–25 (6th Cir. 1976). Plaintiffs submit that the first adequacy requirement can be met here because "each named Plaintiff … is a member of the class he or she seeks to represent with an incentive to vigorously litigate his or her claim[,] … has been subjected to one or both of Defendant's unlawful policies[,] … seek[s] compensatory damages for the arrests and incarcerations that they have already suffered, and … desire[s] to end Defendant's illegal policies with a permanent injunction." [Class Cert. Mem. at 16]. The second adequacy requirement can also be satisfied because Class Counsel have experience litigating complex civil rights matters, including class action litigation involving the policies and Defendant at issue in this case. [*Id.* at 16]. As the Court knows, Class Counsel have vigorously and capably represented the Plaintiffs in the course of this litigation and have demonstrated that they likewise will continue to vigorously prosecute the interests of the class.

5.    Predominance, Rule 23(b)(3).

To satisfy the predominance requirement, Plaintiffs must demonstrate that "questions of law or fact common to class members predominate over any questions affecting only individual members." Fed. R. Civ. P. 23(b)(3). To meet the predominance requirement, "a plaintiff must establish that the issues in the class action that are subject to generalized proof, and thus applicable to the class as a whole, ... predominate over those issues that are subject only to individualized

20

proof." *Beattie v. Century Tel, Inc.,* 511 F.3d 554, 564 (6th Cir. 2007). However, "the fact that a defense may arise and may affect different class members differently does not compel a finding that individual issues predominate over common ones." *Id.* Thus, for example, "[c]ommon issues may predominate when liability can be determined on a class-wide basis, even when there are some individualized damage issues." *Id.* Moreover, "[C]ases alleging a single course of wrongful conduct are particularly well-suited to class certification." *Sterling v. Velsicol Chemical Corp.*, 855 F.2d 1188, 1197 (6th Cir. 1988) (acknowledging an "increasingly insistent need" to certify class actions for lawsuits arising out of a "single course of conduct").

Further, at this stage, the analysis of the predominance requirement must account for the fact that this class is proposed for settlement purposes only and that the alleged wrongdoing arises out of a common set of facts. Courts have found that settlements "obviate[ ] the difficulties inherent in proving the elements of varied claims at trial," and consequently, "courts are more inclined to find the predominance test met in the settlement context." *In re Flint Water Cases*, No. 516CV10444JELMKM, 2021 WL 211465, at *15–16 (E.D. Mich. Jan. 21, 2021) *citing Good v. West Virginia American Water Co.*, No. 14-1374, 2017 WL 2884535, at *12 (S.D.W.V. Jul. 6, 2017) (quoting *Sullivan v. DB Invs., Inc.*, 667 F.3d 273, 304 & n.29 (3d Cir. 2011)). This is because when taking the proposed settlement into consideration for purposes of determining class certification, "individual issues which are normally present in personal injury litigation become irrelevant, allowing the common issues to predominate." *In re Inter-Op Hip Prosthesis Liab. Litig.*, 204 F.R.D. 330, 347 (N.D. Ohio 2001) (citation omitted). For example, "individual issues relating to causation, injury, and damage … disappear because the settlement's objective criteria provide for an objective compensation scheme." *Id*. This does not mean that the benefits of the settlement itself provide a common issue which satisfies the predominance requirement; rather, the common

issues that preexisted the proposed settlement, when considered in light of the proposed settlement, can predominate over any individual issues between class members. *Id. See also* 2 Newberg on Class Actions § 4:63 (5th ed.) ("[I]n settlement class actions, … predominance—the main focus of manageability—recedes in importance as well[,] and [t]hus, many courts have held that individualized issues may bar certification for adjudication because of predominance-related manageability concerns but that these same problems do not bar certification for settlement.").

The claims of the Arrest Class and the Detention Class each arise out of a "single course of conduct," namely the alleged arrest and "Filter System" policies, and contain common issues of law and facts. The Parties submit that such common issues satisfy the predominance requirement under Rule 23(b)(3), especially given that the proposed Settlement would eliminate individual issues such as causation, individualized defenses and damages.

6.    Superiority, Rule 23(b)(3).

To satisfy the superiority requirement, Plaintiffs must demonstrate that "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). Relevant factors in this inquiry include: (1) the interests of the class members in individually controlling separate actions; (2) the extent and nature of the litigation already begun by members of the class; and (3) the desirability of concentrating the litigation in a particular forum. For purposes of settlement, the three relevant 23(b)(3) factors weigh in favor of the superiority of class certification. First, the class members' interest in individually controlling the litigation weighs in favor of conditional class certification, because individuals seeking individualized relief either already or may eventually seek exclusion from the settlement class. Further, after five years of very expensive class discovery, individualized litigation would not be

economically preferable for those plaintiffs who have not already elected to file suit as individuals. *See In re Whirlpool Corp. Front-Loading Wahser Prods. Litig.*, 722 F.3d 838, 861 (6th Cir. 2013) ("Use of the class method is warranted particularly [when] the cost of litigation would dwarf any potential recovery."). Second, the extent and nature of class members' litigation in this case weighs in favor of certification. Class representatives and class counsel have been litigating this case for nearly five years in a suit that has involved extensive motion practice and discovery. The docket on this consolidated case shows over 400[5] filings and is rising. Such an extensive history supports the superiority of class certification for the defined adult class for the purpose of this settlement. Finally, all litigation concerning the juvenile arrest and detention policies has been centralized in this Court. Accordingly, the superiority requirement for purposes of preliminary settlement certification has been satisfied.

    7.    Ascertainability, Rule 23(b)(3).

    In addition to the predominance and superiority requirements, "Rule 23(b)(3) classes must also meet an implied ascertainability requirement." *Sandusky Wellness Ctr., LLC v. ASD Specialty Healthcare, Inc.*, 863 F.3d 460, 466 (6th Cir. 2017). Under this requirement, Plaintiffs must show "that the members of the class [are] *capable* of specific enumeration." *Cole v. City of Memphis*, 839 F.3d 530, 542 (6th Cir. 2016) (emphasis in original) (internal citations omitted). Such a showing is required for (b)(3) class certification because, "unlike (b)(1) and (b)(2) classes, (b)(3) class members are entitled to notice and are able to opt-out of the class." *Cole*, 839 F.3d. at 541. The ascertainability requirement is satisfied with "a class description [that is] sufficiently definite so that it is administratively feasible for the court to determine whether a particular individual is a member." *Id.* The proposed classes are sufficiently ascertainable to justify certification.

─────────────────

[5] One hundred ninety-seven (197) filings in the original 3:16-cv-1975 case file, and two hundred nineteen (219) filings in the current 3:17-cv-1014 consolidated case file.

Specifically, membership in the Classes is ascertainable through juvenile court and RCJDC records. The class definitions in this case are based on objective criteria, such as the time period of arrest and detention and the charges and other circumstances involved. Accordingly, the members of the Classes are capable of specific enumeration and Plaintiffs have met the ascertainability requirement for purposes of preliminary settlement certification. *Sandusky Wellness Ctr., LLC*, 863 F.3d at 466.

As the foregoing shows, the proposed Classes have preliminarily for Settlement purposes satisfied the Rule 23(a) numerosity, commonality, typicality, and adequacy requirements, and the Rule 23(b)(3) predominance, superiority, and ascertainability requirements.

### C. The Notice Plan should be preliminarily approved.

When requesting class certification for purposes of settlement, parties must "provide the court with information sufficient to enable it to determine whether to give notice of the proposal to the class." Fed. R. Civ. P. 23(e)(1)(A). Additionally, for any class certified under Rule 23(b)(3), "the court must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B). "[N]otice must ... fairly apprise ... prospective members of the class of the terms of the proposed settlement so that class members may come to their own conclusions about whether the settlement serves their interests." *Gooch v. Life Investors Ins. Co. of Am.*, 672 F.3d 402, 423 (6th Cir. 2012) (quoting *UAW v. Gen. Motors Corp.*, 497 F.3d 615, 630 (6th Cir. 2007) (internal quotation marks omitted)). To meet this standard, a class notice should "inform the class members of the nature of the pending action, the general terms of the settlement, that complete and detailed information is available from the court files, and that any class member may appear and be heard at the hearing." *Kinder v. Meredith Corp.*, 2016 WL 454441, at *3 (E.D. Mich. 2016)

24

*quoting* Newburg on Class Actions § 8:17 (5th ed.). Such notice must include: (i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues, or defenses; (iv) that a class member may enter an appearance through an attorney if the member so desires; (v) that the court will exclude from the class any member who requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on members under Rule 23(c)(3). Fed. R. Civ. P. 23(c)(2)(B).

The Parties proposed Class Notice is attached as Exhibit 4 to the Settlement Agreement[6] and complies with all requirements under Rules 23(e)(1) and 23(c)(2)(B). It includes the following information: a description of the nature of the action; the definition of the class certified; the class claims, issues, or defenses; a brief statement of the claims released by the Classes; the date of the Fairness Hearing; a description of the proposed settlement; the deadline for submitting objections to the settlement; information about how to obtain a copy of the Settlement Agreement; the information that must be contained in any objection; that a class member may enter an appearance through an attorney if the member so desires; that the court will exclude from the class any member who requests exclusion; the time and manner for requesting exclusion; the binding effect of a class judgment on members under Rule 23(c)(3); information regarding attendance at the Fairness Hearing, including the date and time; and, contact information for all counsel to the case, along with directions to contact Class Counsel if they have any questions.

Further, the plan for Class Notice is the best notice practicable under the circumstances and satisfies the requirements of due process and Rule 23(e)(1) of the Federal Rules of Civil Procedure. More specifically, contingent upon the entry of a preliminary approval order, a third-party Settlement Administrator, Settlement Services, Inc. ("SSI"), is to be hired and will, among other

---

[6] The Settlement Agreement is Exhibit A to this motion.

things, oversee providing notice of the proposed Settlement to potential Class Members. [*See* Settlement Agreement, §6.1.] Up to $290,000.00 is to be paid by Defendants for the administration of the settlement. [*Id.*, §7.1.] Notice will be provided in a number of ways. First, based upon a list provided by Class Counsel identifying persons they believe are likely to be Class Members (the "Class List"), the Settlement Administrator shall mail the Notice, via first-class U.S. Mail to the persons on the list within ten (10) days of the issuance of the Preliminary Approval Order. This mailing will be made to the last known address(es) of the persons on the list or updated addresses located by the Settlement Administrator using the United States Postal Service's National Change of Address database and/or LexisNexis tracing. [*Id.*, §6.2(a).] Second, the Settlement Administrator will build and host a website that includes copies of the Preliminary Approval Order, Notice and the Claim Forms for use by potential Class Members. [*Id.*, §6.2(b).] Third, the Settlement Administrator shall perform a LexisNexis trace to locate and identify e-mail addresses for the potential Class Members listed on the Class List. Using the traced email addresses, the Settlement Administrator will e-mail the Notice to all potential Class Members on the Class List, and the e-mail will direct the persons to the Website for more information about the case and how to submit a claim. [*Id.*, §6.2(c).] Fourth, the Settlement Administrator shall perform a LexisNexis trace to locate cell phone numbers for the potential Class Members listed on the Class List for whom phone numbers are not already provided. Using the phone numbers on the Class List or the traced phone numbers, the Settlement Administrator will send three text messages, one per day on three separate days, to each potential class member on the Class List, and the text will direct the Class Member to the Website via a hyperlink for more information about the case and how to submit a claim. [*Id.*, §6.2(d).] The Settlement Administrator shall cause to be published in the Daily News Journal (a local Rutherford County newspaper) an advertisement designed to

26

inform readers of the general nature of this settlement and directing readers to the web address

www.rutherfordjuvenilesettlement.com for full details.  The advertisement shall be published in

two (2) hard copy editions of the paper, with one running on a Sunday and the other running on a

Wednesday.  [*Id.*, §6.2(e).]

Accordingly, the prospective plan for class notice should be preliminarily approved.

## IV.     CONCLUSION AND REQUESTED RELIEF

For the reasons set forth above, the Parties respectfully request that the Court: (1)

preliminarily approve the proposed class action Settlement, (2) preliminarily certify the Arrest

Class and the Detention Class for Settlement purposes only, (3) appoint the above-named Plaintiffs

as Class Representatives, (4) appoint Kyle Mothershead, Frank Brazil and Mark J. Downton as

Class Counsel for the Classes, (5) approve and direct the issuance of notice to the Class by the

Settlement Administrator pursuant to the terms of the Settlement, and (6) schedule a final fairness

hearing.[7]

Respectfully submitted,

*s/* Jonathan P. Lakey
Jonathan P. Lakey (BPR 016788)
Walk Cook & Lakey, PLC
431 South Main Street, Suite 300
Memphis, TN 38103
Telephone: (901) 260-2575
jlakey@walkcook.com

D. Randall Mantooth (BPRN 013875)
Hudson, Reed & Christiansen, PLLC
16 Public Square North
Murfreesboro, Tennessee 37130
(615) 893-5522
rmantooth@mborolaw.com
*Attorneys for Defendant*

---

[7] A [proposed] Order Granting Preliminary Approval of the Class Settlement Agreement, Setting Fairness hearing and Approving Fairness Hearing Notice is attached as Exhibit B hereto (an identical copy of this proposed order is Exhibit 5 to the Settlement Agreement).

27

*s/* Mark J. Downton
MARK J. DOWNTON, #20053
**BRAZIL CLARK, PLLC**
2901 DOBBS AVENUE
NASHVILLE, TN 37211
T: 615-984-4681 / F: 615-514-9674
mark@downtonclark.com

/s/ Frank Brazil
FRANK R. BRAZIL, #34586
**BRAZIL CLARK, PLLC**
2901 DOBBS AVENUE
NASHVILLE, TN 37211
T: 615-984-4681 / F: 615-514-9674
frank@brazilclark.com

*/s/* Kyle F. Mothershead
KYLE F. MOTHERSHEAD, #22953
**LAW OFFICE OF KYLE
MOTHERSHEAD**
2901 DOBBS AVE.
NASHVILLE, TN 37211
T: 615-730-8619 / F: 615-229-6387
kyle@mothersheadlaw.com
*Attorneys for Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that on June 16, 2021, a copy of the foregoing Joint Motion for Preliminary Approval was filed electronically. Notice of this filing was sent by operation of the Court's electronic filing system to each of the parties on the electronic filing receipt. Parties may access this filing through the Court's electronic filing system.

MARK J. DOWNTON
**BRAZIL CLARK, PLLC**
2901 DOBBS AVENUE
NASHVILLE, TN 37211

FRANK BRAZIL
**BRAZIL CLARK, PLLC**
2901 DOBBS AVENUE
NASHVILLE, TN 37211

KYLE F. MOTHERSHEAD
**LAW OFFICE OF KYLE
MOTHERSHEAD**
2901 DOBBS AVE.
NASHVILLE, TN 37211

s/Jonathan P. Lakey
Jonathan P. Lakey