**Exhibit A**

**to Joint Motion for Preliminary Approval**

| | | |
|---|---|---|
| DYLAN GEERTS, ET AL.. | ) | |
| | ) | |
| PLAINTIFFS, | ) | No. 3:17-1014 |
| V. | ) | |
| | ) | CRENSHAW/ HOLMES |
| RUTHERFORD COUNTY, TENNESSEE, | ) | |
| DEFENDANT. | ) | |

## SETTLEMENT AGREEMENT AND RELEASE

The Settlement Agreement and Release ("Settlement Agreement" and/or "Agreement"), dated June 7, 2021, is made and entered into by and among Named Plaintiffs K.W., A.B., by and through her next friend, Sandra Brien, J.B., by and through his next friend, Jacqueline Brinkley, and Dylan Geerts, on behalf of themselves and of all members of the Arrest Class and the Detention Class (the "Classes"), and Defendant Rutherford County, Tennessee, all of whom are Parties to the Litigation, as those terms are defined in Sections 2.5, 2.6, 2.12, 2.13 2.17, 2.20, 2.30, and 2.40, of the Agreement.

The Agreement, and all associated exhibits or attachments hereto, which are specifically incorporated herein by reference, are made for the sole purpose of settling the Litigation and are made in compromise of disputed claims. Because the Settlement Agreement settles the Litigation on a class-wide basis, it must receive preliminary and final approval from the United States District Court, Middle District of Tennessee, Nashville Division (the "Court").[1] Accordingly, the Parties enter into the Agreement on a conditional basis. If the Court does not enter the Final Approval Order or the Final Judgment entered by the Court materially alters the Final Approval Order or the

---

[1] Terms are defined throughout both the body of this Settlement Agreement and Release, as well as in Section 2, and all such terms shall have the meaning ascribed to them therein.

Agreement referenced herein, including but not limited to alterations of appeal and subsequent rulings by appellate courts, this Agreement shall be deemed null and void *ab initio*[2]; it shall have no force or effect whatsoever; it shall not be referred to or utilized for any purpose whatsoever; and the negotiation, terms, and the entry of the Agreement shall remain subject to the provisions of Federal Rules of Evidence 408, and any other analogous common law or rules of evidence that are applicable.

Defendant denies all the Named Plaintiffs' claims as to liability, damages, penalties, interest, fees, restitution, injunctive relief, and all other forms of relief. Defendant also denies the class allegations asserted in the Litigation and denies that the claims asserted in the Litigation could or should be certified as a class other than for settlement purposes. Defendant specifically denies that it has violated the Constitution of the United States, the Constitution of the State of Tennessee, any laws or statutes, regulations, or guidelines promulgated pursuant to any statute, or any other applicable laws, regulations, or legal requirements, including common law. Neither this Agreement, nor any of its terms or provisions, nor any of the negotiations connected with it, shall be construed as an admission or concession by Defendant of any violations or failures to comply with any applicable duty, obligation and/or law. Neither this Agreement, nor any of its terms or provisions, nor any of the negotiations connected with it, shall be admissible as evidence in the Litigation, or any other action or legal proceeding, in any manner whatsoever, except as necessary in a proceeding to enforce the terms of this Agreement.

---

[2] Except to the effect that its terms have already been actuated, specifically referring to funds paid for claims administration.

2

## 1. DESCRIPTION OF LITIGATION

Minor children K.W.,[3] A.B., and J.B. filed the initial lawsuit in the United States District Court for the Middle District of Tennessee (the "Court") as a proposed class action (Case No. 3:16-cv-01975) with their guardians Kanisa Davis, Sandra Brien, and Jacqueline Brinkley, against Defendants Murfreesboro Police Officer Chrystal Templeton; Rutherford County, Tennessee; and the City of Murfreesboro, Tennessee. The claims against Defendant Templeton were severed, and the claims against City of Murfreesboro were dismissed, leaving Rutherford County as the sole Defendant in Case No. 3:16-cv-01975. On July 7, 2017, Dylan Geerts filed the second lawsuit against Rutherford County (Case No. 3:17-cv-1014). Following a consolidation, the two lawsuits are now proceeding together as a single case under Case No. 3:17-cv-1014. Both lawsuits are referred to herein together as the "Litigation", as further defined in Section 2.31 of the Settlement Agreement.

Essentially, Named Plaintiffs allege that two policies Rutherford County followed in relation to arresting and detaining juveniles violated those juveniles' state law and federal constitutional rights. First, Named Plaintiffs alleged that Rutherford County maintained a de facto policy requiring all juveniles charged with any delinquent or unruly offense be taken into custody and delivered to the Rutherford County Juvenile Detention Center ("RCJDC"). Named Plaintiffs asserted state-law false arrest claims alleging that this policy was in violation of Tennessee state law, and in particular Tenn. Code Ann. §§ 37-1-113 and 40-7-103. Second, Named Plaintiffs alleged that Rutherford County maintained a de facto policy (sometimes called the "Filter System") of placing juveniles in secure detention at the RCJDC in violation of state law restrictions permitting secure detention of juveniles only under the circumstances set forth in Tenn. Code Ann.

---

[3] K.W. is no longer a minor. [*See* Order Granting Motion to Substitute Party, Doc. No. 214.]

§ 37-1-114(c). Named Plaintiffs asserted federal civil rights claims under 28 U.S.C. § 1983, alleging that this policy violated their procedural and substantive due process rights under the Fourteenth Amendment to the U.S. Constitution.

Named Plaintiffs, on behalf of themselves and the purported classes, filed a motion seeking class action certification pursuant to Federal Rules of Civil Procedure 23(a), 23(b)(2), and 23(b)(3), and Rutherford County filed a response opposing such certification. As of the date hereof, the Court has not yet ruled on this Motion. Additionally, Rutherford County has filed two motions for summary judgment, contested by Plaintiffs, which are still pending as of the date hereof.

## 2. DEFINITIONS

As used in the Settlement Agreement, the following terms have the meanings specified below:

**2.1.** **"ACM Arrests"** means arrests of juveniles falling within the definition of the Arrest Class as defined in Section 5.1 of the Agreement, and as set forth in Section 9.1(a) hereof.

**2.2.** "**Approved Arrest Claim**" means an Arrest Claim Form submitted by an Authorized Person that: (a) is a Valid Claim Form; (b) is submitted on or before the Claims Deadline and in accordance with the directions on the Arrest Claim Form; (c) is signed by an Authorized Person, physically or electronically, subject to the penalties of perjury; (d) contains information that is complete, truthful and accurate; and, (e) based upon the information set forth in the completed Arrest Claim Form and supported by reliable documentation, there has been a Final Determination, pursuant to Section 8 of the Agreement, that the claimant with respect to the Arrest Claim Form meets the definition of the Arrest Class set forth in Section 5.1 of the Agreement and, thus, the Arrest Class Member has a compensable claim under the terms of this Agreement for an ACM Arrest.

4

**2.3.** "**Approved Detention Claim**" means a Detention Claim Form submitted by an Authorized Person that: (a) is a Valid Claim Form; (b) is submitted on or before the Claims Deadline and in accordance with the directions on the Detention Claim Form; (c) is signed by an Authorized Person, physically or electronically, subject to the penalties of perjury; (d) contains information that is complete, truthful and accurate; and, (e) based upon the information set forth in the completed Detention Claim Form and supported by reliable documentation, there has been a Final Determination, pursuant to Section 8 of the Agreement, that the claimant with respect to such Detention Claim Form meets the definition of the Detention Class set forth in Section 5.2 of the Agreement and, thus, the Detention Class Member has a compensable claim under the terms of this Agreement for a DCM Detention.

**2.4.** "**Arrest Claim Form**" means the document substantially in the form attached hereto as Exhibit 1, as approved by the Court. The Arrest Claim Form shall be available in paper and electronic format. In order to pursue a claim for compensation under this Agreement for an ACM Arrest, an Authorized Person must complete and submit an Arrest Claim Form as provided for in this Agreement. Each timely submitted Arrest Claim Form can be the basis for one, and only one, Approved Arrest Claim. Authorized Persons must submit a separate Arrest Claim Form for each ACM Arrest for which they seek compensation.

**2.5.** "**Arrest Class**" is defined in Section 5.1 of the Agreement, which is incorporated by reference as if fully set forth herein.

**2.6.** "**Arrest Class Members**" or "**ACMs**" means and refers to all persons who fall within the definition of the Arrest Class and who do not request exclusion from the Arrest Class pursuant to the terms of the Agreement, including Section 6.5. A single member of the Arrest Class shall be referred to as "**Arrest Class Member**" or "**ACM**".

5

**2.7.** "**Authorized Person**" means an individual who is, at the time he or she takes any action described or contemplated within this Agreement, (1) an adult over the age of eighteen (18) years purporting to satisfy the definition of a claimant under either (or both) the Arrest Class or Detention Class definitions, undertaking such action on his or her own behalf; or (2) the parent, legal guardian, or other individual authorized under federal, state, or tribal law to act on behalf of another individual purported to satisfy the definition of a claimant under either (or both) the Arrest Class or Detention Class definitions, undertaking such action on behalf of the other individual based on that individual's legal disability, including but not limited to minority. Section 2.7(b) DOES NOT APPLY where the individual purported to satisfy the definition of one (or both) of the Classes is an adult who is not under any other legal disability.

**2.8.** "**Claims Deadline**" means the date by which all Claim Forms must be postmarked or received to be considered timely and shall be one hundred and thirty (130) calendar days after the Preliminary Approval Date. The Claims Deadline shall be clearly set forth in the Preliminary Approval Order, Final Approval Order and in the Final Judgment, as well as in the Notice and in the Claim Forms. No Claim Forms submitted after the Claims Deadline can serve as the bases for compensation under this Agreement, and the Settlement Administrator is specifically barred and prohibited from reviewing any such Claim Forms for purposes of any activity related to a compensation determination.

**2.9.** "**Claim Forms**" refers collectively to the Arrest Claim Form and Detention Claim Form. The singular "Claim Form" refers to one Arrest Claim Form or Detention Claim Form.

**2.10.** "**Class Counsel**" means attorneys Kyle Mothershead, of The Law Office of Kyle Mothershead, Frank Brazil, of Brazil Clark, PLLC, and Mark J. Downton, of counsel for Brazil Clark, PLLC.

6

**2.11.** "**Class List**" means a list that Class Counsel has compiled that identifies potential members of the Classes based upon records provided to them by Defendant during discovery, and which they have provided to Defendant's Counsel contemporaneously with the execution of the Settlement Agreement with specific reference to this definition. Class Counsel shall provide the Settlement Administrator the Class List within three (3) calendar days of the Preliminary Approval Date.

**2.12.** "**Class Representatives**" and/or "**Named Plaintiffs**" means and refers to the following: Plaintiffs Kazmere Watts, A.B., by and through her next friend, Sandra Brien, J.B., by and through next friend, Jacqueline Brinkley, and Dylan Geerts.

**2.13.** "**Classes**" refers to the Arrest Class and Detention Class, collectively, and all members thereof.

**2.14.** "**Class Members**" refers to the Arrest Class Members and Detention Class Members, collectively.

**2.15.** "**Court**" means the United States District Court, Middle District of Tennessee, Nashville Division, Judge Waverly Crenshaw, or any judge who shall succeed him as the Judge in this Litigation, presiding.

**2.16.** "**DCM Detentions**" means detentions of juveniles falling within the definition of the Detention Class as defined in Section 5.2 of the Agreement and as set forth in Section 9.2(a) hereof.

**2.17.** "**Defendant**" means Defendant Rutherford County, Tennessee.

**2.18.** "**Defendant's Counsel**" means Jonathan P. Lakey, Walk Cook & Lakey PLC; and, D. Randall Mantooth, Hudson, Reed & Christiansen, PLLC.

7

2.19.   "**Detention Claim Form**" means the document substantially in the form attached hereto as Exhibit 3, as approved by the Court.  The Detention Claim Form shall be available in paper and electronic format.  In order to pursue a claim for compensation under this Agreement for a DCM Detention, an Authorized Person must complete and submit a Detention Claim Form as provided for in this Agreement.  Each timely submitted Detention Claim Form can be the basis for one, and only one, Approved Detention Claim. Authorized Persons must submit a separate Detention Claim Form for each DCM Detention for which they seek compensation. "**Detention Class**" is defined in Section 5.2 of the Agreement, which is incorporated by reference as if fully set forth herein.

2.20.   "**Detention Class Members**" and/or "**DCMs** means and refers to all persons who fall within the definition of the Detention Class and who do not request exclusion from the Detention Class pursuant to the terms of the Agreement, including Section 6.5.  A single member of the Detention Class shall be referred to as a "**Detention Class Member**" or "**DCM**".

2.21.   "**Effective Date**" means the date thirty (30) calendar days after the Final Approval Effective Date, as that term is defined below in Section 2.24.

2.22.   "**Exclusion Deadline**" means the date by which a written request for exclusion from the Class Settlement under the terms of this Settlement Agreement, including but not limited to Section 6.5, must be postmarked for delivery to the Settlement Administrator in order to be timely.  The Exclusion Deadline shall be sixty (60) calendar days before date established for the Final Hearing Date.

2.23.   "**Fee Award**" means the amount of attorneys' fees awarded by the Court to Class Counsel and shall in no event exceed the Maximum Fee Award but may be less than the Maximum Fee Award.

**2.24.** "**Final Approval Effective Date**" means one business day following the later of the following events: (i) the date upon which the time expires for filing or noticing any appeal of the Court's Final Approval Order and Final Judgment; (ii) if there is an appeal or appeals, other than an appeal or appeals solely with respect to the Fee Award or Named Plaintiffs' Service Award, the date of completion, in a manner that finally affirms and leaves in place the Final Approval Order and Final Judgment without any material modification, of all proceedings arising out of the appeal or appeals (including, but not limited to, the expiration of all deadlines for motions for reconsideration or petitions for review and/or *certiorari*, all proceedings ordered on remand, and all proceedings arising out of any subsequent appeal or appeals following decisions on remand); or (iii) the date of final dismissal of any appeal or the final dismissal of any proceeding on *certiorari*.

**2.25.** "**Final Approval Hearing**" and/ or "**Fairness Hearing**" means the hearing before the Court where the Parties request the entry of the Final Approval Order approving the terms of the Settlement Agreement and the Final Judgment, including the payments to the Class Members and Class Representatives, and Class Counsel seeks the Fee Award and reimbursement of expenses, all of which shall be materially consistent with the terms of the Settlement Agreement.

**2.26.** "**Final Approval Order**" means the Order entered by the Court following the Final Approval Hearing approving the Settlement Agreement, including the payments to the Class Members and Class Representatives, that is in materially the same form as the proposed final approval order attached as Exhibit 2 and materially consistent with the terms of the Settlement Agreement. Any reduction in any Attorneys' Fee Award or Named Plaintiffs' Service Award compared with the amounts described in the Settlement Agreement shall not be considered a material alteration.

**2.27.** "**Final Determination**" means the final determination made pursuant to and consistent with the requirements set forth in this Agreement, including but not limited to the provisions of Section 8 of the Agreement that:

(a)     a submitted Arrest Claim Form is or is not compensable as an Approved Arrest Claim is based on whether an Authorized Person submitting the Claim Form (or claimant on whose behalf it is submitted) meets or does not meet the Arrest Class definition with respect to the arrest that is the subject of the submitted Claim Form; or,

(b)     a submitted Detention Claim Form is or is not compensable as an Approved Detention Claim based on whether an Authorized Person submitting the Claim Form (or claimant on whose behalf it is submitted) meets or does not meet the Detention Class definition with respect to the detention that is the subject of the submitted Claim Form.

Any such Final Determination is final and conclusive and binding on the Parties.

**2.28.** "**Final Judgment**" means the Final Judgment and Order to be entered by the Court approving the Settlement after the Final Approval Hearing that is substantially and materially consistent with the proposed Final Approval Order and the terms of the Agreement.

**2.29.** "**Initial Determination**" means the initial and non-final determination made by the Settlement Administrator pursuant to and consistent with the requirements set forth in this Agreement, including but not limited to the provisions of Section 8 hereof that:

(a)     A submitted Arrest Claim Form is or is not compensable based on whether an Authorized Person submitting the Claim Form (or claimant on whose behalf it is submitted) meets or does not meet the Arrest Class definition with respect to the arrest which is the subject of the submitted Claim Form; or

10

**(b)** a submitted Detention Claim Form is or is not compensable based on whether an Authorized Person submitting the Claim Form (or claimant on whose behalf it is submitted) meets or does not meet Detention Class definition with respect to the detention which is the subject of the submitted Claim Form.

Any such Initial Determination is preliminary and not final and shall be subject to the notice and objection provisions set forth in Sections 8.7 through 8.10 of the Agreement.

2.30.  "**Litigation**" is consistent with the definition set forth in Section 1 above and refers to the two lawsuits that are now proceeding together in the United States District Court, Middle District of Tennessee, Case No. 3:17-cv-1014, as a single case.

2.31.  "**Maximum Arrest Class Settlement Fund**" shall be Five Hundred Sixteen Thousand Six Hundred and Sixty-Six Dollars and 67/100 ($516,666.67), and have the meaning set forth in Section 9.1(c) hereof.

2.32.  "**Maximum Detention Class Settlement Fund**" shall be Seven Million Two Hundred Thirty-Three Thousand Three Hundred and Thirty-Three Dollars and 33/100 ($7,233,333.33), and have the meaning set forth in Section 9.2(c) hereof.

2.33.  "**Maximum Fee Award**" means the maximum Fee Award that may be sought by, and/or awarded by the Court to, Class Counsel and is Two Million Seven Hundred and Fifty Thousand Dollars and 00/100 ($2,750,000.00).

2.34.  "**Mediator**" means Carlos A. Gonzalez of The Gonzalez Firm, LLC., P.O. Box 49754, Atlanta, Georgia 30359.

2.35.  "**Minimum Arrest Class Settlement Fund**" shall be One Hundred Twenty-Nine Thousand One Hundred and Sixty-Six Dollars and 67/100 ($129,166.67), and have the meaning set forth in Section 9.1(c) hereof.

2.36. **"Minimum Detention Class Settlement Fund"** shall be One Million Eight Hundred Eight Thousand Three Hundred Thirty-Three and 33/100 Dollars ($1,808,333.33), and have the meaning set forth in Section 9.2(c) hereof.

2.37. "**Notice**" shall mean and refer to the notice describing the Fairness Hearing and the terms of the settlement embodied in this Agreement to be disseminated to the Classes pursuant to the dates and terms described in Section 6 below, the form of which is attached as Exhibit 4, and as approved by the court in the Preliminary Approval Order.

2.38. **"Notice Plan"** means the proposed plan of disseminating notice to Class Members of the proposed Settlement Agreement and of the Final Approval Hearing as described in Section 6 below.

2.39. **"Objection Deadline"** means the date by which a written objection to the Settlement Agreement under the terms of this Settlement Agreement, including but not limited to Section 6.4, must be submitted by a Class Member (or an Authorized Person on their behalf) to be timely. The Objection Deadline shall be sixty (60) calendar days before date established for the Final Hearing Date.

2.40. "**Parties**" means and refers to the Named Plaintiffs, individually and on behalf of the Classes, the Classes and Defendant.

2.41. "**Preliminary Approval Date**" means the date the Court enters the Preliminary Approval Order.

2.42. "**Preliminary Approval**" means the Court's certification of the Classes for settlement purposes, preliminary approval of the Settlement Agreement, approval of the form of the Notice and of the Notice Plan, and entry of the Preliminary Approval Order.

12

**2.43.** "**Preliminary Approval Order**" means the proposed order preliminarily approving the Settlement Agreement and directing notice thereof to the Classes, to be submitted to the Court in conjunction with the Parties' Motion for Preliminary Approval of the Settlement Agreement, and consistent with Exhibit 5 or substantially similar form agreed to by the Parties in writing.

**2.44.** "**Released Parties**" means Rutherford County, Tennessee, its divisions, boards, agencies, and affiliates, predecessors, successors, and/or assigns, together with its past, present and future officials, employees, representatives, officers, directors, department heads, insurers, contractors, agents, and attorneys; any past, present and future Rutherford County Sheriff, together with his/her and his/her office's past, present and future deputies, officials, employees, representatives, officers, insurers, contractors, agents, and attorneys; any past, present and future Rutherford County Juvenile Court Judge, his/her and his/her office's past, present and future magistrates, referees, officials, employees, representatives, officers, insurers, contractors, agents, and attorneys; and any other past, present, and future judicial officer, Constitutional official, or fee official, together with his/her and his/her office's past, present, and future deputies, officials, employees, representative, officers, insurance, contractors, agents, and attorneys.

**2.45.** "**Releasing Parties**" means the Named Plaintiffs and the Class Members, and every Class Member, individually and as a Class, for themselves, their attorneys, parents, spouses, children, executors, representatives, heirs, successors, and assigns.

**2.46.** The "**Settlement Administrator**" means and refers to Settlement Services, Inc., a third-party contractor who is contractually obligated to perform the services of the Settlement Administrator as described in this Agreement.

**2.47.** "**Settlement Fund**" means a sum up to and not to exceed eleven million dollars ($11,000,000.00) to be made available by Rutherford County for payments consistent with the Settlement Agreement, including but not limited to Sections 4.1 through 4.7 of the Agreement.

**2.48.** "**Special Master**" means and refers to Max D. Fagan, who has been agreed upon by the Parties. Consistent with Section 8.10 of the Agreement, the Special Master will evaluate those Claim Forms submitted by purported members of the Classes and the issuance of Initial Determinations relative to the same, the issuance of which has been challenged by Defendant, Defendant's Counsel or Class Counsel. Mr. Fagan will serve as Special Master in conformity with the terms of the Settlement Agreement and the written agreement he has entered with the Parties. In the event Mr. Fagan is unable to serve in this capacity until the responsibilities of the Special Master under the Settlement Agreement are fulfilled, the Parties agree to work in good faith to find a replacement Special Master that is acceptable to Defendant's Counsel and Class Counsel.

**2.49.** "**Valid Claim Form**" means a Claim Form submitted by an Authorized Person that the Settlement Administrator determines meets each of the following requirements: (1) it contains all of the information requested to be filled in by an Authorized Person on the Claim Form, and the information provided is legible; (2) the claimant's name is set forth in, and the social security number on the form matches the information for that name in, (a) the Class Spreadsheet (Section 6.2(a)), or, (b) the RCSD Files (Section 8.6(a)), or (c) the Juvenile Court Files (Section 8.6(a)), or (d) or the RCJDC Files (Section 8.6(b)); and, (3) the Claim Form is signed by an Authorized Person, meaning the person who purports to be a Class Member or his/her legally authorized representative as set forth in Section 2.7, under the penalty of perjury.

**2.50.** "**Website**" shall have the meaning set forth in Section 6.2(b) of this Agreement.

## 3. NEGOTIATION OF SETTLEMENT AGREEMENT AND POSITION OF THE PARTIES

**3.1.** The Settlement Agreement is the result of Court ordered mediated negotiations between the Parties that began in May 2019 and spanned over the next twenty (20) months. The Parties participated in numerous in-person mediation sessions conducted at the direction of the Court and under the supervision of the Mediator, telephonic conferences, exchange of written documents and intense negotiations. The Parties and their counsel affirmatively represent and attest that the Settlement Agreement is the result of arm's length negotiation guided and directed by the Mediator. The 2019 negotiations proved unsuccessful. The Parties paused further negotiations, completed extensive discovery and continued litigating the matter. Beginning in about May 2020, the Parties reengaged in informal negotiation sessions using the Mediator, and on May 21, 2020, the Parties met in-person for a full day of mediation. While an agreement was not reached, the Parties continued to exchange written information and engage in telephonic sessions, and then met for another in-person mediation session on June 2, 2020. Again, following the in-person meeting, the Parties continued to negotiate telephonically and participated in another full day of mediation in person on September 11, 2020. Over the summer of 2020, the Parties made progress towards terms that might be acceptable, engaged in telephonic follow-up under the guidance of the Mediator, and on October 13 they met in person for another full day of mediation in Murfreesboro, Tennessee. At the conclusion of the October 13 mediation, the Parties reached a tentative agreement regarding many of the material and important terms for a settlement of the Litigation (the "Partial Terms"). Defendant's Counsel then obtained approval from Rutherford County of the Partial Terms and were directed to attempt to complete the negotiation of the outstanding material terms. The additional material terms were negotiated from October through

15

December, whereupon Rutherford County thereafter approved those additional material terms. Thereafter, the Parties negotiated the precise language of the Settlement Agreement.

3.2.  At all times, Defendant has denied and continues to deny any wrongdoing whatsoever and has denied and continues to deny that it committed, or threatened, or attempted to commit any wrongful act or violation of law or duty alleged in the Litigation. Defendant also denies: (1) each and all of the claims and contentions alleged by Named Plaintiff; (2) all charges of wrongdoing or liability against them or their agents arising out of any conduct, statements, acts or omissions alleged in the Litigation; and (3) that Named Plaintiffs or the Classes are entitled to any form of damages based on the conduct alleged in the Litigation. In addition, Defendant maintains that it has meritorious defenses to the claims alleged in the Litigation and was prepared to vigorously defend all aspects of the Litigation. Nonetheless, considering the uncertainty and risks inherent in any litigation, Defendant has concluded that further defense of the Litigation would be protracted, risky, burdensome, and expensive, and that it is desirable and beneficial to it that the Litigation be fully and finally settled and terminated in the manner and upon the terms and conditions set forth in this Agreement. This Agreement is a compromise, and the Agreement, any related documents, and any negotiations resulting in it shall not be construed as or deemed to be evidence of or an admission or concession of liability or wrongdoing on the part of Defendant, or any of the Released Parties, with respect to any claim of any fault or liability or wrongdoing or damage whatsoever.

3.3.  Named Plaintiffs believe that the claims asserted in the Litigation against the Defendant have merit and that they would have ultimately been successful in adversarial certification of the proposed classes under Rule 23 and prevailing on the merits at summary judgment and trial. Nonetheless, Named Plaintiffs and Class Counsel recognize and acknowledge

that Defendant has raised factual and legal defenses in the Litigation that present a risk that Named Plaintiffs may not prevail. Named Plaintiffs and Class Counsel also have taken into account the uncertain outcome and risks of any litigation, especially in complex actions, as well as the difficulties and delays inherent in such litigation. Therefore, Named Plaintiffs believe that it is desirable that the Released Claims be fully and finally compromised, settled and resolved with prejudice, and barred pursuant to the terms set forth herein. Based on their evaluation, Class Counsel have concluded that the terms and conditions of this Agreement are fair, reasonable and adequate to the Classes, and that it is in the best interests of the Settlement Classes to settle the claims raised in the Litigation pursuant to the terms and provisions of this Agreement.

3.4.     Given all the above and considering all other risks and uncertainties of continued litigation and all factors bearing on the merits of settlement, the Parties are satisfied that the terms and conditions of the Settlement Agreement are fair, reasonable, adequate, and in their respective best interests.

## 4.      BENEFIT TO CLASS MEMBERS.

As described above, the Settlement Agreement resolves disputed claims between the Named Plaintiffs, individually and on behalf of the Classes, and Defendant.  As set forth in Section 3, Defendant has pending before the Court motions for summary judgment that would dispose of all the Named Plaintiffs' claims.  Moreover, Defendant has opposed certification of the Classes and there is a genuine issue as to whether any class should be certified.  Named Plaintiffs have requested class certification and denial of Defendant's summary judgment motions.   The Settlement Agreement resolves the dispute and provides for the agreed certification of Classes for the purposes of settlement only, and the following relief to Class Members.

17

### 4.1. Maximum Total Settlement Payout

Defendant agrees to total financial payments under the terms of the Settlement Agreement up to a maximum of, and which in no event shall exceed, Eleven Million Dollars and no/100 ($11,000,000.00). Defendant's actual payments under the Settlement Agreement are contingent as set forth below in more detail, including but not limited to, Sections 4.2, 4.3, 4.5, 4.6, 4.7, 7.1, 9.1, 9.2, 12.1, 12.2 and 12.3, and might be less than the aforementioned maximum amount.

### 4.2. Payments of Approved Claims to Arrest Class Members.

As set forth in Section 9.1(c) of the Agreement, this settlement provides for up to a Maximum Arrest Class Settlement Fund in the sum of Five Hundred Sixteen Thousand Six Hundred and Sixty-Six Dollars and 67/100 ($516,666.67) to pay Approved Arrest Claims approved pursuant to the terms of the Settlement Agreement. In no event shall Defendant's total payments to the Arrest Class approved claimants exceed the amount of funds in the Maximum Arrest Class Settlement Fund. Moreover, as this is a claims-made settlement, the Arrest Class approved claimants as a whole may receive less than the maximum amount, as provided and set forth in Section 9 below. The Arrest Class approved claimants as a whole shall in no event receive in total less than the sum of the Minimum Arrest Class Settlement Fund, which is One Hundred Twenty-Nine Thousand One Hundred and Sixty-Six Dollars and 67/100 ($129,166.67). The amount paid to the Arrest Class approved claimants will depend on the final number of Approved Arrest Claims, as set forth and provided for in Section 9 of the Agreement.

### 4.3. Payments of Approved Claims to Detention Class Members.

As set forth in Section 9.2(c) of the Agreement, this settlement provides for up to a Maximum Detention Class Settlement Fund in the sum of Seven Million Two Hundred Thirty-Three Thousand Three Hundred and Thirty-Three Dollars and 33/100 ($7,233,333.33) to pay Approved Detention Claims approved

pursuant to the terms of the Settlement Agreement. In no event shall Defendant's total payments to the Detention Class approved claimants exceed the amount of funds in the Maximum Detention Class Settlement Fund. Moreover, as this is a claims-made settlement, the Detention Class approved claimants as a whole may receive less than the maximum amount, as provided and set forth in Section 9 below. The Detention Class approved claimants as a whole shall in no event receive in total less than the sum of the Minimum Detention Class Settlement Fund, which is One Million Eight Hundred and Eight Thousand Three Hundred and Thirty-Three Dollars and 33/100 ($1,808,333.33). The amount paid to Detention Class Members will depend on the final number of Approved Detention Claims, as set forth and provided for in Section 9 of the Agreement.

4.4. **Settlement Administration Funds.** As more fully set forth in Section 7.1 below, Defendant shall cause Two Hundred Ninety Thousand Dollars and no/100 ($290,000.00) to be deposited into an account for the use of the Settlement Administration ("Settlement Administration Funds"), and in no event shall Defendant be responsible for the payment of any additional funds for the administration of the settlement. Any part of the Settlement Administration Funds that are not used shall be returned to Defendant.

4.5. **Class Counsel's Maximum Request for Reimbursement of Litigation Costs and Expenses.** Subject to the Court's approval, the Parties have agreed that Class Counsel may seek the maximum sum of One Hundred Ten Thousand Dollars ($110,000.00) as an award to reimburse them for costs and expenses incurred in prosecuting the Litigation. Class Counsel has agreed that in no event shall their application for costs and expenses exceed this maximum amount and, in any event, it will not accept more than this maximum amount even if awarded by the Court. As part of the Settlement Agreement, Defendant has agreed that the award of costs and expenses

19

in the foregoing amount is reasonable and will not challenge Class Counsel's application for reimbursement of costs and expenses in this amount.

**4.6.** **Class Counsel's Request for Attorney's Fees**. The Parties have agreed that Class Counsel may seek a fee award from the Court as part of the Settlement Agreement but in no event will they seek a fee award that exceeds the Maximum Fee Award. Class Counsel intends to seek the Maximum Fee Award, an award of Two Million Seven Hundred Fifty Thousand and 00/100 ($2,750,000.00), which represents 25% of the maximum value of the settlement. Defendant does not agree as part of the Settlement Agreement that the Maximum Fee Award is reasonable or appropriate as part of this settlement, and Defendant specifically reserves the right to object to the amount of the fee award sought by Class Counsel. Defendant agrees to pay the Fee Award approved by the Court up to, and in a sum that will in no event exceed, the Maximum Fee Award, subject to any appeal of that Fee Award that Defendant might bring within thirty (30) calendar days after the fee award becomes final and non-appealable. Class Counsel agrees that in no event will they seek, be entitled to, or accept a fee award that is greater than the Maximum Fee Award, but acknowledges and agrees that the Court may award an amount less than the Maximum Fee Award.

**4.7.** **Service Award Payments To Named Plaintiffs**. In recognition of their efforts on behalf of the Settlement Classes, and in addition to any award to which they may be entitled to as Class Members pursuant to Section 9 of the Settlement Agreement, each of the four (4) Class Representatives shall, subject to the approval of the Court, be awarded a service award in the amount of Twenty-Five Thousand Dollars ($25,000.00), for a total of One Hundred Thousand Dollars ($100,000.00) in service awards (the "Named Plaintiffs' Service Award").

**4.8.    Permanent Injunctive Relief.** Defendant also agrees to entry of Permanent Injunctive Relief as set forth more fully in Section 10 of the Settlement Agreement.

## 5.  CLASS DEFINITION

**5.1.    The Arrest Class.**  The "Arrest Class" shall mean and include all persons who at any time up until the date of the Preliminary Approval Order were taken into custody by a Rutherford County Sheriff's deputy and transported to the RCJDC for either a juvenile unruly or a juvenile misdemeanor delinquent offense, where (a) such person was taken into custody on or after July 26, 2016, or the person was born on or after July 26, 1998, and (b) such person meets all of the criteria set forth in (1), (2), (3), (4), (5), (6), (7), (8), (9), (10), (11), (12), (13), (14) (15), and (16):

(1) Such person was not taken into custody pursuant to an order of the Juvenile Court directing that the person be taken into custody based on findings that a summons would be ineffective due to the particular circumstances of the person's case;

(2) Such person was not charged with a delinquent offense that would have been classified as a felony under Tennessee law if the person had been an adult;

(3) Where such person was taken into custody based on a misdemeanor delinquent charge, such person was not alleged to have been in the presence of law enforcement when the person committed the alleged delinquent offense for which they were arrested;

(4) Such person was not taken into custody in connection with a formal allegation that such person was a neglected, dependent or abused child, and alleging that either (A) the child's detention or shelter care was required because the child was subject to an immediate threat to the child's health or safety to the extent that delay for a hearing would be likely to result in severe or irreparable harm, or (B) the child may have absconded or been removed from the jurisdiction of the court; and, in either case, (C) there was no less drastic alternative to removal of the child from the custody of the child's parent, guardian, legal custodian or the person who physically possessed or controlled the child available that would reasonably and adequately protect the child's health or safety or prevent the child's removal from the jurisdiction of the court pending a hearing;

(5) The records do not document that such person was, at the time of arrest, a "runaway." "Runaway" means any person under eighteen (18) years of age who is

21

away from the home or residence of such person's parents or guardians without such parents' or guardians' consent. "Runaway" does not include persons under eighteen (18) years of age who lawfully reside with a close relative or those attending educational institutions, or those placed by court order, on a contractual agreement with a parent or guardian;

(6) Such person was not charged with the offense of stalking;

(7) The records do not document that such person was taken into custody based on reasonable grounds to believe that the person had attempted to commit suicide;

(8) Such person was not charged with committing a traffic offense in connection with a traffic accident involving either personal injury or property damage of at least $1,000;

(9) Such person was not charged with driving under the influence of an intoxicant or otherwise committing an offense under Tenn. Code Ann. § 55-10-401;

(10) Such person was not charged with committed a crime involving domestic abuse;

(11) The records do not allege that (A) such person was a driver in a motor vehicle accident resulting in serious bodily injury or death, or (B) such person did not have a valid driver license at the time of the accident, or (C) such person did not have evidence of financial responsibility at the time of the accident as required by § 55-12-139;

(12) Such person was not charged with violating the terms of probation, home placement supervision, or diversion;

(13) Such person was not charged with violating the terms of a valid court order;

(14) The person was not alleged to be an escapee from a secure juvenile facility or institution;

(15) The person was not wanted in another jurisdiction for an offense that, if committed by an adult, would be a felony in that jurisdiction; and

(16) The person was not alleged to have committed a public offense or threatened breach of the peace in the presence of law enforcement.[4]

---

[4] The terms "public offense" and "breach of the peace" in the Agreement carry the same meaning as the terms have in Tennessee Code Annotated § 40-7-103.

**5.2.** **The Detention Class.** The "Detention Class" shall mean and include all persons who at any time up until the date of the Preliminary Approval Order were on a juvenile delinquent or unruly charge admitted, subjected to and confined in secure detention at the RCJDC prior to a detention hearing, where (a) such person was born on or after October 14, 1997, or such secure detention occurred on a date on or after October 14, 2015, and (b) the person's circumstances at the time of such detention meet all the criteria set forth below in numbered paragraphs (1), (2), (3), (4), (5), and (6):

(1)     The person was not charged with a crime against a person resulting in and having as one of its statutory elements the serious injury or death of the victim or involving the likelihood of serious injury or death to such victim, or the unlawful possession of a handgun or carrying of a weapon, as prohibited by T.C.A., title 39, chapter 17, part 13, and in particular not any one or more of the following delinquent offenses:[5]

    a.   Aggravated Assault, T.C.A. § 39-13-102;
    b.   Vehicular Assault, T.C.A. § 39-13-106;
    c.   Aggravated Vehicular Assault, T.C.A. § 39-13-115;
    d.   Criminal homicide, T.C.A. § 39-13-201;
    e.   First Degree murder, T.C.A. § 39-13-202;
    f.   Second Degree murder, T.C.A. § 39-13-210;
    g.   Voluntary manslaughter, T.C.A. § 39-13-211;
    h.   Criminally negligent homicide, T.C.A. § 39-13-212;
    i.   Vehicular homicide, T.C.A. § 39-13-213;
    j.   Reckless homicide, T.C.A. § 39-13-215;
    k.   Assisted suicide, T.C.A. § 39-13-216;
    l.   Aggravated vehicular homicide, T.C.A. § 39-13-218;
    m.   Robbery, T.C.A. § 39-13-401;
    n.   Aggravated robbery, T.C.A. § 39-13-402;
    o.   Especially aggravated robbery, T.C.A. § 39-13-403;
    p.   Aggravated rape, T.C.A. § 39-13-502;
    q.   Rape, T.C.A. § 39-13-503;
    r.   Aggravated sexual battery, T.C.A. § 39-13-504;
    s.   Sexual battery, T.C.A. § 39-13-505;
    t.   Aggravated Arson, T.C.A. § 39-14-302;
    u.   Prohibited weapons, T.C.A. § 39-17-1302;
    v.   Unlawful carrying or possession of weapon, T.C.A. § 39-17-1307;
    w.   Carrying weapons on school property, T.C.A. § 39-17-1309;

---

[5] Paragraph (1) shall be interpreted and applied consistently with Tennessee Code Annotated §§ 37-1-114(c)(1)(A) and (B).

23

      x.  Carrying weapons on public parks, playgrounds, civic centers, and other public recreational buildings and grounds, T.C.A. § 39-17-1311;

      y.  Handgun possession prohibited, T.C.A. § 39-17-1319; or

      z.  Possession of handgun while under the influence, T.C.A. § 39-17-1321.

(2)    The person was not charged with a delinquent offense categorized as a felony under Tennessee law, probation violation, or aftercare violation while the person:

      a.  Was already on probation; or

      b.  Was already awaiting court action on a previously alleged delinquent offense; or

      c.  Was alleged to have escaped or absconded from a juvenile facility, institution, or other court-ordered placement; or

      d.  Had, within the previous twelve months, failed to appear at any juvenile court hearing or been charged with committing a violent felony delinquent offense involving a risk of serious bodily injury or death; or

      e.  Had, within the previous twelve months, been adjudicated delinquent of a felony delinquent offense;

(3)    No court order was issued within 24 hours of the detention, excluding nonjudicial days, documenting "special circumstances" that justified the person's secure detention based on a risk of immediate harm to the person due to issues of dependency, neglect, or abuse if they were not securely detained;

(4)    The person was not alleged to be an escapee from a secure juvenile facility or institution;

(5)    The person was not wanted in another jurisdiction for an offense that, if committed by an adult, would be a felony in that jurisdiction; and,

(6)    The person was not charged with violating a "valid court order" that was already in effect prior to the instant charge giving rise to the detention, and was not a runaway from another jurisdiction.

**5.3.**   **Parties' intention to reflect statutes.** It is the intention of the Parties that the definitions above are to reflect the provisions of Tenn. Code Ann. §§ 37-1-113, 40-7-103, and 37-1-114(c)(1)-(6), and the Parties agree that the interpretation and application of such definitions in connection with the Settlement Agreement shall be consistent with such statutes.

## 6. NOTICE, REQUEST TO BE EXCLUDED FROM THE CLASS AND OBJECTIONS

**6.1.** Upon issuance of Preliminary Approval Order, the Settlement Administrator shall cause the Notice describing the Fairness Hearing and the terms of the settlement embodied in this Agreement to be disseminated to the Classes, pursuant to the dates and terms described in Section 6.2 below. The Notice shall comport with due process and be effectuated pursuant to the Notice Plan.

**6.2.** The Notice Plan shall include:

**(a)** **Direct Notice by U.S. Mail.** Within three (3) calendar days after Preliminary Approval, Class Counsel shall provide to the Settlement Administrator, via e-mail or secure upload, an Excel spreadsheet (the "Class Spreadsheet") that includes the following information, if available, regarding the Class List: name, last known address, phone number, social security number; parents' name(s), last known address, phone number; and e-mail addresses. Within ten (10) calendar days after Preliminary Approval Date, the Settlement Administrator shall mail the Notice, in the form attached as Exhibit 4, via first-class U.S. Mail, to the persons listed in the Class Spreadsheet, as well as any of their parents or other legal guardians for whom they have been provided an address. Prior to this initial mailing, the Settlement Administrator will run a LexisNexis trace on each person on the Class Spreadsheets to obtain any updated mailing address available in that database. The Settlement Administrator will also run a query with the United States Postal Service's National Change of Address ("NCOA") database for each person on the Class Spreadsheets. The Settlement Administrator will mail the Notice for each person to up to two (2) addresses. The first Notice shall be mailed to the address provided on the Class Spreadsheet, unless the NCOA database reflects that the person has filed an NCOA change of address since the date listed on the Class Spreadsheet in

which case the Notice shall instead be sent to the address reflected in the NCOA database. The second Notice shall be mailed to the person's last known address listed in the LexisNexis trace, unless that address is the same as the address to which the first Notice is sent in which case a second notice shall not be mailed. The Settlement Administrator shall include in each mailing under this provision one copy of each of the blank Arrest and Detention Claim Forms.

(b) **Internet Publication Notice**. Within ten (10) calendar days following the entry of the Preliminary Approval Order, Notice and the Claim Forms shall be provided on a website at www.rutherfordjuvenilesettement.com, (the "Website") which shall be administered by the Settlement Administrator. The Notice on the Website shall be substantially in the form of Exhibit 4 attached hereto. In addition, the Website will include the Claim Forms and allow for the electronic completion and submission of the Claim Forms to the Settlement Administrator.

(c) **E-mail Notifications.** The Settlement Administrator shall perform a LexisNexis trace to locate and identify e-mail addresses for the potential class members listed on the Class List. Using the traced email addresses, the Settlement Administrator will e-mail the Notice to all potential class members on the Class List, and the e-mail will direct the persons to the Website for more information about the Litigation, the Settlement Agreement, and the Claim Forms.

(d) **Text Notifications.** The Settlement Administrator shall perform a LexisNexis trace to locate and identify cell phone numbers for the potential class members listed on the Class List for who phone numbers are not already provided. Using the phone numbers on the Class List or the traced phone numbers, the Settlement Administrator will send three (3) text messages (at a rate of one text message per week for three (3) consecutive weeks) to each potential class member on the Class List, and the text will direct the Class Member to the Website via a

26

hyperlink for more information about the Litigation, the Settlement Agreement and the Claim Forms.

(e) **Newspaper Publication.** The Settlement Administrator shall cause to be published in the Daily News Journal (a local Rutherford County newspaper) an advertisement designed to inform readers of the general nature of this settlement and directing readers to the web address www.rutherfordjuvenilesettlement.com for full details. The advertisement shall be published in two (2) hard copy editions of the paper, with one running on a Sunday and the other running on a Wednesday.

(f) **CAFA Notice.** Pursuant to 28 U.S.C. § 1715, not later than ten (10) days after the Agreement is filed with the Court, Defendant shall serve upon the Attorneys General of each U.S. State, the Attorney General of the United States, and other required government officials, notice of the proposed settlement as required by law. Defendant shall separately bear the cost of the initial CAFA Notice mailing. If the CAFA Notice must be provided a second time the cost of that notice and any subsequent mailings shall be paid from the Settlement Administration Fund unless the subsequent notices were necessitated by Defendant's error.

(g) The Parties agree to meet in good faith to discuss, agree to and mutually approve the content of the communications described in Sections 6.2(d) through 6(e).

6.3. The Notice Plan shall be conducted jointly with respect to the Classes. The Notice shall advise Class Members of their rights, including the right to submit claims for potential payment from the Arrest Class and/or Detention Class settlement funds, be excluded from, comment upon, and/or object to the Settlement Agreement or its terms.

6.4. The Notice shall specify that any Class Member (or Authorized Person on their behalf) who intends to object to the Settlement Agreement must comply with the objection

27

requirements set forth in the Notice. To object a Class Member (or Authorized Person on their behalf) must provide the following information, in writing, to the Court, Class Counsel and Defendant's Counsel, postmarked on or before the Objection Deadline: (a) his/her name and address; (b) all arguments, citations, and evidence supporting the objection (including copies of any documents relied on); (c) a statement that that he or she is a member of the Arrest Class and/or the Detention Class; (d) and, a statement about whether the objector intends to appear at the Final Approval Hearing with or without counsel. Any Class Member (or Authorized Person on their behalf) who fails to file a written objection with the Court on or before the Objection Deadline and notice of his or her intent to appear at the Final Approval Hearing in accordance with the terms of this Section and as detailed in the Notice, and at the same time provide copies to designated counsel for the Parties, shall not be permitted to object to the Settlement Agreement at the Final Approval Hearing, and shall be foreclosed from seeking any review of the Settlement Agreement by appeal or other means and shall be deemed to have waived his, her, or its objections and be forever barred from making any such objections in the Litigation or any other action or proceeding. To be valid, the objection must be filed and sent to Class Counsel and Defendant's Counsel on or before the Objection/Exclusion Deadline, which is specified in the Notice and approved by the Court.

  **6.5.**  Any person falling within the definition of the Arrest Class or the Detention Class (or Authorized Person on their behalf) may request to be excluded from the Arrest Class and/or Detention Class in writing by a request postmarked on or before the Exclusion Deadline approved by the Court and specified in the Notice. In order to exercise the right to be excluded, a person falling within the definition of the Arrest Class or the Detention Class (or Authorized Person on their behalf) must timely send a written request for exclusion to the Settlement Administrator providing his/her name and address, a signature, the name and number of the case, and a statement

that he/she wishes to be excluded from the Arrest Class and/or Detention Class. A request to be excluded that does not include all of the foregoing information, or that is sent to an address other than that designated in the Notice, or that is not postmarked within the time specified shall be invalid and the persons or entities serving such a request shall be members of the Arrest Class and/or Detention Class and shall be bound as an Arrest Class Member and/or Detention Class Member by the Agreement, if approved. Any member of the Arrest Class or Detention Class who elects to be excluded shall not: (i) be bound by any orders or the Final Judgment; (ii) be entitled to relief under this Settlement Agreement; (iii) gain any rights by virtue of this Settlement Agreement; or (iv) be entitled to object to any aspect of this Settlement Agreement. The request for exclusion must be personally signed by the person requesting exclusion. So called "mass" or "class" opt-outs (requests to be excluded) shall not be allowed. To be valid, a request for exclusion must be postmarked or received by the Exclusion Deadline.

      **6.6.**    Any person falling within the definition of the Arrest Class or Detention Class (or Authorized Person on their behalf) who timely submits both (1) a request to be excluded from either the Arrest Class or the Detention Class and (2) a Claim Form (or Claim Forms) for the class they request exclusion from, shall be sent a letter by the Settlement Administrator requesting clarification of the person's/Class Member's intent. The letter will state that, unless the person falling within the definition of the Arrest Class or the Detention Class (or Authorized Person on their behalf) clarifies within seven (7) calendar days that he or she intends to be excluded from the Class, the person will be deemed to be within the Class, deemed to have submitted a Claim Form, and will be bound by the Settlement Agreement if the Agreement is approved by the Court.

## 7. SETTLEMENT ADMINISTRATION

**7.1.** Upon the entry of the Preliminary Approval Order, the Settlement Administrator shall open a FDIC insured bank account in which the funds for settlement administration shall be deposited (the "Settlement Administration Account"). As set forth in Section 14.1, within three (3) business days of the entry of the Preliminary Approval Order, Defendant shall cause Two Hundred Ninety Thousand Dollars and no/100 ($290,000.00) ("Settlement Administration Funds") to be transferred to the Settlement Administrator, who then shall deposit those funds into the Settlement Administration Account. In no event shall Defendant be responsible for the payment of any additional funds for the administration of the settlement. The Settlement Administration Funds shall be used to pay for the Settlement Administrator, and any and all activities undertaken by the Settlement Administrator pursuant to the Settlement Agreement or its contract with the Parties, including but not limited to payment of the Special Master Fees and activities as described in Sections 6, 7, 8 and 9. Any part of the Settlement Administration Funds that are not used shall be returned to Defendant and the Named Plaintiffs and/or Class Members shall have no claim on those unused funds.

**7.2.** The Settlement Administrator shall, under the supervision of the Court, administer the relief provided by the Settlement Agreement by processing Claim Forms in a rational, responsive, cost effective and timely manner. The Settlement Administrator shall maintain reasonably detailed records of its activities under the Settlement Agreement. The Settlement Administrator shall maintain all such records as are required by applicable law in accordance with its normal business practices and such records will be made available to Class Counsel and Defendant's Counsel, the Parties and/or their representatives upon request. The Settlement Administrator shall also provide reports and other information to the Court as the Court may

require. The Settlement Administrator shall provide Class Counsel and Defendant's Counsel with information concerning Notice, administration and implementation of the Settlement Agreement. Should the Court request, the Parties, in conjunction with the Settlement Administrator, shall submit a timely report to the Court summarizing the work performed by the Settlement Administrator. Without limiting the foregoing, in addition to its other obligations hereunder, the Settlement Administrator shall:

> **(a)** Forward to Defendant's Counsel, with copies to Class Counsel, all original documents and other materials received in connection with the administration of the Settlement Agreement, and all copies therefore, within thirty (30) calendar days after the date on which all Claim Forms have been finally approved or disallowed per the terms of the Settlement Agreement, or as otherwise specifically provided for in the Settlement Agreement;

> **(b)** Receive exclusion forms and other requests from Class Members to exclude themselves from the Settlement Agreement and promptly provide to Class Counsel and Defendant's Counsel a copy thereof upon receipt. If the Settlement Administrator receives any exclusion forms or other requests from members of the Classes after the Objection/Exclusion Deadline, the Settlement Administrator shall promptly provide copies thereof to Class Counsel and Defendant's Counsel;

> **(c)** Provide reports and/or summaries to Class Counsel and Defendant's Counsel, the Parties and/or their representatives as provided in the contract to be entered into by the Parties with the Settlement Administrator, including without limitation, reports regarding the number of Claim Forms received and the amount of benefits sought, the number thereof approved by the Settlement Administrator, and the categorization and description of Claim Forms rejected, in whole or in part, by the Settlement Administrator; and

31

**(d)** Make available for inspection by Class Counsel and Defendant's Counsel, the Parties and/or their representatives, the Claim Forms and any supporting documentation received by the Settlement Administrator at any time upon reasonable notice.

7.3. The Settlement Administrator shall be obliged to employ reasonable procedures to screen claims for abuse or fraud, and shall reject a Claim Form, or any part of a claim for a payment reflected therein, where there is evidence of abuse or fraud. The Settlement Administrator shall also reject a Claim Form that does not contain all requested information necessary to screen the claim for fraud or abuse, after giving the claimant a reasonable opportunity to provide any requested missing information in accordance with the terms and deadlines in the Agreement.

7.4. Any Class Member who does not, in accordance with the terms and conditions of this Agreement, seek exclusion from the Classes or timely submit a Valid Claim Form or Forms that ultimately is determined to be the basis for an Approved Arrest Claim or Approved Detention Claim will not be entitled to receive any cash award or any other financial benefits pursuant to the Settlement Agreement, but will otherwise be bound together, along with all members of the Classes, by all of the terms of the Settlement Agreement, including the terms of the Final Judgment to be entered in the Litigation and the releases provided for in the Agreement, and will be barred from bringing any action against any of the Released Parties concerning the Released Claims.

7.5. Class Counsel and Defendant's Counsel each agree to keep all information about the settlement administration process—including without limitation all information received pursuant to the Settlement Agreement, such as claims reports, information concerning opt-outs, and the Class List—confidential and may use it only for purposes of effectuating this Agreement. The Parties understand and agree that Defendant is a governmental entity subject to Open Records/Sunshine laws and any required disclosures pursuant to such laws is not a breach of this

32

provision.

**7.6.** Within seven (7) calendar days of the Effective Date, the Settlement Administrator shall open a FDIC insured bank account for the deposit of the Settlement Funds ("Settlement Fund Account"). As provided for in Section 14.2 of the Agreement, Defendant shall transfer to the Settlement Administrator the Settlement Funds from which the Settlement Administrator shall issue payments for Approved Arrest Claims, Approved Detention Claims, Class Counsel's Court approved costs and expenses; Class Counsel's Fee Award; and, the Named Plaintiffs' Service Awards. Any part of the Settlement Funds that are not used or claimed pursuant to the terms of the Agreement shall be returned to Defendant, and the Named Plaintiffs and/or Class Members and/or Class Counsel shall have no claim on those unused/unclaimed funds.

## 8. SUBMISSION AND PROCESSING OF CLAIM FORMS

**8.1.** Any person who believes he or she is entitled to compensation as a Class Member may request a blank Claim Form(s) from the Settlement Administrator by telephone or in writing, or will be able to obtain one through the Website. Claim Forms may be submitted online via the Website or by returning a Claim Form(s) via U.S. Mail.

**8.2.** Authorized Persons who believe they are a Class Member or are the authorized representative (as defined in Section 2.7(b)) of a Class Member must submit to the Settlement Administrator a separate Arrest Claim Form for each arrest for which they are seeking compensation, and a separate Detention Claim Form for each detention for which they are seeking compensation on or before the Claims Deadline. Each timely submitted Claim Form can be the basis for one, and only one, Approved Arrest Claim or Approved Detention Claim.

**8.3.** The Settlement Administrator shall maintain a record of the date it receives a Claim Form, or Claim Forms, from any Authorized Person. In order to be timely, an Authorized Person

33

must submit a Valid Claim Form for each arrest and detention for which they are seeking compensation on or before the Claims Deadline. No Claim Form will be considered timely, whether a Valid Claim Form or not, if postmarked after the Claims Deadline (if mailed), or if submitted online via the Website after 11:59 p.m. CST on the date of the Claims Deadline.

8.4. The Settlement Administrator shall review any Claim Form timely submitted by an Authorized Person within five (5) business days to determine whether it is a Valid Claim Form. If a Claim Form is timely submitted but is determined not to be a Valid Claim Form as defined in this Agreement, the Settlement Administrator will return the Claim Form (or, if deemed necessary, a new Claim Form) to an Authorized Person within eight (8) business days of receipt of the Claim Form with an incomplete notice explaining in what ways the form is incomplete or is not otherwise a Valid Claim Form and stating that an Authorized Person will have fourteen (14) calendar days from the date of the notice to complete and resubmit the Claim Form. The Settlement Administrator will e-mail copies of incomplete, illegible or otherwise deficient Claim Forms (that it determines are Not Valid Claim Forms) to Class Counsel and Defendant's Counsel, along with the letter sent by the Settlement Administrator to the Authorized Person explaining the deficiency, within two (2) business days of mailing it to Authorized Person. Each Authorized Person who has an incomplete Claim Form returned to such Authorized Person under this Section shall have an additional fourteen (14) calendar days from the date of the deficiency notice to re-submit the Claim Form regardless of the Claims Deadline. If an Authorized Person fails to re-submit a complete Valid Claim Form within the fourteen (14) day period, such Claim Form shall be automatically rejected and shall not be eligible for payment hereunder. No Authorized Person or person shall be allowed to re-submit a Claim Form on more than one occasion. Any Claim Form, whether it is a Valid Claim Form or not, submitted after the Claim

Deadline shall in no event be the basis for or lead to either an Approved Arrest Claim and/or Approved Detention Claim unless it meets the explicit exception for the resubmission of a Claim Form described in the fourth sentence of Section 8.4.

8.5.    Upon determining that a submission is a Valid Claim Form, the Settlement Administrator shall next determine whether the information provided by an Authorized Person excludes the Authorized Person from the Classes.  If the Settlement Administrator determines that the Valid Claim Form excludes an Authorized Person, or the person on whose behalf the form was submitted pursuant to Section 2.7(b) of the Agreement, from the Classes, it will not conduct any further investigation and will issue an Initial Determination finding that an Authorized Person, or the person on whose behalf the form was submitted pursuant to Section 2.7(b) of the Agreement, is not a Class Member with respect to such Valid Claim Form. If the Settlement Administrator determines that the Valid Claim Form does not exclude an Authorized Person, or the person on whose behalf the form was submitted pursuant to Section 2.7(b) of the Agreement, from the Classes, it will proceed to the steps described in Section 8.6 of the Settlement Agreement.

8.6.    Upon determining that a Valid Claim Form does not exclude an Authorized Person who submitted the claim, or the person on whose behalf the form was submitted pursuant to Section 2.7(b) of the Agreement, from the Classes, the Settlement Administrator shall take the following steps consistent with a claim review protocol to be prepared and approved by both Class Counsel and Defendant's Counsel, working cooperatively and in good faith:

(a)    with regard to Arrest Claim Forms, the Settlement Administrator shall review the Rutherford County Sheriff Department files (the "RCSD Files") and the Rutherford County Juvenile Court files (the "Juvenile Court Files") to determine whether an Authorized Person, or the person on whose behalf the form was submitted pursuant to Section 2.7(b) of the

35

Agreement, with respect to such claim meets or does not meet the Arrest Class definition, and shall issue an Initial Determination consistent with its conclusion;

(b)     with regard to Detention Claim Forms, the Settlement Administrator shall review the Rutherford County Juvenile Detention Center's files (the "RCJDC Files") and the Juvenile Court Files to determine whether an Authorized Person, or the person on whose behalf the form was submitted pursuant to Section 2.7(b) of the Agreement, with respect to such claim meets or does not meet the Detention Class definition, and shall issue an Initial Determination consistent with its conclusion.

8.7.    The Settlement Administrator shall notify Class Counsel and Defendant's Counsel of Initial Determinations in writing on a weekly basis via electronic means. This notification will be made by the Settlement Administrator by no later than 5:00 p.m. CST each Thursday during the claims review process. In addition to the written notification, for each Initial Determination the Settlement Administrator shall contemporaneously with the notification provide Class Counsel and Defendant's Counsel access to the underlying Valid Claim Form and, if applicable, the documents from the RCSD Files, the RCJDC Files and/or the Juvenile Court Files upon which the Settlement Administrator supported its Initial Determination.

8.8.    Class Counsel and Defendant's Counsel shall have fourteen (14) calendar days from the receipt of the Initial Determination and supporting documentation to object to the Settlement Administrator's determination. Such objection must be made in writing to the Settlement Administrator and opposing counsel via electronic mail and shall set forth a short summary of the basis for the objection. In the event that no objection is made within the foregoing time period, then the Initial Determination by the Settlement Administrator shall become a Final Determination.

**8.9.** In the event that timely objection to the Initial Determination is made, then counsel for the Parties agree to meet and confer within seven (7) calendar days of the date an objection is provided pursuant to Section 8.8 to discuss the objection and shall have an additional seven (7) calendar days to determine if an agreement can be reached between the Parties resolving the objection. The Settlement Administrator shall follow any agreed to decisions by Class Counsel and Defendant's counsel in this regard, and such agreement will be reflected as the Final Determination.

**8.10.** If Class Counsel and Defendant's counsel are unable to reach agreement within fourteen (14) calendar days of an objection, the Settlement Administrator shall forward the objection to a Special Master for consideration and determination. The Special Master shall review submissions from Class Counsel and Defendants, and any other documents he/she considers pertinent, and shall reach a timely decision regarding the objection and class status and whether the Claim Form and other documentation satisfies the requirements for a compensable claim hereunder. The Parties agree that the Settlement Administrator shall thereafter follow the Special Master's decision and enter a Final Determination consistent with that decision.

**8.11.** When there is a Final Determination that a submitted Arrest Claim Form is an Approved Arrest Claim, the Class Member shall be entitled to payment in accordance with Article 9 hereof. When there is a Final Determination that a submitted Arrest Claim Form is not an Approved Arrest Claim, then such claim shall be denied and such claimant shall not be entitled to any payment with respect to such claim. When there is a Final Determination that a submitted Detention Claim Form is an Approved Detention Claim, the Class Member shall be entitled to payment in accordance with Section 9 hereof. When there is a Final Determination that a

37

submitted Detention Claim Form is not an Approved Detention Claim, then such claim shall be denied and such claimant shall not be entitled to any payment with respect to such claim.

**8.12.**  A Final Determination shall be final, conclusive and binding on the Parties and the claimants.

## 9.  FINANCIAL TERMS OF SETTLEMENT

### 9.1.  Payments to the Arrest Class for Approved Arrest Claims.

**(a)**  For purposes of the Settlement, the Parties estimate that there are approximately 439 Arrest Class Members ("ACMs") who were subjected to approximately 500 arrests falling within the Arrest Class ("ACM Arrests").

**(b)**  To be entitled to receive a distribution from the arrest class settlement funds for a claim hereunder, an ACM must submit a claim which is finally determined to be an Approved Arrest Claim in accordance with the terms of the Settlement Agreement.  While there is estimated to be 439 ACMs, there may be a smaller or larger number of persons within the Arrest Class. Moreover, while there is estimated to be 500 ACM Arrests, there may be a smaller or larger number of actual ACM Arrests.

**(c)**  Regardless of the number of Approved Arrest Claims, the Parties have agreed that the total amount to be paid to all persons with Approved Arrest Claims hereunder shall in no event exceed a maximum of $516,666.67 (the "Maximum Arrest Class Settlement Fund"). Regardless of the number of Approved Arrest Claims, the Parties have agreed that the minimum total payment to be paid to all the persons with Approved Arrest Claims hereunder is $129,166.67 (the "Minimum Arrest Class Settlement Fund"), which is 25% of the Maximum Arrest Class Settlement Fund.

(d)     The standard distribution share (the "Standard Arrest Distribution") for an ACM with an Approved Arrest Claim is $1,033.33 (calculated by dividing the Maximum Arrest Class Settlement Fund by the approximate number of ACM Arrests, i.e. $516,666.67/500 = $1,033.33).

(e)     In the event that there is a total of between 125 and 500 Approved Arrest Claims, each ACM with an Approved Arrest Claim will receive only a Standard Arrest Distribution for each Approved Arrest Claim.

(f)     In the event that there are more than 500 Approved Arrest Claims, each ACM with an Approved Arrest Claim will receive for each Approved Arrest Claim only a pro-rata share of the Maximum Arrest Class Settlement Fund, calculated in accordance with the following illustrations:

i.     If there are 525 Approved Arrest Claims, each ACM with an Approved Arrest Claim will receive only $984.13 for each Approved Arrest Claim, from the Maximum Arrest Class Settlement Fund, calculated as follows:  $516,666.67/525 Approved Arrest Claims = $984.13 pro rata share.  Thus, under this scenario, an ACM with 1 Approved Arrest Claim shall receive only $984.13; an ACM with 2 Approved Arrest Claims shall receive only $1,968.26; an ACM with 3 Approved Arrest Claim shall receive only $2,952.39; etc.

ii.     If there are 600 Approved Arrest Claims, each ACM with an Approved Arrest Claim will receive only $861.11 for each Approved Arrest Claim from the Maximum Arrest Class Settlement Fund, calculated as follows:  $516,666.67/600 Approved Arrest Claims = $861.11 pro rata share.  Thus, under this scenario, an ACM with 1 Approved Arrest Claim shall receive only $861.11; an ACM with 2 Approved Arrest Claims shall receive only $1,722.22; an ACM with 3 Approved Arrest Claims shall receive only $2,583.33; etc.

(g)    In the event that that there are less than 125 Approved Arrest Claims, each ACM with an Approved Arrest Claim will receive for each Approved Arrest Claim only a pro-rata share of the Minimum Arrest Class Settlement Fund, calculated in accordance with the following illustrations:

i.    If there are 120 Approved Arrest Claims, each ACM with an Approved Arrest Claim will receive $1,076.39 for each Approved Arrest Claim, from the Minimum Arrest Class Settlement Fund, calculated as follows:  $129,166.69/120 Approved Arrest Claims = $1076.39 pro rata share. Thus, under this scenario, an ACM with 1 with an Approved Arrest Claim shall receive $1,076.39, while an ACM with 3 Approved Arrest Claims shall receive $3,229.17.

ii.    If there are 100 Approved Arrest Claims, each ACM with an Approved Arrest Claim will receive $1,291.67 for each Approved Arrest Claim, from the Minimum Arrest Class Settlement Fund, calculated as follows:  $129,166.69/100 Approved Arrest Claims = $1,291.67 pro rata share. Thus, under this scenario, an ACM with 1 Approved Arrest Claim shall receive $1,291.67, while an ACM with 3 Approved Arrest Claims shall receive $3,875.01.

**9.2.    Payments to the Detention Class for Approved Detention Claims.**

(a)    For purposes of the settlement the Parties estimate that there are approximately 1,000 detention class members ("DCMs") who were subjected to approximately 1,500 detentions falling within the Detention Class ("DCM Detentions").

(b)    To be entitled to receive a distribution from the detention class settlement funds for a claim hereunder, a DCM must submit a claim which is finally determined to be an Approved Detention Claim in accordance with the terms hereof.  While there is estimated to be

1,000 DCMs, there may be a smaller or larger number of persons within the Detention Class. Moreover, while there is estimated to be 1,500 DCM Detentions, there may be a smaller or larger number of actual DCM Detentions.

(c)     Regardless of the number of Approved Detention Claims, the Parties have agreed that the total amount to be paid to all persons with Approved Detention Claims shall in no event exceed a maximum of $7,233,333.33 (the "Maximum Detention Class Settlement Fund"). Regardless of the number of Approved Detention Claims, the Parties have agreed that the minimum total payment to be paid to all persons with Approved Detention Claims is $1,808,333.33 (the "Minimum Detention Class Settlement Fund"), which is 25% of the Maximum Detention Class Settlement Fund.

(d)     The standard distribution share (the "Standard Detention Distribution") for an DCM with an Approved Detention Claim is $4,822.22 (calculated by dividing the Maximum Detention Class Settlement Fund by the approximate number of DCM Detentions, i.e. $7,233,333.33/1,500 = $4,822.22).

(e)     In the event that there are between 375 and 1,500 Approved Detention Claims, each DCM with an Approved Detention Claim will receive only a Standard Detention Distribution for each Approved Detention Claim.

(f)     In the event that there are more than 1,500 Approved Detention Claims, each DCM with an Approved Detention Claim will receive for each Approved Detention Claim only a pro-rata share of the Maximum Detention Class Settlement Fund, calculated in accordance with the following illustrations:

i.     If there are 1,600 Approved Detention Claims, each DCM with an Approved Detention Claim will receive only $4,520.83 for each Approved Detention Claim, from

41

the Maximum Detention Class Settlement Fund, calculated as follows: $7,233,333.33/1,600 Approved Detention Claims = $4,520.83 pro rata share. Thus, under this scenario, a DCM with 1 Approved Detention Claim shall receive only $4,520.83; a DCM with 2 Approved Detention Claims shall receive only $9,041.66; a DCM with 3 Approved Detention Claims shall receive $13,562.49; etc.

   ii.  If there are 1,700 Approved Detention Claims, each DCM with an Approved Detention Claim will receive only $4,254.90 for each Approved Detention Claim from the Maximum Detention Class Settlement Fund, calculated as follows: $7,233,333.33/1,700 Approved Detention Claims = $4,254.90 pro rata share. Thus, under this scenario, a DCM with 1 Approved Detention Claim shall receive only $4,254.90; a DCM with 2 Approved Detention Claims shall receive only $8,509.80; a DCM with 3 Approved Detention Claims shall receive $12,764.70; etc.

  **(g)** In the event that there are less than 375 Approved Detention Claims, each DCM with an Approved Detention Claim will receive for each Approved Detention Claim only a pro-rata share of the Minimum Detention Class Settlement Fund, calculated in accordance with the following illustrations:

   i.  If there are 350 Approved Detention Claims, each DCM with an Approved Detention Claim will receive $5,166.67 for each Approved Detention Claim, from the Minimum Detention Class Settlement Fund, calculated as follows: $1,808,333.33/350 Approved Detention Claims = $5,166.67 pro rata share. Thus, under this scenario, a DCM with 1 Approved Detention Claim shall receive $5,166.67; a DCM with 2 Approved Detention Claims shall receive $10,333,34; a DCM with 3 Approved Detention Claims shall receive $15,500.01; etc.

ii.     If there are 300 Approved Detention Claims, each DCM with an Approved Detention Claim will receive $6,027.78 for each Approved Detention Claim, from the Minimum Detention Class Settlement Fund calculated as follows: $1,808,333.33/300 Approved Detention Claims = $6,027.78 pro rata share. Thus, under this scenario, a DCM with 1 Approved Detention Claim shall receive $6,027.78; a DCM with 2 Approved Detention Claims shall receive $12,055.56; a DCM with 3 Approved Detention Claims shall receive $18,083.34; etc.

**9.3.  Payments.** The Settlement Administrator shall make payments due under the provisions of the Settlement Agreement within a reasonable time following the Effective Date and not to exceed sixty (60) calendar days after the Effective Date. If a check to a Class Member entitled to payment pursuant to the terms of the Settlement Agreement is not cashed within three months of its mailing, the Settlement Administrator shall hold the funds for three additional (3) months, during which time it shall make reasonable efforts to contact the person to whom the uncashed check was written to make arrangements for its cashing or reissuance. Any such funds not cashed by a Class Member within such additional three (3) month period shall be forfeited by the Class Member and be distributed to the Defendant, and the Class Member shall not have any right to those funds and have no recourse against the Settlement Administrator, Class Counsel, Defendant's Counsel or Defendant.

## 10. PERMANENT INJUNCTIVE RELIEF

**10.1.**  The Parties agree that the District Court's grant of temporary injunctive relief in the Litigation shall be lifted and dissolved upon the entry of the Final Approval Order.

**10.2.**  Rutherford County agrees that as part of the settlement of the Litigation a permanent injunction will be entered by the Court. Specifically, the Final Approval Order will

include a provision providing for the following injunctive relief, which will hereinafter be referred to in this agreement as the "Permanent Injunction":

> "Rutherford County is permanently enjoined from using the Filter System to determine whether juveniles arrested shall be detained in the Rutherford County Juvenile Detention Center pending a detention hearing conducted by the Rutherford County Juvenile Court. Rutherford County is further enjoined to follow the requirements set forth in T.C.A. §37-1-114 (c), as long as it is in place and remains applicable, to guide its detention decisions at Rutherford County Juvenile Detention Center prior to the detention hearing. This injunction is not applicable to juveniles detained at the Rutherford County Juvenile Detention Center pursuant to detention decisions made by jurisdictions outside of Rutherford County, Tennessee."

**10.3.** In addition, the Final Approval Order will include with it the following monitoring provision by Class Counsel:

> "Class Counsel will monitor Rutherford's County's compliance with the Permanent Injunction for a period of two years from the date of entry of the Final Approval Order. Class Counsel agrees that it has reviewed the information made publicly available by the County regarding the Rutherford County Juvenile Detention Center's monthly statistics and data, and Class Counsel agrees it is sufficient for Class Counsel's monitoring purposes. Rutherford County shall continue publishing the information contained in the attached sample Public Safety Report, attached as Exhibit 6, and/or provide substantially similar information to Class Counsel for the two-year period of monitoring. Rutherford County shall have no obligation to provide any additional reports or data to Class Counsel for purposes of monitoring. If Class Counsel believes in good faith that the County is violating the Permanent Injunction, Class Counsel shall provide written notice to and inform counsel for Rutherford County of the basis for that belief, and the parties shall make all reasonable attempts to resolve the issue prior to Class Counsel seeking relief from the Court."

## 11. RELEASE

**11.1.    Extent of Release.** Releasing Parties affirmatively declare that Released Parties have satisfied any and all liability to them related or connected in any way to the Litigation. Accordingly, as of the Effective Date, Releasing Parties release, and the Settlement Agreement fully resolves and releases, Released Parties, from any and all past or present claims, demands, actions, causes of action, rights, suits, debts, damages, losses, costs or expenses, fixed or contingent, direct or indirect, including but not limited to claims for violation of constitutional

rights, false arrest in violation of Tennessee state law, tort claims, negligence claims, breach of statutory duties, compensatory and punitive damages, injunctive or declaratory relief, attorneys' fees, interests, costs, penalties and any other claims, whether known or unknown, alleged or not alleged in the Litigation, suspected or unsuspected, contingent or matured, under federal, state or local law, which any Party had, now has, or may in the future have with respect to any conduct, act, omissions, facts, matters, or occurrences on or prior to the Final Approval Effective Date arising from or relating in any way to the following:

**(a)**    the Litigation and any claim or allegation set forth therein or that could have been set forth therein;

**(b)**    actions or omissions relating to or in connection with any Rutherford County Sheriff's Office ("RCSO") policy, or order issued by Judge Davenport to law enforcement officers of the RCSO, in any way directing, requiring or suggesting that any time a juvenile was charged with a delinquent or unruly offense, the child must be taken into custody and transported to the Rutherford County Juvenile Detention Center ("RCJDC");

**(c)**    actions or omissions relating to or in connection with the issuance and/or implementation of any RCJDC policy or practice, by any agent of Rutherford County, of detention protocol at RCJDC, including but not limited to the "Filter System," to incarcerate or detain children prior to a judicial detention determination;

**(d)**    actions or omissions in connection with, or any alleged failure to comply with, T.C.A. §§ 37-1-114 *et seq.* and/or 37-1-117 *et seq.*, or any other statutory requirements relative to any and all Detention Decisions made by RCJDC on or before the Final Approval Effective Date;

(e)     actions or omissions in connection with, or any alleged failure to comply with, T.C.A. §§ 37-1-113 *et. seq.* and/or 40-7-103 *et seq.*, or any other statutory requirements relative to the arrests made by the RCSO on or before the Final Approval Effective Date;

(f)     actions or omissions relating to or in connection with any and all Detention Decisions made by RCJDC on or before the Final Approval Effective Date;

(g)     any and all claims arising from or related to their detention at the RCJDC at any time on or before the Final Approval Effective Date;

(h)     any and all claims arising from or related to their arrest by RCSO on or before the Final Approval Effective Date;

(i)     any claim that arose out of the conduct, transaction, or occurrence set out— or attempted to be set out—in the Litigation; and/or

(j)     any claim or allegation which was asserted in any communications by Class Members or Class Counsel, to Rutherford County's Counsel.

The foregoing shall be referred to collectively as the "Released Claims".

**11.2.   Limits of Release:** This Release does not release, protect or shield the Released Parties from any potential liability that may be made or raised by the following:

(a)     individuals who are not Class Members; or,

(b)     individuals who are not Class Members because they, or an Authorized Person on their behalf, requested exclusion in conformity with the terms and requirements of the Settlement Agreement.

46

## 12. CLASS COUNSEL'S ATTORNEYS' FEE AWARD AND REIMBURSEMENT OF EXPENSES; NAMED PLAINTIFFS' SERVICE AWARD

### 12.1. Class Counsel's Maximum Request for Attorney's Fees.

The Parties have agreed that Class Counsel may seek a Fee Award in an amount that will in no event exceed the Maximum Fee Award from the Court as part of the Settlement Agreement. Defendant has not agreed that the Maximum Fee Award is reasonable or appropriate, and Defendant specifically has reserved the right to object to the amount of the Fee Award sought by Class Counsel. Defendant agrees to pay the Fee Award, subject to any appeal of that award it might bring, within thirty (30) calendar days after the Fee Award becomes final and non-appealable. Class Counsel agrees that in no event will it seek, be entitled to, or accept a Fee Award that is greater than the Maximum Fee Award.

### 12.2. Class Counsel's Maximum Request for Reimbursement of Litigation Costs and Expenses.

Subject to the Court's approval, the Parties have agreed that Class Counsel may seek the maximum sum of One Hundred Ten Thousand Dollars ($110,000.00) to reimburse them for costs and expenses incurred in prosecuting the Litigation. Class Counsel has agreed that in no event shall their application for costs and expenses exceed this maximum amount and, in any event, it will not accept more than this maximum amount even if awarded by the Court. As part of the Settlement Agreement, Defendant has agreed that the award of costs and expenses in the foregoing amount is reasonable and will not challenge Class Counsel's application for reimbursement of costs and expenses in this amount.

### 12.3. Service Award Payments To Named Plaintiffs.

In recognition of their efforts on behalf of the Settlement Classes, and in addition to any payment to which they may be entitled to as Class Members pursuant to Section 9 of the Settlement Agreement, each of the four (4) Class

47

Representatives shall, subject to the approval of the Court, be awarded a service award in the amount of Twenty-Five Thousand Dollars ($25,000.00) (the "Named Plaintiffs' Service Award"). Defendant agrees that such an amount is reasonable and that it shall not oppose such award, directly or indirectly. This sum shall be paid in recognition of the Named Plaintiffs' time and effort serving as the Class Representatives in the Litigation. Defendant shall pay this sum to the Settlement Fund for distribution within thirty (30) calendar days from the Effective Date.

## 13. PROCEDURE FOR SETTLEMENT OF CLAIMS OF MINORS

The Parties anticipate that a small number of Class Members and/or Class Representatives will not have reached the age of majority by the time of the Final Approval Hearing. Therefore, the Parties agree that the claim of any Class Member or Class Representative who has not reached the age of majority (18) as of the date of the Final Approval Hearing must be approved by the Court in accordance with Tennessee state law, including but not limited to Tenn. Code Ann. §§ 29-34-105, 34-1-104, and 34-1-121. Class Counsel shall be responsible for coordination with the legal guardian of any minor Class Member or Class Representative who has not reached the age of majority by the time of the Final Approval Hearing to engage in the process of seeking court approval of the settlement for such minor, including documentation preparation and court appearances necessary for Court consideration of settlement approval. Class Counsel shall consult with Defendant's Counsel to obtain their consent to and approval of any settlement approval documents. Any Class Member or Class Representative who has not reached the age of majority as of the date of the Final Approval Hearing will not be entitled to receive a distribution from the Settlement Fund unless and until the settlement for such minor has been approved by the Court in compliance with Tennessee law governing settlements of claims of minors and distribution of money or property to minors. The Settlement Administrator shall identify any claim where the

minor is not going to be 18 years old as of the date of the Final Approval Hearing and notify Class Counsel so they can be apprised of the need to prepare settlement documentation and coordinate with the legal guardian of the minor Class Members or Class Representatives to take action necessary to obtain approval of the settlement in accordance with Tennessee law.

## 14. TIMING OF DEFENDANT'S PAYMENTS TO SETTLEMENT ADMINISTRATION ACCOUNT AND SETTLEMENT FUND ACCOUNT

With the exception of Section 14.1, the Parties agree that Defendant shall have no obligation to make any payment into the Settlement Fund until thirty (30) calendar days after the Effective Date, and further agree that Defendant's obligation to make any payment into the Settlement Fund is conditioned upon the Court's Final Approval, and entry of the Final Approval Order and Final Judgment consistent with the definition of those terms as set forth in Section 2 of the Agreement. Subject to these conditions, Defendant agrees to make payments into the Settlement Fund as follows:

**14.1. <u>Settlement Fund Payments Into The Settlement Administration Account.</u>** Within three (3) business days of the entry of the Preliminary Approval Order, Defendant shall cause Two Hundred Ninety Thousand Dollars and no/100 ($290,000.00) to be deposited into the Settlement Administration Account for the use of the Settlement Administration. The Settlement Administration Funds shall be used to pay for the Settlement Administrator, and any and all activities undertaken by the Settlement Administrator pursuant to the Settlement Agreement or its contract with the Parties, including but not limited to payment of the Special Master Fees and activities described in Sections 6, 7, and 8. Any part of the Settlement Administration Funds that are not used shall be returned to Defendant. In no event shall Defendant be required to pay any additional funds for Settlement Administration.

49

**14.2.** __Settlement Fund Payments Into The Settlement Fund Account.__ On or within thirty (30) calendar days following the Effective Date, Defendant shall transfer to the Settlement Administrator for payment into the Settlement Fund Account the following:

        **(a)** funds to pay Approved Arrest Claims consistent with the terms of the Agreement, including but not limited to Sections 8 and 9.1; in no event will the payment of these approved claims exceed the Maximum Arrest Class Settlement Fund;

        **(b)** funds to pay Approved Detention Claims consistent with the terms of the Agreement, including but not limited to Sections 8 and 9.2; in no event will the payment of these approved claims exceed the Maximum Detention Class Settlement Fund;

        **(c)** funds to pay the Court approved Class Counsel's costs and expenses as described in Section 4.5 of the Agreement and in a sum not to exceed One Hundred Ten Thousand Dollars ($110,000.00);

        **(d)** funds to pay the Fee Award, as described in Section 4.6 of the Agreement which in no event shall exceed, but may be less than, the Maximum Fee Award;[6]

        **(e)** funds to pay the Court approved Named Plaintiffs' Service Award consistent with Section 4.7 of the Agreement, which in no event shall exceed the total sum of One Hundred Thousand Dollars ($100,000.00).

        **(f)** the sum of the required payments set forth in Sections 14(a)-(e)[7] shall be the Settlement Fund and in no event shall Defendant have any obligation to pay any additional money to Named Plaintiffs and/or Class Members and/or any of their representatives under this Agreement.

---

[6] Defendant's obligation to pay the funds described in this subsection does not attach until 30 calendar days after the Fee Award becomes final and not subject to any appeals.

[7] While not payable to Named Plaintiffs and/or Class Members and/or any of their representatives, the funds described in 14.1 are also part of the Settlement Fund.

50

## 15. MISCELLANEOUS PROVISIONS

**15.1.** **Complete Agreement.** The Settlement Agreement shall constitute the entire integrated agreement of the Parties. No prior contemporaneous communications, oral or written, or prior drafts shall be relevant or admissible for purposes of determining the meaning of any provisions here in this litigation or in any other proceeding.

**15.2.** **Cooperation.** The Parties agree, subject to their fiduciary and other legal obligations, to cooperate to the extent reasonably necessary to effectuate and implement all terms and conditions of this Class Settlement Agreement and to exercise their reasonable best efforts to accomplish the foregoing terms. Class Counsel and Defendant's Counsel agree to cooperate with one another in seeking Court approval of the Preliminary Approval Order, the Class Settlement Agreement and the Final Approval Order and Judgment.

**15.3.** **Headings and Rules of Construction.** As used in this Agreement unless otherwise specified, all terms in the singular and plural shall have comparable meaning when used in the plural and vise-versa. All pronouns and variations thereof shall be deemed to refer to the masculine, feminine or neuter, singular or plural, as the context may require. Section and other headings contained in this Agreement are for reference purposes only and are not intended to be relied upon for purpose of interpreting the text of the Agreement.

**15.4.** **Amendment of Agreement.** This Class Settlement Agreement may not be amended, modified, altered or otherwise changed in any manner except by a writing signed by a duly authorized agent of Named Plaintiffs and Defendant and approved by the Court. In the event any exhibit to the Agreement is modified by the district court as part of or during the approval process, the Class Settlement Agreement shall remain in full force and effect unless (1) the

modification is material and (2) any of the Parties declares in writing, within seven (7) calendar days of the modification, that it considers the modification to be material in nature.

15.5. **Costs and Expenses.** Except as otherwise specifically provided in the Agreement, each party shall bear their own expenses and costs, including attorneys' fees.

15.6. **Execution in Counterpart.** This Class Settlement Agreement may be executed in one or more counterparts, exchanged by hand, messenger, facsimile, or PDF as an electronic mail attachment. All executed counterparts and each of them shall be deemed to be one and the same instrument provided that counsel for the Parties to this Class Settlement Agreement all exchange signed counterparts. A complete set of original executed counterparts shall be filed with the Court if the Court so requests.

15.7. **Choice of Law.** This Class Settlement Agreement shall be governed by and construed in accordance with the laws of the State of Tennessee.

15.8. **Notices.** Except as otherwise provided herein, any notice, communication or demand required or permitted hereunder, shall be deemed given: (a) the day deposited with the U.S. Postal Service, if sent by regular mail; (b) on the day the same is deposited with the commercial carrier if sent by commercial overnight delivery service; (c) on the day sent if sent by electronic mail, text message or other electronic means; and, (d) on the date delivered if sent by personal delivery.

**15.9.** <u>**Settlement Agreement Exhibit List.**</u>

Exhibit 1      Arrest Claim Form

Exhibit 2      Final Approval Order

Exhibit 3      Detention Claim Form

Exhibit 4      Notice

Exhibit 5      Preliminary Approval Order

Exhibit 6      Public Safety Report

<u>**Signatures to Follow on Pages 54-58**</u>

**EXECUTED BY:**

**Kazmere Watts**

Signature: *Kzjanere*

Date: June 8th, 2021

**Kazmere Watts Notary Acknowledgement**

STATE OF Tennessee )
COUNTY OF Rutherford ( )

On this 8 day of June, 2021, before me, a Notary Public, personally appeared **Kazmere Bernard Watts** known to me (or proved to me on the basis of satisfactory evidence) to be the person whose name is subscribed to this instrument, and acknowledged that he executed it as his free act and deed.

Sarah Robertson
NOTARY PUBLIC

My Commission Expires: Jan. 14, 2024

STATE OF TN )
COUNTY OF Cannon )

**A.B.**

Signature: ▆▆ ▆▆

Date:  June __9__, 2021

**Sandra Brien,** as mother and next friend of
Plaintiff A.B.

Signature: _Sandra Brien_

Date:  June __9__, 2021

**AB and Sandra Brien Notary Acknowledgements**

STATE OF __TN__          )
COUNTY OF __Madison__    )

On this __9th__ day of June, 2021, before me, a Notary Public, personally appeared ▆▆▆ ▆▆▆▆ known to me (or proved to me on the basis of satisfactory evidence) to be the person whose name is subscribed to this instrument, and acknowledged that she executed it as her free act and deed.

_[Notary seal: ANGELA CALHOUN, STATE OF TENNESSEE NOTARY PUBLIC, MADISON COUNTY]_

_____
NOTARY PUBLIC

My Commission Expires: __08/25/2021__

STATE OF __TN__          )
COUNTY OF __Madison__    )

On this __9th__ day of June, 2021, before me, a Notary Public, personally appeared **Sandra Brien** known to me (or proved to me on the basis of satisfactory evidence) to be the person whose name is subscribed to this instrument, who after first being duly sworn, acknowledged herself to be the mother and next friend of ▆▆▆▆▆▆▆, a minor, and further acknowledged that she executed the foregoing instrument on behalf of said minor by herself as such mother and next friend.

_____
NOTARY PUBLIC

_[Notary seal: ANGELA CALHOUN, STATE OF TENNESSEE NOTARY PUBLIC, MADISON COUNTY]_

My Commission Expires: __08/25/2021__

55

REDACTED

**J.B.**

Signature: J̶█████████

Date: June  8 , 2021

**Jacqueline Brinkley,** as mother and next friend of Plaintiff J.B.

Signature: _____

Date: June  8 , 2021

[Notary seal: FRANK ROSS BRAZIL — STATE OF TENNESSEE — NOTARY PUBLIC — DAVIDSON COUNTY]

**JB and Jacqueline Brinkley Notary Acknowledgements**

STATE OF  TENNESSEE  )
COUNTY OF  DAVIDSON  )

On this  8th  day of June, 2021, before me, a Notary Public, personally appeared █████████ ███████ known to me (or proved to me on the basis of satisfactory evidence) to be the person whose name is subscribed to this instrument, and acknowledged that he executed it as his free act and deed.

_____
NOTARY PUBLIC

My Commission Expires: ____ 9 / 2 / 2024 ____

STATE OF  TENNESSEE  )
COUNTY OF  DAVIDSON  )

On this  8th  day of June, 2021, before me, a Notary Public, personally appeared **Jacqueline Brinkley** known to me (or proved to me on the basis of satisfactory evidence) to be the person whose name is subscribed to this instrument, who after first being duly sworn, acknowledged herself to be the mother and next friend of █████████████████, a minor, and further acknowledged that she executed the foregoing instrument on behalf of said minor by herself as such mother and next friend.

_____
NOTARY PUBLIC

My Commission Expires: ____ 9 / 2 / 2024 ____

[Notary seal: FRANK ROSS BRAZIL — STATE OF TENNESSEE — NOTARY PUBLIC — DAVIDSON COUNTY]

56

REDACTED

**Dylan Geerts**

Signature: _Dylan Geert_

Date: June 6, 2021

**Dylan Geerts Notary Acknowledgement**

STATE OF _Tennessee_ )
COUNTY OF _Warren_ )

On this 9th day of June, 2021, before me, a Notary Public, personally appeared **Dylan James Geerts** known to me (or proved to me on the basis of satisfactory evidence) to be the person whose name is subscribed to this instrument, and acknowledged that he executed it as his free act and deed.

_____

My Commission Expires: 08.07.2024

**Class Counsel, signing on behalf of Class**

Signature: _____

Name: _Kyle Mothershead_

Title: _Class Counsel_

Date: June 9, 2021

57

**Rutherford County, Tennessee**

Signature: _Bill Ketron_

Name: _Bill Ketron_

Title: _Mayor_

Date: June _7th_ 2021


**Rutherford County Mayor's Notary Acknowledgement**

STATE OF _Tennessee_
COUNTY OF _Rutherford_

On this ___7th___ day of June, 2021, before me, a Notary Public, personally appeared **Bill Ketron** known to me (or proved to me on the basis of satisfactory evidence) to be the person whose name is subscribed to this instrument, who after first being duly sworn, acknowledged himself to be the Mayor of Rutherford County, Tennessee, and further acknowledged that he executed the foregoing instrument on behalf of said Rutherford County, Tennessee by himself as such Mayor.

_Rachel A Lehew_
NOTARY PUBLIC

My Commission Expires: _10/22/2023_

Case 3:17-cv-01014   Document 221-1   Filed 06/16/21   Page 59 of 121 PageID #: 6147

**Exhibit 1**

**to Settlement Agreement**

# ARREST CLAIM FORM

**Required Claimant Information:**

_____  _____
First Name          Last Name

_____
Address

_____, _____ _____
City              State  Zip

(____) _____
Area Code Evening Telephone number

Other names used: _____

Date of Birth: _____/____/_____
                Month    Day   Year

Social Security Number: _____

Email address: _____

(____) _____
    Area Code Daytime Telephone number

**Parent/Guardian Information, required to be completed if Claimant is minor or under other disability:**

_____  _____
First Name          Last Name

_____
Address

_____, _____ _____
City              State  Zip

(____) _____
Area Code Evening Telephone number

Relationship to Claimant: _____

Date of Birth: _____/____/_____
                Month    Day   Year

Social Security Number: _____

Email address: _____

(____) _____
    Area Code Daytime Telephone number

**This form is complex, and it is expected that you may need assistance in completing it.  THE ATTORNEYS REPRESENTING THE CLASS ARE COMMITTED TO HELPING YOU, FREE OF CHARGE, TO MAKE YOUR CLAIM.  If you need help and think you have a claim, send an email to info@brazilclarklaw.com with (1) your full name, (2) date of birth, and (3) a phone number.** If you would prefer to call, you may call (615) 730-8619 and ask to speak with Kyle Mothershead or Frank Brazil.
**A VALID AND APPROVED ARREST CLAIM MAY BE ELIGIBLE FOR A SUBSTANTIAL PAYMENT.**
**TIME IS OF THE ESSENCE AND REQUESTS FOR ASSISTANCE MADE NEAR THE END OF THE CLAIMS PERIOD MAY GO UNANSWERED.**
*see pages 4-5 for additional information*

I wish to make a claim against Rutherford County, Tennessee (Rutherford County) because I was taken into custody (or "arrested") by a RUTHERFORD COUNTY SHERIFF'S OFFICE deputy and transported to the Rutherford County Juvenile Detention Center (RCJDC) for either a juvenile unruly or a juvenile misdemeanor delinquent offense, on or about _____ ___ 201___, under the circumstances described below.

(A) I was born on or after on or after July 26, 1998, or (B) such custody occurred on or after July 26, 2016.

Additionally, I hereby state that the following answers [answer "yes" or "no" to each of the following questions pertaining to the circumstances at the time you were arrested/taken into custody] are accurate:

(1) Were you taken into custody pursuant to an order of the Juvenile Court directing that you be taken into custody based on findings that a summons would be ineffective due to the circumstances of your case?
☐ Yes
☐ No

(2) Were you charged with a delinquent offense that would have been classified as a felony under Tennessee law if you had been an adult?
☐ Yes
☐ No

(3) Were you alleged to have committed a juvenile misdemeanor delinquent offense or a threatened breach of the peace in the presence of law enforcement?
☐ Yes
☐ No

(4) Were you taken into custody in connection with a formal allegation that you were neglected, dependent or abused child, and alleging that either (A) your detention or shelter care was required because you were subject to an immediate threat to your health or safety to the extent that delay for a hearing would be likely to result in severe or irreparable harm, or (B) you may have absconded or been removed from the jurisdiction of the court; and, in either case, (C) there was no less drastic alternative to your removal from the custody of your parent, guardian, legal custodian or the person who physically possesses or controls me available that would reasonably and adequately protect your health or safety or prevent your removal from the jurisdiction of the court pending a hearing?
☐ Yes
☐ No

(5) Were you alleged to have run away from your parents, guardian, or other custodian?
☐ Yes
☐ No

(6) Were you charged with the offense of stalking?
☐ Yes
☐ No

**This form is complex, and it is expected that you may need assistance in completing it.  THE ATTORNEYS REPRESENTING THE CLASS ARE COMMITTED TO HELPING YOU, FREE OF CHARGE, TO MAKE YOUR CLAIM.  If you need help and think you have a claim, send an email to info@brazilclarklaw.com with (1) your full name, (2) date of birth, and (3) a phone number.** If you would prefer to call, you may call (615) 730-8619 and ask to speak with Kyle Mothershead or Frank Brazil.
**A VALID AND APPROVED ARREST CLAIM MAY BE ELIGIBLE FOR A SUBSTANTIAL PAYMENT.**
**TIME IS OF THE ESSENCE AND REQUESTS FOR ASSISTANCE MADE NEAR THE END OF THE CLAIMS PERIOD MAY GO UNANSWERED.**
***see pages 4-5 for additional information***

(7) Were you taken into custody based on reasonable grounds to believe that you had attempted to commit suicide?

  ☐ Yes
  ☐ No

(8) Were you charged with committing a traffic offense in connection with a traffic accident involving either personal injury or property damage of at least $1,000?

  ☐ Yes
  ☐ No

(9) Were you charged with driving under the influence of an intoxicant or otherwise committing an offense under Tenn. Code Ann. § 55-10-401?

  ☐ Yes
  ☐ No

(10) Were you charged with committing a crime involving domestic abuse?

  ☐ Yes
  ☐ No

(11) Were you alleged (A) to be a driver in a motor vehicle accident resulting in serious bodily injury or death, or (B) to not have a valid driver license at the time of the accident, or (C) to not have evidence of financial responsibility at the time of the accident as required by § 55-12-139?

  ☐ Yes
  ☐ No

(12) Were you charged with violating the terms of probation, home placement supervision, or diversion?

  ☐ Yes
  ☐ No

(13) Were you charged with violating the terms of a valid court order?

  ☐ Yes
  ☐ No

(14) Were you alleged to be an escapee from a secure juvenile facility or institution?

  ☐ Yes
  ☐ No

(15) Were you wanted in another jurisdiction for an offense that, if committed by an adult, would be a felony in that jurisdiction?

  ☐ Yes
  ☐ No

**This form is complex, and it is expected that you may need assistance in completing it. THE ATTORNEYS REPRESENTING THE CLASS ARE COMMITTED TO HELPING YOU, FREE OF CHARGE, TO MAKE YOUR CLAIM. If you need help and think you have a claim, send an email to info@brazilclarklaw.com with (1) your full name, (2) date of birth, and (3) a phone number.** If you would prefer to call, you may call (615) 730-8619 and ask to speak with Kyle Mothershead or Frank Brazil.
**A VALID AND APPROVED ARREST CLAIM MAY BE ELIGIBLE FOR A SUBSTANTIAL PAYMENT.**
**TIME IS OF THE ESSENCE AND REQUESTS FOR ASSISTANCE MADE NEAR THE END OF THE CLAIMS PERIOD MAY GO UNANSWERED.**
***see pages 4-5 for additional information***

(16) Were you alleged to have committed a public offense or threatened breach of the peace in the presence of law enforcement?

    ☐   Yes
    ☐   No

I understand that my entitlement to compensation, if any, will be determined in accordance with the procedures of this class action settlement as more fully explained in the Class Notice mailed to class members and in documents posted on the Claim Administrator's website.

You must submit this completed Claim Form on the Claim Administrator's website (www.rutherfordjuvenilesettlement.com) **NO LATER THAN _____ p.m. _____ ___, 2021** or mail this Claim Form to the Claim Administrator at *Geerts v Rutherford County*; **Claims Administrator, Post Office Box 10584, Tallahassee, FL  32302-2584,** with a postmark **NO LATER THAN _____ ___, 2021 i**n order to be eligible to receive money from the class fund.

If your Claim Form is not submitted or mailed by the deadlines above, you may still be considered a member of the class and be bound by the settlement, but in no event will you be entitled to receive any money.

<u>**YES, I WISH TO MAKE A CLAIM.**</u>

By signing this form below, I am confirming that the above information is true and correct to the best of my knowledge and belief and that:

- I am the person identified above and am over the age of 18 **OR** I am the legal guardian of the person identified above and that person is currently less than 18 years of age.
- I have not received any money or compensation for any of the claims involved in this case.
- I will abide by, and be limited by, the Class Action Settlement as approved by the Court.
- I will keep the Claims Administrator informed of my whereabouts at all times.

**I declare under penalty of perjury that the information given above is true and correct to the best of my knowledge and belief.**

Date: _____          Signature of Claimant: _____

Date: _____          Signature of Parent/Guardian, if applicable: _____

**This form is complex, and it is expected that you may need assistance in completing it.  THE ATTORNEYS REPRESENTING THE CLASS ARE COMMITTED TO HELPING YOU, FREE OF CHARGE, TO MAKE YOUR CLAIM.  If you need help and think you have a claim, send an email to** info@brazilclarklaw.com **with (1) your full name, (2) date of birth, and (3) a phone number.** If you would prefer to call, you may call (615) 730-8619 and ask to speak with Kyle Mothershead or Frank Brazil.
**A VALID AND APPROVED ARREST CLAIM MAY BE ELIGIBLE FOR A SUBSTANTIAL PAYMENT.**
**TIME IS OF THE ESSENCE AND REQUESTS FOR ASSISTANCE MADE NEAR THE END OF THE CLAIMS PERIOD MAY GO UNANSWERED.**
*****see pages 4-5 for additional information*****

IF YOU WOULD LIKE HELP WITH THIS FORM:

You can contact the attorneys for the settlement classes at www.brazilclark.com by emailing them at info@brazilclark.com and providing your (1) full name, (2) date of birth, and (3) a phone number where you can be reached.  If you would prefer to call, you may call (615) 730-8619 and ask to speak with Kyle Mothershead or Frank Brazil.  The attorneys will help you – free of charge – to figure out the date you were arrested and whether each of the checkbox items apply to you. If the attorneys determine that your claim appears to be valid, they will also help you to complete this claim form.

Also, if you were arrested as a juvenile by the Rutherford County Sheriff's Office more than once you may have MORE THAN ONE valid claim.  **A separate claim form is required to be submitted by you for each arrest receive money for each valid claim**.  The attorneys at www.brazilclark.com can help you determine whether you have more than one claim, provide all the information you need to complete the claim form for each claim, and help you complete the forms for those claims.

While the attorneys will try to help you quickly, if you wait to contact them until near the end of the claims period it may be too late for the attorneys to locate the information necessary to complete your form(s) and help you submit your claim(s) by the deadline.  IT IS YOUR RESPONSIBILTY TO SUBMIT A COMPLETE CLAIM FORM WITH ALL REQUIRED INFORMATION FOR EACH CLAIM IF YOU WANT TO GET PAID FOR THOSE CLAIMS AS SET FORTH IN THE CLASS NOTICE.

INDEPENDENTLY VERIFIABLE RECORDS WILL BE USED TO CONFIRM VALID CLAIMS, AND THIS SAME DOCUMENTATION WILL BE USED TO ENSURE THAT INVALID, FALSE OR FRAUDULENT CLAIMS WILL NOT BE APPROVED.

*IF YOU WERE **NOT** TAKEN INTO CUSTODY OR ARRESTED AS A MINOR IN RUTHERFORD COUNTY BY THE RUTHERFORD COUNTY SHERIFF'S OFFICE, YOU DO NOT HAVE A VALID ARREST CLASS CLAIM. HOWEVER, IF YOU WERE ARRESTED AS A MINOR BY A DIFFERENT LAW ENFORCEMENT AGENCY AND ULTIMATELY DETAINED AT THE RUTHERFORD COUNTY JUVENILE DETENTION CENTER, YOU MAY HAVE A VALID DETENTION CLAIM.  IF YOU BELIEVE THAT YOU MAY HAVE A VALID DETENTION CLAIM, YOU SHOULD COMPLETE AND SUBMIT THE FORM ENTITLED "DETENTION CLASS CLAIM FORM."*

**This form is complex, and it is expected that you may need assistance in completing it.  THE ATTORNEYS REPRESENTING THE CLASS ARE COMMITTED TO HELPING YOU, FREE OF CHARGE, TO MAKE YOUR CLAIM.  If you need help and think you have a claim, send an email to info@brazilclarklaw.com with (1) your full name, (2) date of birth, and (3) a phone number. If you would prefer to call, you may call (615) 730-8619 and ask to speak with Kyle Mothershead or Frank Brazil.**
**A VALID AND APPROVED ARREST CLAIM MAY BE ELIGIBLE FOR A SUBSTANTIAL PAYMENT.**
**TIME IS OF THE ESSENCE AND REQUESTS FOR ASSISTANCE MADE NEAR THE END OF THE CLAIMS PERIOD MAY GO UNANSWERED.**
*see pages 4-5 for additional information*

# Exhibit 2

# to Settlement Agreement

| | | |
|---|---|---|
| DYLAN GEERTS, ET AL.. | ) | |
| PLAINTIFFS, | ) | NO. 3:17-1014 |
| V. | ) | |
| | ) | CRENSHAW/ HOLMES |
| RUTHERFORD COUNTY, TENNESSEE, | ) | |
| DEFENDANT. | ) | |

---

## [proposed] ORDER APPROVING CLASS ACTION SETTLEMENT

---

Pending before this Court is the Parties' Joint Motion for Final Approval of Class Action Settlement Agreement (the "Motion For Final Approval"). (Doc No. ------).  At the foundation of the Motion is the Settlement Agreement,[1] which is dated June 7, 2021, has been executed by the Parties, and is attached to this Order as <u>Exhibit 1</u> and is incorporated in its entirety by reference.  The Motion For Final Approval requests that the Court give its final approval of the Settlement Agreement, certify the Classes for purposes of settlement only, enter a permanent injunction for the injunctive class, award service awards to Class Representatives in the amount of $25,000.00 per representative, and dismiss the case with prejudice.[2]  *Id.*  This Court conducted a Fairness Hearing on _____ with regard to the Motion For Final Approval and, for the reasons set forth below, will GRANT the relief requested.  The Court makes the following FINDINGS OF FACT AND CONCLUSIONS OF LAW AND ENTERS THE ORDERS SET FORTH BELOW:

---

[1] Unless otherwise provided herein, all capitalized terms herein shall have the meanings ascribed to them in the Settlement Agreement.

[2] Also before the Court is Class Counsel's Plaintiff's Motion For Attorney's Fees and Cost Of Litigation ("Fee and Cost Motion"), and an Order has been entered relative to the Fee Motion contemporaneously herewith.

## Background of Litigation

1.     Named Plaintiffs, other than Dylan Geerts, filed the initial lawsuit in the United States District Court for the Middle District of Tennessee as a proposed class action (Case No. 3:16-cv-01975) with their guardians Kanisa Davis, Sandra Brien, and Jacqueline Brinkley, against Defendants Murfreesboro Police Officer Chrystal Templeton, Rutherford County, Tennessee ("Defendant" and/or "Rutherford County"), and the City of Murfreesboro, Tennessee. The claims against the defendant Templeton were severed, and the claims against the defendant City of Murfreesboro were dismissed, leaving Rutherford County as the sole defendant in Case No. 3:16-cv-01975.  On July 7, 2017, Dylan Geerts filed the second lawsuit against Rutherford County (Case No. 3:17-cv-1014). Following a consolidation, the two lawsuits proceeded together as a single case under Case No. 3:17-cv-1014. Consistent with the definition in the Settlement Agreement, both lawsuits are referred to herein together as the "Litigation." This Court has jurisdiction over the subject matter of the Litigation and over all Parties to the Litigation.

2.     In the Litigation, Named Plaintiffs allege that two policies Rutherford County followed in relation to arresting and detaining juveniles violated those juveniles' state law and federal constitutional rights. First, Named Plaintiffs alleged that Rutherford County maintained a de facto policy requiring all juveniles charged with any delinquent or unruly offense be taken into custody and delivered to the RCJDC. Named Plaintiffs asserted state-law false arrest claims alleging that this policy was in violation of Tennessee state law, and in particular Tenn. Code Ann. §§ 37-1-113 and 40-7-103. Second, Named Plaintiffs alleged that Rutherford County maintained a de facto policy (sometimes called the "Filter System") of placing juveniles in secure detention at the RCJDC in violation of state law restrictions permitting secure detention of juveniles only under the circumstances set forth in Tenn. Code Ann. § 37-1-114(c). Named Plaintiffs asserted

2

federal civil rights claims under 28 U.S.C. § 1983, alleging that this policy violated their procedural and substantive due process rights under the Fourteenth Amendment to the U.S. Constitution.

3.      Named Plaintiffs, on behalf of themselves and the purported class, filed a motion seeking class action certification pursuant to Federal Rules of Civil Procedure 23(a), 23(b)(2), and 23(b)(3) and Rutherford County filed a response opposing such certification. As of the date hereof, the Court has not yet ruled on this motion. Additionally, Rutherford County has filed two motions for summary judgment and Named Plaintiffs filed responses in opposition. The Motions for Summary Judgment remain pending as of the date hereof.

**Preliminary Approval of Settlement Agreement**

4.      On June 16, 2021, Named Plaintiffs and Defendant jointly filed a Joint Motion and Supporting Memorandum for an Order Preliminarily Approving the Class Action Settlement, Preliminarily Certifying Classes for Settlement Purposes, Appointing Class Representatives, Appointing Class Counsel, Approving and Directing the Issuance of a Class Notice, and Scheduling a Fairness Hearing ("Joint Motion for Preliminary Approval") (Doc. No. ____.), asking the Court to preliminarily approve the Settlement Agreement executed by the Parties. After a hearing, the Court entered an Order dated _____, 2021 (Doc No. ____) (the "Preliminary Approval Order"), preliminarily approving the settlement consistent with Fed. R. Civ. P. 23 and ordering that the Notice be sent to particular persons who Class Counsel believed likely were Class Members and otherwise published the Notice to reach other potential members of the Classes, scheduling a Final Approval Hearing for _____, and providing the Classes with an opportunity either to participate in the settlement, exclude themselves from the settlement, or object to the proposed settlement. The Preliminary Approval Order was entered pursuant to Federal Rule of Civil Procedure 23(e) as the first step in the class action settlement

3

approval process. The order directed that a written notice to a list of potential class members be given, as possible and feasible, by direct mail, via first-class mail, publication, e-mail, text and augmented by other media.

5.      The Notice approved and ordered in the Preliminary Approval Order was appropriate and comported with the requirements of Rule 23 of the Federal Rules of Civil Procedure. It included, among other things, the following information: a brief statement of the claims released by the Classes; the date of the Fairness Hearing; a description of the proposed settlement; the deadline for submitting objections to the settlement; information about how to obtain a copy of the Settlement Agreement; the information that must be contained in any objection; attendance at the Fairness Hearing, including the date and time; and, contact information for all counsel to the case, along with an invitation to and directions as to how to contact Class Counsel if they have any questions. (*See* Notice, attached as Exhibit 2.)

6.      Class Counsel and Defendant retained Settlement Services, Inc. ("SSI" and/or "Settlement Administrator") to give Notice in the manner approved by the Court, and ultimately to administer the settlement, process claims, and make distributions. The Court approved the retention of SSI as the Settlement Administrator in the Preliminary Approval Order.

**Final Approval of Notice and Fairness Hearing**

7.      The Court finds that the Notice approved and ordered in the Preliminary Approval Order (1) was distributed consistent with, and met all applicable requirements of, this Court's orders, case law, the Due Process Clause, and the requirements of Rule 23 of the Federal Rules of Civil Procedure, (2) constituted notice that was reasonably calculated, under the circumstances, to apprise the members of the Classes of the pendency of the Litigation, their right to object to or exclude themselves from the Settlement Agreement, and their right to appear at the Final Approval

4

Hearing, and (3) was reasonable and constituted due, adequate, and sufficient notice to all persons entitled to receive notice. Based on the declarations submitted with the Motion For Final Approval (Doc Nos. _____), the Court finds that the following steps were taken consistent with the Preliminary Approval Order:

a. Within three (3) calendar days of the issuance of Preliminary Approval Order, Class Counsel provided the Settlement Administrator the Class Spreadsheet that included, where available, the following information regarding persons identified in the Class List: name, last known address, phone number, social security number; parents' name(s), last known address, phone number; and, if available, e-mail addresses.

b. Within ten (10) calendar days of the issuance of Preliminary Approval Order, the Settlement Administrator mailed the Notice, via first-class U.S. Mail, to the persons on the Class List. This mailing was made to the last known address(es) of the persons on the Class List and/or using updated addresses located by the Settlement Administrator using the United States Postal Service's National Change of Address database and/or LexisNexis tracing.

c. The Settlement Administrator built and hosted the Website that included copies of the Preliminary Approval Order, Notice and the Claim Forms for use by potential Class Members.

d. The Settlement Administrator performed a LexisNexis trace to locate and identify e-mail addresses for the potential members of the Classes listed on the Class List. Using the traced email addresses, the Settlement Administrator e-mailed Notice to all potential members of the Classes on the Class List for whom e-mails were located, and the e-mails directed the persons to the Website for more information about the case and how to submit a claim.

e. The Settlement Administrator performed a LexisNexis trace in an attempt to locate cell phone numbers for the potential members of the Classes listed on the Class List for who phone numbers are not already provided in the Class List. Using the phone numbers on the Class List or the traced phone numbers, the Settlement Administrator attempted to send three (3) text messages, once per day, on three (3) separate days, to each potential members of the Classes the Class List for whom a phone number existed or was located, and the text directed the potential members of the Classes to the Website via a hyperlink for more information about the case and how to submit a claim.

f. The Settlement Administrator caused to be published in the Daily News Journal (a local Rutherford County newspaper) an advertisement designed to inform readers of the general nature of this settlement and directing readers to the web address www.rutherfordjuvenilesettlement.com for full details. The advertisement was published

5

in two (2) hard copy editions of the paper, with one running on a Sunday and the other running on a Wednesday.

8.      The Court finds that Defendant properly notified the appropriate state and federal officials of the Settlement Agreement, pursuant to the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. § 1715.  The Court has reviewed the substance of Defendant's notice and accompanying materials and finds that it complied with all applicable requirements of CAFA.

9.      Pursuant to notice, the Court conducted the Fairness Hearing on _____ to determine whether it should give final approval to the settlement agreement proposing certification and compensatory relief for the Classes pursuant to Federal Rule of Civil Procedure 23(b)(2) and proposing certification and injunctive relief for an injunctive class under Federal Rule of Civil Procedure 23(b)(3). The Federal Rules of Civil Procedure require court approval of settlements in class actions, Fed. R. Civ. P. 23(e)(2) ("The claims, issues, or defenses of a certified class may be settled, voluntarily dismissed, or compromised only with the court's approval."), and if the settlement would determine the rights of and bind absent class members, "the court may approve it only after a hearing and on finding that it is fair, reasonable, and adequate," *ibid.* The Fairness Hearing was the second step (after the Preliminary Approval Order) in the settlement approval process. *See* Manual for Complex Litigation § 23.632-.633 (4th ed.); *see also Tennessee Ass'n of Health Maint. Orgs., Inc. v. Grier*, 262 F.3d 559, 565 (6th Cir. 2001).

### Settlement Agreement Resulted from Arm's Length Negotiation

10.      The terms of the Settlement Agreement (Docket No. __) resulted from intense, court-ordered negotiations between the Parties that began in May 2019, culminated with an agreement in principle in December 2020 and then were memorialized over the next several months.  The negotiations were conducted under the supervision of a private mediator, C.A. Gonzalez, a member of the bar from Atlanta, GA (the "Mediator").  The Mediator conducted at

6

least four day-long mediation sessions in Murfreesboro, TN, with counsel for the Parties attending in person. Further, as described in the Motion For Final Approval and in paragraphs 1-3 of this Order, this matter was intensely litigated. In particular, the Court notes that discovery was completed in this matter, with the production of thousands of pages of documents and the depositions of thirty-three persons[3]. Moreover, Defendant has pending before the Court two dispositive motions for summary judgment (Doc No.'s 140, 177) that, if granted, would result of the dismissal of all claims. In addition, Named Plaintiffs have, on behalf of themselves and the purported class, filed the pending amended motion seeking class action certification pursuant to Federal Rules of Civil Procedure 23(a), 23(b)(2), and 23(b)(3) (Doc No. 30) and a revised Rule 23 motion to certify the class (Doc No. 113) and Rutherford County filed responses (Doc Nos. 44 and 125) opposing such certification. As of the date hereof, the Court has not yet ruled on the foregoing motions.

11.    Based upon the entire record in this cause and the Fairness Hearing, the Court concludes that the Settlement Agreement was the result of an arm's length negotiation between experienced counsel for the Parties and not the product of overreaching or fraud.

**Final Class Certification**

12.    This Court now affirms certification of the Classes, gives final approval to the Settlement, and finds that the Settlement Agreement is fair, reasonable, adequate, and in the best interests of the Settlement Classes.

13.    The Settlement Classes are certified for settlement purposes, under Fed. R. Civ. P. 23(a) and 23(b)(3), the Court finding that the Settlement Classes satisfy the applicable

---

[3] Some of these persons were deposed on more than one occasion.

requirements of Fed. R. Civ. P. 23 and Due Process. The Settlement Classes consist of the following:

> The "Arrest Class" shall mean and include all persons who at any time up and until the date of the Preliminary Approval Order were taken into custody by a Rutherford County Sheriff's deputy and transported to the Rutherford County Juvenile Detention Center (RCJDC) for either a juvenile unruly or a juvenile misdemeanor delinquent offense, where (a) such person was taken into custody on or after July 26, 2016 or the person was born on or after July 26, 1998, and (b) such person meets all of the other criteria set forth in the Settlement Agreement[4]; and

---

[4] Such criteria are as follows: (1) Such person was not taken into custody pursuant to an order of the Juvenile Court directing that the person be taken into custody based on findings that a summons would be ineffective due to the particular circumstances of the person's case; (2) Such person was not charged with a delinquent offense that would have been classified as a felony under Tennessee law if the person had been an adult; (3) Where such person was taken into custody based on a misdemeanor delinquent charge, such person was not alleged to have been in the presence of law enforcement when the person committed the alleged delinquent offense for which they were arrested; (4) Such person was not taken into custody in connection with a formal allegation that such person was a neglected, dependent or abused child, and alleging that either (A) the child's detention or shelter care was required because the child was subject to an immediate threat to the child's health or safety to the extent that delay for a hearing would be likely to result in severe or irreparable harm, or (B) the child may have absconded or been removed from the jurisdiction of the court; and, in either case, (C) there was no less drastic alternative to removal of the child from the custody of the child's parent, guardian, legal custodian or the person who physically possesses or controls the child available that would reasonably and adequately protect the child's health or safety or prevent the child's removal from the jurisdiction of the court pending a hearing; (5) The records do not document that such person was, at the time of arrest, a "runaway." "Runaway" means any person under eighteen (18) years of age who is away from the home or residence of such person's parents or guardians without such parents' or guardians' consent. "Runaway" does not include persons under eighteen (18) years of age who lawfully reside with a close relative or those attending educational institutions, or those placed by court order, on a contractual agreement with a parent or guardian; (6) Such person was not charged with the offense of stalking; (7) The records do not document that such person was taken into custody based on reasonable grounds to believe that the person had attempted to commit suicide; (8) Such person was not charged with committing a traffic offense in connection with a traffic accident involving either personal injury or property damage of at least $1,000; (9) Such person was not charged with driving under the influence of an intoxicant or otherwise committing an offense under Tenn. Code Ann. § 55-10-401; (10) Such person was not charged with committed a crime involving domestic abuse; (11) The records do not allege that (A) such person was a driver in a motor vehicle accident resulting in serious bodily injury or death, or (B) such person did not have a valid driver license at the time of the accident, or (C) such person did not have evidence of financial responsibility at the time of the accident as required by § 55-12-139; (12) Such person was not charged with violating the terms of probation, home placement supervision, or diversion; (13) Such person was not charged with violating the terms of a valid court order; (14) The person was not alleged to be an escapee from a secure juvenile facility or institution; (15) The person was not wanted in another jurisdiction for an offense that, if committed by an adult, would be a felony in that jurisdiction; and, (16) The person was not alleged to have committed a public offense or threatened breach of the peace in the presence of law enforcement (the terms "public offense" and "breach of peace" in the Agreement carry the same meaning as the terms have in Tennessee Code Annotated § 40-7-103).

8

The "Detention Class" shall mean and include all persons who at any time up and until the date of the Preliminary Approval Order were on a juvenile delinquent or unruly charge admitted, subjected to and confined in secure detention at the RCJDC prior to a detention hearing, where (a) such person was born on or after October 14, 1997, or such secure detention occurred at any time from and after October 14, 2015 until the date of the Preliminary Approval Order, and (b) the person's circumstances at the time of such detention meet all the criteria set forth in the Settlement Agreement.[5]

### Final Settlement Agreement Approval

14.    The Court finds that on its face the Settlement Agreement provides the Arrest Class and Detention Class with appropriate relief sought, including significant money damages. On the face of the Settlement Agreement, and if finally approved the Court, Defendant agreed to total

---

[5] Such criteria are as follows: (1) The person was not charged with a crime against a person resulting in and having as one of its statutory elements the serious injury or death of the victim or involving the likelihood of serious injury or death to such victim, or the unlawful possession of a handgun or carrying of a weapon, as prohibited by T.C.A., title 39, chapter 17, part 13, and in particular not any one or more of the following delinquent offenses (paragraph (1) shall be interpreted and applied consistently with Tennessee Code Annotated §§ 37-1-114(c)(1)(A) and (B)): Aggravated Assault, T.C.A. § 39-13-102; Vehicular Assault, T.C.A. § 39-13-106; Aggravated Vehicular Assault, T.C.A. § 39-13-115; Criminal homicide, T.C.A. § 39-13-201; First Degree murder, T.C.A. § 39-13-202; Second Degree murder, T.C.A. § 39-13-210; Voluntary manslaughter, T.C.A. § 39-13-211; Criminally negligent homicide, T.C.A. § 39-13-212; Vehicular homicide, T.C.A. § 39-13-213; Reckless homicide, T.C.A. § 39-13-215; Assisted suicide, T.C.A. § 39-13-216; Aggravated vehicular homicide, T.C.A. § 39-13-218; Robbery, T.C.A. § 39-13-401; Aggravated robbery, T.C.A. § 39-13-402; Especially aggravated robbery, T.C.A. § 39-13-403; Aggravated rape, T.C.A. § 39-13-502; Rape, T.C.A. § 39-13-503; Aggravated sexual battery, T.C.A. § 39-13-504; Sexual battery, T.C.A. § 39-13-505; Aggravated Arson, T.C.A. § 39-14-302; Prohibited weapons, T.C.A. § 39-17-1302; Unlawful carrying or possession of weapon, T.C.A. § 39-17-1307; Carrying weapons on school property, T.C.A. § 39-17-1309; Carrying weapons on public parks, playgrounds, civic centers, and other public recreational buildings and grounds, T.C.A. § 39-17-1311; Handgun possession prohibited, T.C.A. § 39-17-1319; or, Possession of handgun while under the influence, T.C.A. § 39-17-1321; (2) The person was not charged with a delinquent offense categorized as a felony under Tennessee law, probation violation, or aftercare violation while the person: Was already on probation; or Was already awaiting court action on a previously alleged delinquent offense, or Was alleged to have escaped or absconded from a juvenile facility, institution, or other court-ordered placement or Had, within the previous twelve months, failed to appear at any juvenile court hearing or been charged with committing a violent felony delinquent offense involving a risk of serious bodily injury or death, or Had, within the previous twelve months, been adjudicated delinquent of a felony delinquent offense; (3) No court order was issued within 24 hours of the detention, excluding nonjudicial days, documenting "special circumstances" that justified the person's secure detention based on a risk of immediate harm to the person due to issues of dependency, neglect, or abuse if they were not securely detained; (4) The person was not alleged to be an escapee from a secure juvenile facility or institution; (5) The person was not wanted in another jurisdiction for an offense that, if committed by an adult, would be a felony in that jurisdiction; and, (6) The person was not charged with violating a "valid court order" that was already in effect prior to the instant charge giving rise to the detention, and was not a runaway from another jurisdiction.

9

financial payments up to a maximum amount of, and not to exceed in any event, Eleven Million Dollars and no/100 ($11,000,000.00).

       a.      The total financial payments include funds for a Maximum Arrest Class Settlement Fund in the sum of Five Hundred Sixteen Thousand Six Hundred and Sixty-Six Dollars and 67/100 ($516,666.67) to pay compensable false arrest claims approved pursuant to the terms of the Settlement Agreement. Defendant's total payments to the Arrest Class approved claimants shall in no event exceed the amount of funds in the Maximum Arrest Class Settlement Fund. Moreover, as this is a claims-made settlement, the Arrest Class approved claimants as a whole may receive less than the maximum amount. The Arrest Class approved claimants as a whole, however, shall in no event receive in total less than the sum of the Minimum Arrest Class Settlement Fund, which is One Hundred Twenty-Nine Thousand One Hundred and Sixty-Six Dollars and 67/100 ($129,166.67). The amount paid to the Arrest Class approved claimants will depend on the final number of Approved False Arrest Claims.

       b.      The total financial payments include funds for a Maximum Detention Class Settlement Fund in the sum of Seven Million Two Hundred Thirty-Three Thousand Three Hundred and Thirty-Three Dollars and 33/100 ($7,233,333.33) to pay compensable illegal detention claims approved pursuant to the terms of the Settlement Agreement. Defendant's total payments to the Detention Class approved claimants shall in no event exceed the amount of funds in the Maximum Detention Class Settlement Fund. Moreover, as this is a claims-made settlement, the Detention Class approved claimants as a whole may receive less than the maximum amount. The Detention Class approved claimants as a whole, however, shall in no event receive in total less than the sum of the Minimum Detention Class Settlement Fund, which is One Million Eight Hundred and Eight Thousand Three Hundred and Thirty-Three Dollars and 33/100 ($1,808,333.33). The amount paid to Detention Class Members will depend on the final number of Approved Illegal Detention Claims.

       c.      The total financial payments include funds in the amount not to exceed Two Hundred Ninety Thousand Dollars and no/100 ($290,000.00) for the use of the Settlement Administration ("Settlement Administration Funds"), with Defendant in no event to be responsible for the payment of any additional funds for the administration of the settlement. Any part of the Settlement Administration Funds that are not used shall be returned to Defendant.

       d.      The total financial payments include funds in the amount not to exceed One Hundred Ten Thousand Dollars ($110,000.00) as an award to reimburse Class Counsel for costs and expenses incurred in prosecuting the Litigation. Class Counsel has agreed that in no event shall their application for costs and expenses exceed this maximum amount and, in any event, it will not accept more than this maximum amount even if awarded by the Court. As part of the Settlement Agreement, Defendant has agreed that the award of costs and expenses in the foregoing amount is reasonable and will not challenge Class Counsel's application for reimbursement of costs and expenses in this amount.

10

e.     The total financial payments include funds in the amount not to exceed Two Million Seven Hundred Fifty Thousand Dollars and 00/100 ($2,750,000.00) for Class Counsel's fees ("Maximum Fee Award").  It should be noted that while the Parties have agreed that Class Counsel may seek a Fee Award in an amount that will in no event exceed the Maximum Fee Award from the Court as part of the Settlement Agreement, Defendant has not agreed that the Maximum Fee Award is reasonable or appropriate, and Defendant has specifically reserved the right to object to the amount of the Fee Award sought by Class Counsel. Further, Class Counsel agrees that in no event will it seek, be entitled to, or accept a Fee Award that is greater than the Maximum Fee Award.

f.     The total financial payments include funds in the amount not to exceed, and subject to the approval of the Court, Twenty-Five Thousand Dollars ($25,000.00) in service awards for each of the Named Plaintiffs in recognition of their efforts on behalf of the Settlement Classes.

15.     The Court also finds that on its face the Settlement Agreement provides the Arrest Class and Detention Class with appropriate permanent injunctive relief, which is more particularly described in the Permanent Injunction below. For all these reasons, the Court finds that the terms and provisions of the Settlement Agreement have been entered into in good faith and are fully and finally approved as fair, reasonable, and adequate, and in the best interests of each of the Parties, the Named Plaintiffs and the Classes. All objections to the Settlement Agreement are without merit and overruled. The Parties are hereby directed to implement and consummate the Settlement Agreement according to its terms and provisions, and the Settlement Agreement is finally approved as fair, reasonable, and adequate, and in the best interests of each of the Parties and Classes.

## Adequacy of Class Counsel and Class Representatives

16.     The Court finds that Class Counsel and the Class Representatives have fully and adequately represented the Classes for purposes of entering into and implementing the terms of the Settlement Agreement and have satisfied the requirements of Fed. R. Civ. P. 23(a)(4).

**Approval of Class Notice and Claim Administration Process**

17. The Court finds that all notice requirements, and follow-up procedures, have been implemented pursuant to the Settlement Agreement and this Court's Preliminary Approval Order and that they:

    a. constituted the best practicable notice to Settlement Class Members under the circumstances of this Litigation;

    b. constituted notice that was reasonably calculated, under the circumstances, to apprise the members of the Classes of (i) the pendency of this Litigation, (ii) the terms and conditions of the Settlement Agreement, their rights thereunder, and instructions on how to submit, and the timetable for submission of, a Claim Form, (iii) their right to exclude themselves from the Classes and the proposed settlement and submit an Opt-Out Request, (iv) their right to object to any aspect of the proposed settlement (including final certification of the Classes, the fairness, reasonableness, or adequacy of the proposed settlement, the adequacy of the Classes' representation by the Class Representatives or Class Counsel, and/or the award of attorneys' fees and costs and the Service Award to the Class Representatives), (v) their right to appear at the Final Hearing, either on their own or through counsel hired at their own expense, if they did not exclude themselves from the Classes, and (vi) the binding effect of the Orders and Judgment in this Litigation, whether favorable or unfavorable, on all persons who do not file an Opt-Out Request;

    c. constituted notice that was reasonable, adequate, and sufficient notice to all persons entitled to be provided with notice; and

    d. constituted notice that fully satisfied the requirements of the Federal Rules of Civil Procedure (including Fed. R. Civ. P. 23(c)(2) and (e)), and the United States Constitution (including the Due Process Clause), and any other applicable law.

18. The Court finally approves the claim administration process described in the Settlement Agreement as fair, reasonable, and adequate, and in the best interests of each of the Parties, the Named Plaintiffs and the Classes. The Court finds that the claims administration process for the Classes, including all notice requirements and follow-up procedures, has been implemented pursuant to and consistent with the Settlement Agreement and this Court's Preliminary Approval Order. According to Declarations filed with the Court, the claims administration process resulted in the following: After providing Notice, the Settlement Administrator received a total of _____ Claim Forms by the Claims Deadline from persons

12

claiming to be members of the Arrest Class, of which _____ were finally determined to be Approved False Arrest Claims; Pursuant to the terms of the Settlement Agreement, Defendant is required to pay a total of $_____ to satisfy all of the Approved False Arrest Claims, resulting in $_____ per Approved False Arrest Claim; after providing Notice, the Settlement Administrator received a total of _____ Claim Forms by the Claims Deadline from persons claiming to be members of the Detention Class, of which _____ were finally determined to be Approved Illegal Detention Claims; Pursuant to the terms of the Settlement Agreement, Defendant is required to pay a total of $_____ to satisfy all of the Approved Illegal Detention Claims, resulting in $_____ per Approved Illegal Detention Claim.

19.     The terms of the Settlement Agreement and this Final Approval Order and the accompanying Final Judgment are binding on the Parties, the Class Representatives, and all members of the Classes (whether or not they filed claims) as well as their heirs, executors, and administrators, successors and assigns, and those terms shall have *res judicata* and other preclusive effect in all pending and future claims, lawsuits, or other proceedings maintained by or on behalf of any such persons, to the extent those claims, lawsuits, or other proceedings involve matters that were or could have been raised in this Litigation and/or are encompassed by the release set forth in Section 11.1 of the Settlement Agreement.

20.     The Class Representatives and all members of the Classes (whether or not they filed claims) as well as their heirs, executors, and administrators, successors and assigns, as further and fully defined in Section 2.45 of the Settlement Agreement (the "Releasing Parties") shall be bound by the Release provided in the Settlement Agreement, including but not limited to Section 11.1, which is incorporated herein in all respects, regardless of whether such persons received any compensation under the Settlement Agreement (the "Release"). The Release is effective as of the

13

date of this Final Approval Order and the accompanying Final Judgment. The Court expressly adopts all defined terms in the Settlement Agreement, including, but not limited to, the definition of Released Claims, Released Parties, and the Class Representatives' Release of Claims provided in the Settlement. The Releasing Parties are barred and enjoined from (i) filing, commencing, prosecuting, maintaining, intervening in, participating in (as class members or otherwise), or receiving any benefits or other relief from, any other claim, lawsuit, arbitration, or administrative, regulatory, or other proceeding or order in any jurisdiction based on, arising out of, or relating to the claims and causes of action in this Litigation and/or the Released Claims; (ii) raising as a defense or counter-claim to any claim brought against them any of the claims or causes of action in the Litigation and/or the Released Claims; and (iii) organizing or soliciting the participation of any Class Members into a separate class for purposes of pursuing as a purported class action (including by seeking to amend a pending complaint to include class allegations or by seeking class certification in a pending action) any claim, lawsuit, or other proceeding based on, arising out of, or relating to the claims and causes of action or the facts and circumstances relating thereto, in this Litigation and/or the Released Claims. The Court finds that issuance of this permanent injunction is necessary and appropriate in aid of the Court's jurisdiction over the Litigation and to protect and effectuate the Court's Final Approval Order and Final Judgment.

## Permanent Injunction

21.     Rutherford County is permanently enjoined from using the Filter System to determine whether juveniles arrested shall be detained in the Rutherford County Juvenile Detention Center pending a detention hearing conducted by the Rutherford County Juvenile Court. Rutherford County is further enjoined to follow the requirements set forth in T.C.A. §37-114(c), as long as it is in place and remains applicable, to guide its detention decisions at the Rutherford

14

County Juvenile Detention Center prior to the detention hearing. This Permanent Injunction does not apply to juveniles detained at RCJDC pursuant to detention decisions made by jurisdictions outside of Rutherford County.

22.     Class Counsel will monitor Rutherford's County's compliance with the Permanent Injunction for a period of two (2) years from the date of entry of the Final Approval Order. Class Counsel agrees that it has reviewed the information made publicly available by the County regarding the Rutherford County Juvenile Detention Center's monthly statistics and data, and Class Counsel agrees it is sufficient for Class Counsel's monitoring purposes. Rutherford County shall continue publishing the information contained in the sample Public Safety Report, attached as Exhibit 6 to the Settlement Agreement, and/or provide substantially similar information to Class Counsel for the two-year period of monitoring. Rutherford County shall have no obligation to provide any additional information, reports, or data to Class Counsel for purposes of monitoring. If Class Counsel believes in good faith that the County is violating the Permanent Injunction, Class Counsel shall provide written notice to and inform counsel for Rutherford County of the basis for that belief, and the parties shall make all reasonable attempts to resolve the issue prior to Class Counsel seeking relief from the Court.

**Attorneys' Fees and Expenses and Service Awards**

23.     Pursuant to this Court's separate Order (Docket No.___), Class Counsel have been awarded attorneys' fees in the sum of $_____ and reimbursement of their costs and expenses in the sum of $_____. In addition, the Court hereby awards Class Representatives Service Awards, in the amount of _____ for service and assistance to the Classes. The Service Awards shall be distributed per the terms outlined in the Settlement Agreement (ECF __).

15

24.     Attorneys' fees, costs, and expenses and the Class Representatives' Service Award payments shall be paid by Defendant to the Settlement Administrator in accordance with the terms and conditions set forth in the Settlement Agreement.

## Class Payments

25.     Defendant shall pay to the Settlement Administrator in accordance with the terms of the Settlement Agreement, the total sum of $_____ to satisfy all of the Approved False Arrest Claims and the total sum of $_____ to satisfy all of the Approved Illegal Detention Claims. Such amounts have been fairly and properly determined pursuant to the claim administration process administered by the Settlement Administrator and in accordance with the terms and conditions set forth in the Settlement Agreement. The Settlement Administrator shall distribute such payments in accordance with the terms of the Settlement Agreement.

## Settlement Administrator Return of Paid Funds

*26.     Paragraph reserved in the event funds advance for Settlement Administration following Preliminary Approval have not been exhausted, in which case the remaining funds should be returned to Defendant.*

## Enforcement; Modification of Settlement Agreement

27.     Nothing in this Final Approval Order or the accompanying Final Judgment shall preclude any action to enforce the terms of the Settlement Agreement.

28.     The Parties are hereby authorized, without needing further approval from the Court, to agree to and adopt such amendments to, and modifications and expansions of, the Settlement Agreement, as are in writing and signed by the Parties' counsel and are consistent with this Final Approval Order and do not limit the rights of the Class or Subclass Members under the Settlement Agreement.

16

## Retention of Jurisdiction

29.     The Court has jurisdiction to enter this Final Approval Order and the accompanying

Final Judgment. This Court expressly retains jurisdiction as to all matters relating to the

administration, consummation, enforcement, and interpretation of the Settlement Agreement and

of this Final Approval Order and the accompanying Final Judgment, and for any other necessary

purpose, including, without limitation,

a.     enforcing the terms and conditions of the Settlement Agreement and resolving any disputes, claims, or causes of action in the Litigation that, in whole or in part, are related to or arise out of the Settlement Agreement, this Final Approval Order, or the Final Judgment (including, without limitation, whether a person or entity is or is not a member of the Classes; whether claims or causes of action allegedly related to this case are or are not barred by this Final Approval Order and the Final Judgment);

b.     entering such additional Orders as may be necessary or appropriate to protect or effectuate the Court's Final Approval Order and the Final Judgment approving the Settlement Agreement, dismissing all claims on the merits and with prejudice, and permanently enjoining the Releasors from initiating or pursuing related proceedings, or to ensure the fair and orderly administration of this settlement; and entering any other necessary or appropriate Orders to protect and effectuate this Court's retention of continuing jurisdiction; and

c.     entering any other necessary or appropriate Orders to protect and effectuate this Court's retention of continuing jurisdiction.

## No Admission

30.     Neither this Final Approval Order (and the accompanying Final Judgment) nor the

Settlement Agreement (nor any other document referred to here, or any action taken to carry out

this Final Approval Order and the Final Judgment) is, may be construed as, or may be used as, an

admission or concession by or against the Defendant or the Released Parties of the validity of any

claim or any actual or potential fault, wrongdoing or liability. Entering into or carrying out the

Settlement Agreement, and any negotiations or proceedings related to it, shall not be construed as,

or deemed evidence of, an admission or concession as to the Defendant's denials or defenses and

shall not be offered or received in evidence in any action or proceeding against any party hereto in

17

any court, administrative agency or other tribunal for any purpose whatsoever, except as evidence of the settlement or to enforce the provisions of this Final Approval Order and Final Judgment and the Settlement Agreement; provided, however, that this Final Approval Order, the accompanying Final Judgment, and the Settlement Agreement may be filed in any action against or by the Defendant or the Released Parties to support a defense of res judicata, collateral estoppel, release, waiver, good-faith settlement, judgment bar or reduction, full faith and credit, or any other theory of claim preclusion, issue preclusion, or similar defense or counterclaim.

## Dismissal of Litigation

31.    This Litigation, including but not limited to all individual and Class claims resolved in it, is dismissed on the merits and with prejudice against Defendants, including but not limited to the Class Representatives, the Named Plaintiffs and all other members of the Classes (whether or not they filed claims), without fees or costs to any party or non-party except as otherwise provided in this Order and the Final Judgment.

## Rule 58 Separate Judgment

32.    The Court will separately enter the accompanying Final Judgment, which is intended to be substantially and materially consistent with this Final Approval Order and the terms of the Settlement Agreement, and in accordance with Fed. R. Civ. P. 58.

IT IS SO ORDERED, this _____ day of _____, 2022.


_____
WAVERLY D. CRENSHAW, JR.
CHIEF UNITED STATES DISTRICT JUDGE

18

# Exhibit 3

# to Settlement Agreement

# DETENTION CLAIM FORM

## Required Claimant Information:

_____ _____
First Name          Last Name

_____
Address

_____, _____ _____
City                State  Zip

(____) _____
Area Code Evening Telephone number

Other names used: _____

Date of Birth: _____/_____/_____
                Month    Day   Year

Social Security Number: _____

Email address: _____

(____) _____
Area Code Daytime Telephone number

## Parent/Guardian Information, required to be completed if Claimant is minor or under other disability:

_____ _____
First Name          Last Name

_____
Address

_____, _____ _____
City                State  Zip

(____) _____
Area Code Evening Telephone number

Date of Birth: _____/_____/_____
                Month    Day   Year

Social Security Number: _____

Email address: _____

(____) _____
Area Code Daytime Telephone number

Relationship to Claimant: _____

**This form is complex, and it is expected that you may need assistance in completing it. THE ATTORNEYS REPRESENTING THE CLASS ARE COMMITTED TO HELPING YOU, FREE OF CHARGE, TO MAKE YOUR CLAIM. If you need help and think you have a claim, send an email to info@brazilclark.com with (1) your full name, (2) date of birth, and (3) a phone number. A VALID AND APPROVED DETENTION CLAIM MAY BE ELIGIBLE FOR A SUBSTANTIAL PAYMENT. TIME IS OF THE ESSENCE AND REQUESTS FOR ASSISTANCE MADE NEAR THE END OF THE CLAIMS PERIOD MAY GO UNANSWERED.**

*\*see pages 3-5 for additional information\**

I wish to make a claim against Rutherford County, Tennessee (Rutherford County) because I was admitted to and confined in secure detention at the Rutherford County Juvenile Detention Center (RCJDC) prior to a Juvenile Court detention hearing, on or about _____ __, 20____ under the circumstances described below.

I was admitted to and confined in secure detention at the RCJDC prior to a Juvenile Court detention hearing, on a juvenile delinquent or unruly charge, and hereby state that (a) I was born on or after October 14, 1997, or (b) my detention occurred at any time from and after October 14, 2015, and (c) [answer "yes" or "no" to each of the following questions pertaining to the circumstances at the time of your admission to each such secure detention]

(1) Were you charged with any one or more of the following delinquent offenses:

a. Aggravated Assault, T.C.A. § 39-13-102;
b. Vehicular Assault, T.C.A. § 39-13-106;
c. Aggravated Vehicular Assault, T.C.A. § 39-13-115;
d. Criminal homicide, T.C.A. § 39-13-201;
e. First Degree murder, T.C.A. § 39-13-202;
f. Second Degree murder, T.C.A. § 39-13-210;
g. Voluntary manslaughter, T.C.A. § 39-13-211;
h. Criminally negligent homicide, T.C.A. § 39-13-212;
i. Vehicular homicide, T.C.A. § 39-13-213;
j. Reckless homicide, T.C.A. § 39-13-215;
k. Assisted suicide, T.C.A. § 39-13-216;
l. Aggravated vehicular homicide, T.C.A. § 39-13-218;
m. Robbery, T.C.A. § 39-13-401;
n. Aggravated robbery, T.C.A. § 39-13-402;
o. Especially aggravated robbery, T.C.A. § 39-13-403;
p. Aggravated rape, T.C.A. § 39-13-502;
q. Rape, T.C.A. § 39-13-503;
r. Aggravated sexual battery, T.C.A. § 39-13-504;
s. Sexual battery, T.C.A. § 39-13-505;
t. Aggravated Arson, T.C.A. § 39-14-302;
u. Prohibited weapons, T.C.A. § 39-17-1302;
v. Unlawful carrying or possession of weapon, T.C.A. § 39-17-1307;
w. Carrying weapons on school property, T.C.A. § 39-17-1309;
x. Carrying weapons on public parks, playgrounds, civic centers, and other public recreational buildings and grounds, T.C.A. § 39-17-1311;
y. Handgun possession prohibited, T.C.A. § 39-17-1319; or
z. Possession of handgun while under the influence, T.C.A. § 39-17-1321.

☐ Yes
☐ No

(2) Were you charged with a delinquent offense categorized as a felony under Tennessee law, a probation violation, or an aftercare violation while you:

a. Were already on probation; or
b. Were already awaiting court action on a previously alleged delinquent offense; or

**This form is complex, and it is expected that you may need assistance in completing it. THE ATTORNEYS REPRESENTING THE CLASS ARE COMMITTED TO HELPING YOU, FREE OF CHARGE, TO MAKE YOUR CLAIM. If you need help and think you have a claim, send an email to info@brazilclark.com with (1) your full name, (2) date of birth, and (3) a phone number. A VALID AND APPROVED DETENTION CLAIM MAY BE ELIGIBLE FOR A SUBSTANTIAL PAYMENT. TIME IS OF THE ESSENCE AND REQUESTS FOR ASSISTANCE MADE NEAR THE END OF THE CLAIMS PERIOD MAY GO UNANSWERED.**
*see pages 3-5 for additional information*

    c.  Were alleged to have escaped or absconded from a juvenile facility, institution, or other court-ordered placement; or

    d.  Had, within the previous twelve months, failed to appear at any juvenile court hearing or been charged with committing a violent felony delinquent offense involving a risk of serious bodily injury or death; or

    e.  Had, within the previous twelve months, been adjudicated delinquent of a felony delinquent offense.

    ☐  Yes
    ☐  No

(3)  Was a court order issued within 24 hours of the detention, excluding nonjudicial days, documenting "special circumstances" that justified your secure detention based on a risk of immediate harm to you due to issues of dependency, neglect, or abuse if you were not securely detained?

    ☐  Yes
    ☐  No

(4)  Were you alleged to be an escapee from a secure juvenile facility or institution?

    ☐  Yes
    ☐  No

(5)  Were you wanted in another jurisdiction for an offense that, if committed by an adult, would be a felony in that jurisdiction?

    ☐  Yes
    ☐  No

(6)  Were you charged with violating a "valid court order" that was already in effect prior to the instant charge giving rise to the detention, or were you a runaway from another jurisdiction?

    ☐  Yes
    ☐  No

I understand that my entitlement to compensation, if any, will be determined in accordance with the procedures of this class action settlement as more fully explained in the Class Notice mailed to class members and in documents posted on the Claim Administrator's website.

You must submit this completed Claim Form on the Claim Administrator's website (www.rutherfordjuvenilesettlement.com) **NO LATER THAN** _____ **p.m.** _____ ___**, 2021** or mail this Claim Form to the Claim Administrator at *Geerts v Rutherford County*; Claims Administrator, Post Office Box 10584, Tallahassee, FL 32302-2584, with a postmark **NO LATER THAN** _____ ___**, 2021 in** order to be eligible to receive money from the class fund.

If your Claim Form is not submitted or mailed by the deadlines above, you may still be considered a member of the class and be bound by the settlement, but in no event will you receive any money.

      **This form is complex, and it is expected that you may need assistance in completing it. THE ATTORNEYS REPRESENTING THE CLASS ARE COMMITTED TO HELPING YOU, FREE OF CHARGE, TO MAKE YOUR CLAIM. If you need help and think you have a claim, send an email to info@brazilclark.com with (1) your full name, (2) date of birth, and (3) a phone number.**
**A VALID AND APPROVED DETENTION CLAIM MAY BE ELIGIBLE FOR A SUBSTANTIAL PAYMENT.**
**TIME IS OF THE ESSENCE AND REQUESTS FOR ASSISTANCE MADE NEAR THE END OF THE CLAIMS PERIOD MAY GO UNANSWERED.**
***see pages 3-5 for additional information***

## YES, I WISH TO MAKE A CLAIM.

By signing this form below, I am confirming that the above information is correct to the best of my knowledge, information, and belief and that:

- I am the person identified above and am over the age of 18 **OR** I am the legal guardian of the person identified above and that person is currently less than 18 years of age.
- I have not received any money or compensation for any of the claims involved in this case.
- I will abide by, and be limited by, the Class Action Settlement as approved by the Court.
- I will keep the Claims Administrator informed of my whereabouts at all times.

**I declare under penalty of perjury that the information given above is true and correct to the best of my knowledge, information, and belief.**

Date: _____          Signature of Claimant: _____

Date: _____          Signature of Parent/Guardian, if applicable: _____

---

IF YOU WOULD LIKE HELP WITH THIS FORM:

You can contact the attorneys for the settlement classes at www.brazilclark.com by sending an email to info@brazilclark.com and providing your (1) full name, (2) date of birth, and (3) a phone number where you can be reached.  FAILURE TO PROVIDE THIS INFORMATION, AND ONLY THIS INFORMATION, may delay or prevent a response to your inquiry.   If you would prefer to call, you may call (615) 730-8619 and ask to speak with Kyle Mothershead or Frank Brazil. The attorneys will help you, FREE OF CHARGE, to determine the date you were detained and whether you appear to meet the criteria for a valid claim for financial benefits.  If the attorneys determine that your claim appears to be valid, they will also help you to complete this claim form.

Also, if you were admitted to and confined in secure detention at the Rutherford County Juvenile Detention Center on more than one occasion you may have MORE THAN ONE valid claim.  **A separate claim form is required to be submitted by you for each detention in order to receive money for each valid claim**.  The attorneys at www.brazilclark.com can help you determine whether you have more than one claim, provide all of the information you need to complete the claim form for each claim, and assist you in completing those forms.  THIS ASSISTANCE IS AT NO CHARGE TO YOU.

While the attorneys will do their utmost to help you quickly, if you wait until the end of the claims period to contact them it may be too late for them to locate the information necessary to complete your form(s) and help you submit your claim(s) by the deadline.  IT IS YOUR RESPONSIBILTY TO SUBMIT A COMPLETE CLAIM FORM WITH ALL REQUIRED INFORMATION FOR EACH CLAIM IF YOU WANT TO GET PAID FOR THOSE CLAIMS AS SET FORTH IN THE CLASS NOTICE.

INDEPENDENTLY VERIFIABLE RECORDS WILL BE USED TO CONFIRM WHETHER YOU HAVE A VALID CLAIM, AND THIS SAME DOCUMENTATION WILL BE USED TO ENSURE THAT INVALID, FALSE OR FRAUDULENT CLAIMS WILL NOT BE APPROVED.

**This form is complex, and it is expected that you may need assistance in completing it.  THE ATTORNEYS REPRESENTING THE CLASS ARE COMMITTED TO HELPING YOU, FREE OF CHARGE, TO MAKE YOUR CLAIM.  If you need help and think you have a claim, send an email to info@brazilclark.com  with (1) your full name, (2) date of birth, and (3) a phone number.
A VALID AND APPROVED DETENTION CLAIM MAY BE ELIGIBLE FOR A SUBSTANTIAL PAYMENT.
TIME IS OF THE ESSENCE AND REQUESTS FOR ASSISTANCE MADE NEAR THE END OF THE CLAIMS PERIOD MAY GO UNANSWERED.**
*see pages 3-5 for additional information*

*IF YOU WERE **NOT** DETAINED AS A MINOR IN THE RUTHERFORD COUNTY JUVENILE DETENTION CENTER AS DESCRIBED IN THE FIRST TWO PARAGRAPHS OF THIS FORM, YOU DEFINITELY **DO NOT** HAVE A VALID **DETENTION CLAIM**.  HOWEVER, IF YOU WERE ARRESTED AS A JUVENILE BY THE RUTHERFORD COUNTY SHERIFF'S OFFICE THEN YOU MAY HAVE A VALID ARREST CLAIM, DEPENDING ON THE CIRCUMSTANCES OF YOUR CASE.  IF YOU BELIEVE YOU MAY HAVE AN ARREST CLAIM, COMPLETE AND SUBMIT THE FORM TITLED "ARREST CLASS CLAIM FORM."*

**This form is complex, and it is expected that you may need assistance in completing it.  THE ATTORNEYS REPRESENTING THE CLASS ARE COMMITTED TO HELPING YOU, FREE OF CHARGE, TO MAKE YOUR CLAIM.  If you need help and think you have a claim, send an email to info@brazilclark.com  with (1) your full name, (2) date of birth, and (3) a phone number.**
**A VALID AND APPROVED DETENTION CLAIM MAY BE ELIGIBLE FOR A SUBSTANTIAL PAYMENT.**
**TIME IS OF THE ESSENCE AND REQUESTS FOR ASSISTANCE MADE NEAR THE END OF THE CLAIMS PERIOD MAY GO UNANSWERED.**
***see pages 3-5 for additional information****

# Exhibit 4

# to Settlement Agreement

**NOTICE OF CLASS ACTION, CLASS SETTLEMENT AND HEARING**

RE: *K.W., et al. v. Rutherford County*, Case No. 3:17-cv-1014, United States District Court, Middle District of Tennessee.

Currently a class action lawsuit is pending in the United States District Court, Middle District of Tennessee. If the proposed Settlement receives final court approval, the Court will certify the case as a class action, and APPROVED CLASS MEMBERS who have submitted timely, valid, approved claims will receive money. **It is estimated that Approved Claims by members of the Arrest Class may receive approximately $1000 per valid Arrest claim timely submitted, and that Approved Claims by members of the Detention Class may receive approximately $4800 per valid Detention claim timely submitted.**

If you are the addressee of this Notice, it has been determined that you may have a valid claim or claims for financial compensation as a member of either or both of the classes. You are eligible for free legal assistance from class counsel in the evaluation and submission of your claim(s) for compensation.

**Eligibility for Class Membership is described below. Review this information and, if you need assistance, CONTACT CLASS COUNSEL AS SOON AS POSSIBLE FOR FREE HELP IN COMPLETING AND SUBMITTING YOUR CLAIM FORMS. Time is of the essence and claims that are filed too late will not receive compensation even if otherwise eligible.**

**If on or before [date of preliminary approval order] you were taken into custody by a Rutherford County Sheriff's deputy and transported to the Rutherford County Juvenile Detention Center (RCJDC) for either a juvenile unruly or a juvenile misdemeanor delinquent offense, and (a) you were born on or after July 26, 1998, or (B) such custody occurred on or after July 26, 2016, and if certain other circumstances were present, YOU MAY BE A MEMBER OF THE ARREST CLASS. NOTE THAT YOU DO NOT NEED TO HAVE BEEN DETAINED AT RCJDC TO BE A MEMBER OF THE ARREST CLASS, IF THE OTHER CRITERIA ARE MET.**

**If on or before [date of preliminary approval order] you were detained at RCJDC on a juvenile delinquent or unruly charge, and (a) were born on or after October 14, 1997, or (b) such secure detention occurred at any time from and after October 14, 2015, and (c) if certain other circumstances were present, YOU MAY BE A MEMBER OF THE DETENTION CLASS. NOTE THAT YOU DO NOT NEED TO HAVE BEEN ARRESTED BY THE RUTHERFORD COUNTY SHERIFF'S OFFICE TO BE A MEMBER OF THE DETENTION CLASS.**

**IF YOU WERE ARRESTED AND/OR DETAINED ON MORE THAN ONE OCCASION THAT MEETS THE CRITERIA FOR CLASS MEMBERSHIP, YOU MAY BE ELIGIBLE FOR COMPENSATION FOR EACH SUCH ARREST AND/OR DETENTION EVENT IF YOU SUBMIT A TIMELY VALID CLAIM FORM FOR EACH SUCH EVENT.**

1

This matter arises from consolidated proposed class action lawsuits, the first of which was filed October 14, 2016. Plaintiffs have alleged that Rutherford County maintained (1) a de facto policy wrongfully requiring certain juveniles charged with any delinquent or unruly offense be taken into custody and delivered to the RCJDC in violation of state law ("False Arrest Claims") and (2) a de facto policy of placing juveniles in secure detention at the RCJDC in violation of state law restrictions permitting secure detention of juveniles only under the circumstances set forth in Tenn. Code Ann. § 37-1-114(c) ("Wrongful Detention Claims"). Rutherford County disputes these claims and denies any wrongdoing. To resolve this matter, Plaintiffs and Rutherford County have entered into a preliminary Settlement that does not contain any finding of wrongdoing by Rutherford County but does provide for possible payment to CLASS MEMBERS.

To be eligible to receive any money in this Settlement, **you must fill out and mail a Claim Form or submit a Claim Form online** for each arrest and/or detention that you seek compensation for, and the Claim Form must be approved in accordance with the Settlement procedure. You must submit the completed Claim Form(s) on the Settlement Administrator's website (www.rutherfordjuvenilesettlement.com) **NO LATER THAN 11:59 p.m. [insert date 130 days after Preliminary Order Date]** or mail this Claim Form to the Settlement Administrator at *Geerts v. Rutherford County*; Settlement Administrator, P.O. Box 10584, Tallahassee, FL 32302-2584, with a postmark **NO LATER THAN [insert date 130 days after Preliminary Order Date]** in order to be eligible to receive money from the class fund. If your Claim Form(s) is (are) not submitted or mailed by the deadlines above, you will not be considered a member of the classes even if you wish to be, but you will be bound by the settlement and will not receive any money.

Below are questions and answers designed to explain information about this lawsuit, including how to proceed to file a claim or otherwise participate in the Settlement process.

## 1. What is the Class Action lawsuit about?

The lawsuit challenged policies and practices of Rutherford County involving certain juveniles who were taken into custody and/or placed in secure detention, which Plaintiffs alleged were in violation of state and federal law.

## 2. Who is a Member of the Arrest Class and the Detention Class?

There are TWO separate classes in this lawsuit, the "Arrest Class" and the "Detention Class." You may receive compensation by filing a valid, timely claim establishing your membership in the Arrest Class or the Detention Class. If you believe that you are a member of both the Arrest and Detention Classes, you may seek compensation for both by filing separate Arrest and Detention Claims. If you believe that you are entitled to compensation under this agreement for multiple instances of arrest and/or detention, you may seek compensation for all such instances by filing a separate claim for each arrest/detention event. If you do not file a timely, proper separate claim for each separate arrest and/or detention event for which you wish to receive compensation, you will not receive compensation for those events that you failed to file claims on. Your potential compensation depends on the number of timely valid claims you file, the type of claims they are (Arrest or Detention), and the number of other valid claimants who file claims.

a. Arrest Class

You are a member of the Arrest Class if you were taken into custody by a Rutherford County Sheriff's deputy[1] and transported to the RCJDC for either a juvenile unruly or a juvenile misdemeanor delinquent offense, and (a) you were born on or after on or after July 26, 1998, or such custody occurred on or after July 26, 2016, and (b) if certain other circumstances[2] were present.

b. Detention Class

You are a member of the Detention Class if you were detained at the RCJDC prior to a Juvenile Court detention hearing, on a juvenile delinquent or unruly charge, and (a) were born on or after October 14, 1997, or such secure detention occurred at any time from and after October 14, 2015 until [date of Preliminary Approval Order], and (b) if certain other circumstances[3] were present.

---

[1] If you were arrested by an employee of another law enforcement agency other than the Rutherford County Sheriff's Office, that arrest event does not entitle you to compensation under this agreement. This does NOT apply to Illegal Detention Claims.

[2] Specifically, all of the following: (1) you were not taken into custody pursuant to an order finding that a summons would be ineffective due to the particular circumstances; (2) you were not charged with a felony; (3) you were not alleged to have committed a public offense or a threatened breach of the peace in the presence of law enforcement; (4) you were not taken into custody as a neglected, dependent or abused child; (5) you were not an allege runaway from parents, guardian, or other custodian; (6) you were not charged with stalking; (7) you had not attempted to commit suicide; (8) you were not charged with committing a traffic offense involving injury or property damage of at least $1,000; (9) you were not charged with driving under the influence or similar offense; (10) you were not charged with domestic abuse; (11) you were not charged (A) as a driver in a vehicle accident resulting in serious bodily injury or death, or (B) with failure to have a valid driver license at the time of the accident, or (C) failure to have evidence of financial responsibility at the time of the accident; (12) you were not charged with violating the terms of probation, home placement supervision, or diversion; (13) you were not charged with violating the terms of a valid court order; (14) you were not alleged to be an escapee from a secure juvenile facility or institution; (15) you were not wanted in another jurisdiction for a felony offense; and, (16) you were not alleged to have committed a public offense or threatened breach of the peace in the presence of law enforcement (the terms "public offense" and "breach of peace" in the Agreement carry the same meaning as the terms have in Tennessee Code Annotated § 40-7-103).

[3] Specifically, all of the following: (1) you were not charged with a crime against a person resulting in and having as one of its statutory elements the serious injury or death of the victim or involving the likelihood of serious injury or death to such victim, or the unlawful possession of a handgun or carrying of a weapon, as prohibited by T.C.A., title 39, chapter 17, part 13, and in particular not any one or more of the following delinquent offenses (paragraph (1) shall be interpreted and applied consistently with Tennessee Code Annotated §§ 37-1-114(c)(1)(A) and (B): (a) Aggravated Assault, T.C.A. § 39-13-102; (b) Vehicular Assault, T.C.A. § 39-13-106; (c) Aggravated Vehicular Assault, T.C.A. § 39-13-115; (d) Criminal homicide, T.C.A. § 39-13-201; (e) First Degree murder, T.C.A. § 39-13-202; (f) Second Degree murder, T.C.A. § 39-13-210; (g) Voluntary manslaughter, T.C.A. § 39-13-211; (h) Criminally negligent homicide, T.C.A. § 39-13-212; (i) Vehicular homicide, T.C.A. § 39-13-213; (j) Reckless homicide, T.C.A. § 39-13-215; (k) Assisted suicide, T.C.A. § 39-13-216; (l) Aggravated vehicular homicide, T.C.A. § 39-13-218; (m) Robbery, T.C.A. § 39-13-401; (n) Aggravated robbery, T.C.A. § 39-13-402; (o) Especially aggravated robbery, T.C.A. § 39-13-403; (p) Aggravated rape, T.C.A. § 39-13-502; (q) Rape, T.C.A. § 39-13-503; (r) Aggravated sexual battery, T.C.A. § 39-13-504; (s) Sexual battery, T.C.A. § 39-13-505; (t) Aggravated Arson, T.C.A. § 39-14-302; (u) Prohibited weapons, T.C.A. § 39-17-1302; (v) Unlawful carrying or possession of weapon, T.C.A. § 39-17-1307; (w) Carrying weapons on school property, T.C.A. § 39-17-1309; (x) Carrying weapons on public parks, playgrounds, civic centers, and other public recreational buildings and grounds, T.C.A. § 39-17-1311; (y) Handgun possession prohibited, T.C.A. § 39-17-1319; or, (z) Possession of handgun while under the influence, T.C.A. § 39-17-1321; (2) you were not charged with a felony delinquent offense, probation violation, or aftercare violation while you: (a) were already on probation or (b) were already awaiting court action on a previously alleged delinquent offense or (c) were alleged to have escaped or absconded from a juvenile facility, institution, or other court-ordered placement or (d) had, within the previous

3

**3. What is the purpose of this Notice?**

You have a right to know about a proposed Settlement of this class action lawsuit and about all your options before the Court decides whether to give final approval to the Settlement. Your rights may be affected by this lawsuit. This information is being sent to everyone who has been determined to be a possible member of the Arrest Class, the Detention Class, or both, based upon the records of the RCJDC, the Rutherford County Juvenile Court (RCJC) and the Rutherford County Sheriff's Office (RCSO), and is otherwise being publicized to reach class members. This Notice explains the lawsuit, the Settlement, your legal rights, what benefits are available, who is eligible and how to file a claim. The Court in charge of this case is the United States District Court for the Middle District of Tennessee, located in Nashville, Tennessee. The case is known as *K.W. et al. v. Rutherford County, Tenn.*, Case No. 3:17-cv-01014. The people who brought the case are called Plaintiffs, and Rutherford County is the Defendant. The Judge is The Honorable Waverly D. Crenshaw, Jr.

**4. Why is this a Class Action?**

In a class action, one or more persons (the Class Representative(s)) sue on behalf of a group of people who have similar claims – the Class Members. One court then resolves the issues for all Class Members, except for those who exclude themselves.

**5. Why is there a Settlement?**

These lawsuits have been pending for more than four years. After the parties conducted extensive discovery, the Defendant filed motions for summary judgment seeking dismissal of all claims, and the Plaintiffs opposed those motions. The Court has not ruled on those motions. Pending a ruling of the Court on those motions, the parties engaged in mediation over several months. Instead of continuing the contentious and costly litigation, the parties arrived at a mutually agreeable Settlement providing for substantial payments to Class Members and certain injunctive relief. That way, both sides can avoid the risks and costs of further litigation regarding the injunctive relief and damages to which class members may be entitled, or an appeal from any such decisions by a court; the case can be resolved immediately; and the benefits of the Settlement can be made immediately available to the Class Members. The Class Representatives and their attorneys think that the proposed Settlement is fair to the Class Members and think that the terms of the Settlement are a fair, reasonable, and adequate resolution of this matter.

**6. Are there lawyers representing you?**

The Court has approved lawyers (called "Class Counsel") to collectively represent you. These are the lawyers who have been handling the lawsuit for the past four years. You will not be asked to pay your own personal money for the services these attorneys and their staff have provided you in litigating this case and negotiating this Settlement. Instead, the lawyers will be paid separately by

---

twelve months, failed to appear at any juvenile court hearing or been charged with committing a violent felony delinquent offense involving a risk of serious bodily injury or death or (e) had, within the previous twelve months, been adjudicated delinquent of a felony delinquent offense; (3) no court order was issued within 24 hours of the detention, excluding nonjudicial days, documenting "special circumstances" that justified your secure detention based on a risk of immediate harm to you due to issues of dependency, neglect, or abuse if you were not securely detained; (4) you were not alleged to be an escapee from a secure juvenile facility or institution; (5) you were not wanted in another jurisdiction for an offense that, if committed by an adult, would be a felony in that jurisdiction; and (6) you were not charged with violating a "valid court order" that was already in effect prior to the instant charge giving rise to the detention, and were not a runaway from another jurisdiction.

4

the Defendant, after approval by the Court, as described further below. Only Class Counsel may act on behalf of the class. However, that does not prevent you from hiring your own lawyer to advise you personally about your rights, options or obligations as a Class Member in this lawsuit. If you want to be represented by your own lawyer, you may hire one at your own expense.

**If you think you have a claim, send an email to info@brazilclark.com with (1) your full name, (2) date of birth, and (3) a phone number where you may be contacted. If you prefer to call, you may call (615) 730-8619 and ask to speak with Kyle Mothershead or Frank Brazil. Class Counsel will help you – FREE OF CHARGE – to understand your rights and submit your Claim(s), if eligible. _Do not delay, as inquiries made near the end of the claims period may not be answered in time to comply with the deadline._**

**7. What does the Settlement provide?**
The benefits under the Settlement fall into four primary categories --- payment of Approved Claims to Arrest Class Members, payment of Approved Claims of Detention Class Members, Injunctive Relief and payment of fees and expense of Class Counsel, summarized as follows.

(a) <u>**Payment for Approved Claims of Arrest Class Members**</u>. To be entitled to receive a distribution as an Arrest Class Member you must submit a timely claim that is finally determined to be an Approved False Arrest Claim in accordance with the Settlement terms. **As this is a claims-made Settlement, the amount paid out for each approved claim will vary depending upon the actual number of claims filed and determined to be Approved False Arrest Claims. Based on preliminary estimates, payment for an approved claim could be one thousand thirty-three and 33/100 dollars (<u>$1,033.33), but again the actual amount could be higher or lower depending on the circumstances</u>.**

(b) <u>**Payment for Approved Claims of Detention Class Members**</u>. To be entitled to receive a distribution as a Detention Class Member you must submit a timely claim that is finally determined to be an Approved Illegal Detention Claim in accordance with the Settlement terms. **As this is a claims-made Settlement, the amount paid out for each approved claim will vary depending upon the actual number of claims filed and determined to be Approved Illegal Detention Claims. Based on preliminary estimates, payment for an approved claim could be four thousand eight hundred twenty-two and 22/100 dollars (<u>$4,822.22), but again the actual amount could be higher or lower depending on the circumstances</u>.**

(c) <u>Injunctive Relief</u>. The Settlement provides that the Court will issue a permanent injunction providing that Rutherford County is permanently enjoined from using the Filter System to determine whether juveniles arrested shall be detained in the RCJDC pending a detention hearing and is further enjoined to follow the requirements set forth in T.C.A. §37-1-114 (c), as long as it is in place and remains applicable, to guide its detention decisions at RCJDC prior to the detention hearing. The injunction doesn't apply to detention decisions made by other jurisdictions.

(d) <u>Plaintiffs Attorneys' Fees and Litigation Costs</u>. Class Counsel will ask the Court to award them up to $2,750,000.00 in attorneys' fees and $110,000.00 in litigation costs, all to be paid by Defendant. Defendant has reserved the right to object to the fees. These fees and costs must ultimately be approved by the Court after satisfying itself that they are fair and reasonable.

5

The full description of the benefits is contained in the parties' Settlement Agreement, a copy of which is available on the settlement website www.rutherfordjuvenilesettlement.com.

**8. Will I receive anything from the Settlement?**

For each completed Arrest and/or Detention Claim Form that you file on or before the Claims Deadline, if your claim(s) is(are) determined to be valid, you will receive compensation for each approved claim as described in ¶7(a) or (b) above and in the parties' Settlement Agreement, a copy of which is available on the settlement website www.rutherfordjuvenilesettlement.com. A full description of the process to determine whether a claim is an Approved False Arrest Claim or an Approved Illegal Detention Claim is contained in the parties' Settlement Agreement.

**9. What do I do to get money?**

If you wish to receive money from the Settlement, you must complete and timely submit the accompanying, applicable Arrest or Detention Claim Form for the arrest/detention event that you seek compensation on. To receive compensation for multiple Arrest/Detention events, you must timely submit a complete claim for each such event. **All Claim Forms must be completed and postmarked (or received by the Settlement Administrator) no later than _____ 2021,** but in order not to miss out on this opportunity, you should complete and submit you Claim Form as soon as possible. **If you do not timely and properly submit your Claim Form(s), you will not receive any money** from the Settlement, even if you would otherwise qualify. If you need a copy of a Claim Form, please call the Settlement Administrator (toll free) at 833-594-1996, or write to the Settlement Administrator, at *Geerts v. Rutherford County*; Settlement Administrator, P.O. Box 10584, Tallahassee, FL 32302-2584, or download and submit the Claim Form on the Internet at www.rutherfordjuvenilesettlement.com.

**10. What if I still don't know if I am a Class Member?**

If you are not sure whether you would be included in the Class, you may contact the Class Counsel for free assistance at www.brazilclark.com and info@brazilclark.com Class Counsel will assist you, free of charge, in determining whether you may have a valid claim or claims for the Arrest Class, the Detention Class, or both.

**11. How much will the Plaintiffs' lawyers be paid?**

The Court will be asked to award Class Counsel up to $2,750,000.00 in statutory attorneys' fees and $110,000.00 in litigation costs. The Court can award less than that amount, but not more. You will not be asked personally to pay any attorneys' fees to Class Counsel. Only if you hire your own lawyer to represent you personally would you have to pay an attorney any fees.

**12. Can I exclude myself from the Settlement?**

If you do not want to be a member of the Class, or if you want to be able to file your own lawsuit or be part of a different lawsuit against the Defendant raising the claims involved in this lawsuit, then you must take steps to get out of the Class. This is called "excluding yourself" from, and sometimes is referred to as "opting out" of, the class.

**13. What do I do to exclude myself from the lawsuit?**

To exclude yourself, you must send a letter by First-Class mail clearly stating that you want to be excluded from *K.W., et al. v. Rutherford County.* Be sure to include your name, address, telephone

6

number and signature. The name and address of your attorney is not sufficient. **You must mail your Exclusion Request, postmarked no later than _____ 2021,** to:

*Geerts v. Rutherford County*, Settlement Administrator
P.O. Box 10584
Tallahassee, FL 32302-2584

You cannot exclude yourself on the phone or by email. If you exclude yourself, you will not be entitled to get any money from the Settlement, and you cannot object to the Settlement. Nor will you be legally bound by anything that happens in this lawsuit.

Unless you exclude yourself from the class, you remain in the class and give up all of your rights against the Defendant for the conduct alleged in this complaint, except those available to you under this Settlement. That means that, if you don't exclude yourself and also don't file a claim, you will receive no money but will still lose your rights against the Defendants. **So be sure to file the Claim Form unless you are going to exclude yourself. (If you do exclude yourself, and you want to pursue other damages for the conduct alleged in the complaint, you will need to bring your own legal complaint against the Defendant within the time prescribed under the relevant statutes of limitations).**

### 14. What is the Release of claims?

As part of the Settlement, you release the claims covered by this lawsuit in exchange for the money you will be eligible to receive if you are a member of and do not exclude yourself from the class. The Proposed Final Order of Approval and Settlement (which you may view on the website for this lawsuit at www.rutherfordjuvenilesettlement.com ) describes the legal claims against the Defendant you will give up by staying in the class (that is, if you do not exclude yourself as described in the question above entitled "What do I do to exclude myself from the lawsuit?"). The Released Claims include all claims, demands, causes of action, whether class, individual or otherwise in nature, damages whenever incurred, liabilities of any nature whatsoever, including costs, expenses, penalties and attorneys' fees, that were or could have been asserted in the complaint based on the facts alleged in the Complaint, during the time covered by this Settlement. These Released Claims include any other related complaints, grievances, and/or claims, whether judicial or administrative, and whether actually filed or available. Released Claims do not include any other claim(s) that a Plaintiff or member of the classes may have against Defendant for conduct not covered by this Settlement.

### 15. If I do not like the Settlement or object to the attorneys' fees, how do I tell the Court?

If you are and choose to remain a Class Member, you can object to the Settlement if you do not like any part of it, or you may object to the request for attorneys' fees. You must give the reason why you think that the Court should not approve the Settlement or the requested attorneys' fees (i.e., a mere statement that "I object" will not be sufficient). Do not contact the Court orally to object. Rather, you must send a written statement with the case name and number (*K.W., et al. v. Rutherford County*, Case No. 3:17-cv-1014) at the top of the page. In addition, provide your name, your address (just giving the address of an attorney who represents you is not sufficient), your telephone number, your signature and the reason why you object. If you are represented by a lawyer, you should also give the name, address and telephone number of that lawyer. **You must**

7

**mail your objections and any supporting papers by First-Class mail, postmarked no later than___, 2021,** to the Court and counsel as follows:

| | | |
|---|---|---|
| Clerk of the District Court United States District Court Middle District of Tennessee U.S. Courthouse Estes Kefauver Federal Bldg & Courthouse 801 Broadway, Room 800 Nashville, TN 37203 | Mark J. Downton Frank Brazil Kyle F. Mothershead Brazil Clark, PLLC 2901 Dobbs Ave Nashville, TN 37211 | Jonathan P. Lakey Walk Cook & Lakey, PLC 431 South Main Street, Suite 300 Memphis, TN 38103<br><br>D. Randall Mantooth Hudson, Reed & Christiansen, PLLC 16 Public Square North P.O. Box 884 Murfreesboro, TN 37133 |

If you are not filing a pre-prepared claim form, you should provide as much identifying information (such as Driver's License, address, date of birth and last four digits of your Social Security Number) with the copies sent to the counsel listed above, so that your file can be located. To protect your privacy, do not send that information to the Court, as what you file with the Court is a public document. Submitting an objection will not extend the time within which a Class Member may request exclusion from this Settlement. (If you file an exclusion, you are no longer a member of the Class and any objection will not be considered.)

A full set of the settlement documents, including the Settlement Agreement, a Claim Form, the proposed Preliminary Order Approving Settlement Agreement, the proposed Final Order Approving the Settlement Agreement, and the Motion For Award of Attorneys' Fees and Costs is available (or will be if the motion for attorneys' fees has not yet been filed) on the case website, www.rutherfordjuvenilesettlement.com .

### 16. What is the difference between objecting and excluding?
Objecting is simply telling the Court that you do not like something about the Settlement. You can object only if you are a Class Member and stay in the class. If you object and the Court rejects your objection, you remain a Class Member and will be bound by any outcome of the case and entitled to payment under the settlement if you make and have an Approved Claim. Excluding yourself is telling the Court that you do not want to be part of the class. If you exclude yourself, you have no basis to object because the case no longer affects you.

### 17. When and where will the Court decide whether to approve the Settlement and Attorneys' fees?
The Court has scheduled the Fairness Hearing for___, 2021, at_____in the United States District Courthouse for the Middle District of Tennessee, 801 Broadway, Room _____, Nashville, TN 37203. At this Hearing, Judge Crenshaw or another federal district judge, will consider whether the Settlement is fair, reasonable and adequate, and will determine the amount of attorneys' fees and costs to be awarded. If there are any objections, the Court will consider and rule on them. We do not know how long this process will take. We do not know if the Hearing will be continued.

There will not be a new notice if it is. You may speak at the Hearing, but only if you have submitted your comments or objections as provided in the question above entitled "If I do not like the Settlement or object to the attorneys' fees, how do I tell the Court?" (See question no. 15).

**18. Do I have to come to the Hearing?**
No. You may, but need not, attend the Hearing. Class Counsel will answer any questions the Court may have. However, you may come if you choose, at your own expense. If you sent a written objection, you may, but do not have to, come to Court to talk about it. As long as you properly submitted your written objection, the Court will consider it. You may also pay your own lawyer to attend, but that also is not necessary.

**19. May I speak at the Hearing?**
You will not be heard unless you have submitted your comments or objections as provided in the question above entitled "If I do not like the Settlement or object to the attorneys' fees, how do I tell the Court?" (See question no. 15) and have stated in your submission that you wish to be heard. You cannot speak at the Hearing if you exclude yourself. If you have submitted an objection, the Court will decide whether to hear from you verbally as well.

**20. What happens if I do nothing at all?**
If you do nothing, your rights will be affected. You will be bound by the terms of the Settlement and you will be agreeing to a release of the claims that are contained in the Settlement. However, if **you do not file a claim, you will not be entitled to any money from the Settlement even though you will be bound by it.**

**21. When will I receive money from the Settlement?**
No money will be paid until 1) after the Settlement Funds are deposited with the Settlement Administrator, which will only occur 30 days after the Settlement is approved and all possibilities of appeal are completed, and 2) after the date set by the Court as the last day to mail or file a claim. After that, it will take at least two months to process all the claims, calculate the amount due and send the money to the Class Members. If you file a claim and do not receive money within six months after__, 2021, which is the last day to mail or file a claim, check the website for this case about when payment mailings are expected, or contact the Settlement Administrator by either calling (toll free) 1-833-594-1996, or writing to: *Geerts v. Rutherford County*, Settlement Administrator, P.O. Box 10584, Tallahassee, FL 32302-2584.

**22. What happens if there is not a Final Settlement?**
Under certain circumstances, it is possible the settlement might not go through (for example, if the Court for some reason does not approve the settlement). In that situation, the case would move forward through further court litigation.

**23. Are there more details about the Settlement?**
This Notice merely summarizes the proposed Settlement. You can go to the website titled www.rutherfordjuvenilesettlement.com to see the complete Settlement documents in the case and a copy of the Motion for Award of Attorneys' Fees and Costs when it is filed. In the event that any description in this Notice of the terms in the Settlement documents conflict with the actual terms of the Settlement documents, the terms of the Settlement documents control.

# Exhibit 5

## to Settlement Agreement

| | | |
|---|---|---|
| DYLAN GEERTS, ET AL.. | ) | |
|     PLAINTIFFS, | ) | NO. 3:17-1014 |
| V. | ) | |
| | ) | CRENSHAW/ HOLMES |
| RUTHERFORD COUNTY, TENNESSEE, | ) | |
|     DEFENDANT. | ) | |

---

### [proposed] ORDER GRANTING PRELIMINARY APPROVAL OF THE CLASS SETTLEMENT AGREEMENT, SETTING FAIRNESS HEARING AND APPROVING FAIRNESS HEARING NOTICE

---

Pending before the Court is the Parties' Agreed Motion for Preliminary Approval of Class Settlement Agreement and Request for Setting of Fairness Hearing and Approval of Fairness Hearing Notice (the "Motion"). (Docket No. ___.) In the Motion, which has been jointly filed and agreed to by the Parties,[1] the Court is requested to do the following: preliminarily approve the Settlement Agreement, which was attached to the Motion; set a date for the Fairness Hearing; and, approve the Notice of the Fairness Hearing attached to the Settlement Agreement.

The Court has reviewed the Motion, the Settlement Agreement and all exhibits thereto and makes the following findings:

1. The Parties joined in the Motion and seek entry of the relief requested therein. The Parties, as defined in the Settlement Agreement, are as follows: (1) plaintiffs Kazmere Watts, A.B., by and through her next friend, Sandra Brien, J.B., by and through next friend, Jacqueline Brinkley, and Dylan Geerts ("Named Plaintiffs" and/or "Class Representatives"), individually and on behalf of the Classes; and (2) defendant Rutherford County, Tennessee ("Rutherford County")

---

[1] Unless otherwise provided herein, all capitalized terms herein shall have the meanings ascribed to them in the Settlement Agreement (Doc. No. ____).

1

(collectively Named Plaintiffs/Class Representatives and Rutherford County shall be referred to as the "Parties").

2.      Named Plaintiffs, other than Dylan Geerts, filed the initial lawsuit in the United States District Court for the Middle District of Tennessee as a proposed class action (Case No. 3:16-cv-01975) with their guardians Kanisa Davis, Sandra Brien, and Jacqueline Brinkley, against Defendants Murfreesboro Police Officer Chrystal Templeton, Rutherford County, Tennessee, and the City of Murfreesboro, Tennessee. The claims against Defendant Templeton were severed, and the claims against City of Murfreesboro were dismissed, leaving Rutherford County as the sole defendant in Case No. 3:16-cv-01975.  On July 7, 2017, Dylan Geerts filed the second lawsuit against Rutherford County (Case No. 3:17-cv-1014). Following a consolidation, the two lawsuits are now proceeding together as a single case under Case No. 3:17-cv-1014. Both lawsuits are referred to herein together as the "Litigation", as defined in Section 2.30 of the Settlement Agreement.

3.      Essentially, Named Plaintiffs allege that two policies Rutherford County followed in relation to arresting and detaining juveniles violated those juveniles' state law and federal constitutional rights. First, Named Plaintiffs alleged that Rutherford County maintained a de facto policy requiring all juveniles charged with any delinquent or unruly offense be taken into custody and delivered to the Rutherford County Juvenile Detention Center ("RCJDC"). Named Plaintiffs asserted state-law false arrest claims alleging that this policy violated Tennessee state law, and in particular Tenn. Code Ann. §§ 37-1-113 and 40-7-103. Second, Named Plaintiffs alleged that Rutherford County maintained a de facto policy (sometimes called the "Filter System") of placing juveniles in secure detention at the RCJDC in violation of state law restrictions permitting secure detention of juveniles only under the circumstances set forth in Tenn. Code Ann. § 37-1-114(c).

2

Named Plaintiffs asserted federal civil rights claims under 28 U.S.C. § 1983, alleging that this policy violated their procedural and substantive due process rights under the Fourteenth Amendment to the U.S. Constitution.

4.    Named Plaintiffs, on behalf of themselves and the purported class, filed a motion seeking class action certification pursuant to Federal Rules of Civil Procedure 23(a), 23(b)(2), and 23(b)(3), and Rutherford County filed a response opposing such certification. As of the date hereof, the Court has not yet ruled on this motion. Additionally, Rutherford County has filed two motions for summary judgment, and Named Plaintiffs filed responses in opposition. The Motions for Summary Judgment remain pending as of the date hereof.

5.    The terms of the Settlement Agreement resulted from intense, court-ordered negotiations between the Parties that began in May 2019 and culminated with an agreement in principle in December 2020.  The negotiations were conducted under the supervision of a private mediator, C.A. Gonzalez, a member of the bar from Atlanta, GA.  Based upon submissions filed in this cause, the Court concludes that the Settlement Agreement was the result of an arm's length negotiation between experienced counsel for the Parties and not the product of overreaching or fraud.

6.    The Parties submitted the Settlement Agreement to the Court as an exhibit to their Motion.

7.    For purposes of settlement only: (a) Kyle Mothershead, Mark J. Downton and Frank Brazil are APPOINTED Class Counsel;  and, (b) the Named Plaintiffs are APPOINTED Class Representatives. The Court finds that these attorneys are competent and capable of exercising the responsibilities of Class Counsel and that Named Plaintiffs will adequately protect the interests of the Classes defined below. In particular, the Court finds that Class Counsel have

3

all handled complex federal court litigation involving civil rights, specifically including class action litigation against this Defendant related to its juvenile detention policies and adult probation procedures. Class Counsel's filings reflect their diligence and expertise.

8. For purpose of settlement only, the Court CONDITIONALLY CERTIFIES the following Classes as defined in the Settlement Agreement:

> The "Arrest Class" shall mean and include all persons who at any time up and until the date of the Preliminary Approval Order were taken into custody by a Rutherford County Sheriff's deputy and transported to the Rutherford County Juvenile Detention Center (RCJDC) for either a juvenile unruly or a juvenile misdemeanor delinquent offense, where (a) such person was taken into custody on or after July 26, 2016 or the person was born on or after July 26, 1998, and (b) such person meets all of the other criteria set forth in the Settlement Agreement[2]; and

---

[2] Such criteria are as follows: (1) Such person was not taken into custody pursuant to an order of the Juvenile Court directing that the person be taken into custody based on findings that a summons would be ineffective due to the particular circumstances of the person's case; (2) Such person was not charged with a delinquent offense that would have been classified as a felony under Tennessee law if the person had been an adult; (3) Where such person was taken into custody based on a misdemeanor delinquent charge, such person was not alleged to have been in the presence of law enforcement when the person committed the alleged delinquent offense for which they were arrested; (4) Such person was not taken into custody in connection with a formal allegation that such person was a neglected, dependent or abused child, and alleging that either (A) the child's detention or shelter care was required because the child was subject to an immediate threat to the child's health or safety to the extent that delay for a hearing would be likely to result in severe or irreparable harm, or (B) the child may have absconded or been removed from the jurisdiction of the court; and, in either case, (C) there was no less drastic alternative to removal of the child from the custody of the child's parent, guardian, legal custodian or the person who physically possesses or controls the child available that would reasonably and adequately protect the child's health or safety or prevent the child's removal from the jurisdiction of the court pending a hearing; (5) The records do not document that such person was, at the time of arrest, a "runaway." "Runaway" means any person under eighteen (18) years of age who is away from the home or residence of such person's parents or guardians without such parents' or guardians' consent. "Runaway" does not include persons under eighteen (18) years of age who lawfully reside with a close relative or those attending educational institutions, or those placed by court order, on a contractual agreement with a parent or guardian; (6) Such person was not charged with the offense of stalking; (7) The records do not document that such person was taken into custody based on reasonable grounds to believe that the person had attempted to commit suicide; (8) Such person was not charged with committing a traffic offense in connection with a traffic accident involving either personal injury or property damage of at least $1,000; (9) Such person was not charged with driving under the influence of an intoxicant or otherwise committing an offense under Tenn. Code Ann. § 55-10-401; (10) Such person was not charged with committed a crime involving domestic abuse; (11) The records do not allege that (A) such person was a driver in a motor vehicle accident resulting in serious bodily injury or death, or (B) such person did not have a valid driver license at the time of the accident, or (C) such person did not have evidence of financial

4

The "Detention Class" shall mean and include all persons who at any time up and until the date of the Preliminary Approval Order were on a juvenile delinquent or unruly charge admitted, subjected to and confined in secure detention at the RCJDC prior to a detention hearing, where (a) such person was born on or after October 14, 1997, or such secure detention occurred at any time from and after October 14, 2015 until the date of the Preliminary Approval Order, and (b) the person's circumstances at the time of such detention meet all the criteria set forth in the Settlement Agreement.[3]

---

responsibility at the time of the accident as required by § 55-12-139; (12) Such person was not charged with violating the terms of probation, home placement supervision, or diversion; (13) Such person was not charged with violating the terms of a valid court order; (14) The person was not alleged to be an escapee from a secure juvenile facility or institution; (15) The person was not wanted in another jurisdiction for an offense that, if committed by an adult, would be a felony in that jurisdiction; and, (16) The person was not alleged to have committed a public offense or threatened breach of the peace in the presence of law enforcement (the terms "public offense" and "breach of peace" in the Agreement carry the same meaning as the terms have in Tennessee Code Annotated § 40-7-103).

[3]Such criteria are as follows: (1) The person was not charged with a crime against a person resulting in and having as one of its statutory elements the serious injury or death of the victim or involving the likelihood of serious injury or death to such victim, or the unlawful possession of a handgun or carrying of a weapon, as prohibited by T.C.A., title 39, chapter 17, part 13, and in particular not any one or more of the following delinquent offenses (paragraph (1) shall be interpreted and applied consistently with Tennessee Code Annotated §§ 37-1-114(c)(1)(A) and (B)): Aggravated Assault, T.C.A. § 39-13-102; Vehicular Assault, T.C.A. § 39-13-106; Aggravated Vehicular Assault, T.C.A. § 39-13-115; Criminal homicide, T.C.A. § 39-13-201; First Degree murder, T.C.A. § 39-13-202; Second Degree murder, T.C.A. § 39-13-210; Voluntary manslaughter, T.C.A. § 39-13-211; Criminally negligent homicide, T.C.A. § 39-13-212; Vehicular homicide, T.C.A. § 39-13-213; Reckless homicide, T.C.A. § 39-13-215; Assisted suicide, T.C.A. § 39-13-216; Aggravated vehicular homicide, T.C.A. § 39-13-218; Robbery, T.C.A. § 39-13-401; Aggravated robbery, T.C.A. § 39-13-402; Especially aggravated robbery, T.C.A. § 39-13-403; Aggravated rape, T.C.A. § 39-13-502; Rape, T.C.A. § 39-13-503; Aggravated sexual battery, T.C.A. § 39-13-504; Sexual battery, T.C.A. § 39-13-505; Aggravated Arson, T.C.A. § 39-14-302; Prohibited weapons, T.C.A. § 39-17-1302; Unlawful carrying or possession of weapon, T.C.A. § 39-17-1307; Carrying weapons on school property, T.C.A. § 39-17-1309; Carrying weapons on public parks, playgrounds, civic centers, and other public recreational buildings and grounds, T.C.A. § 39-17-1311; Handgun possession prohibited, T.C.A. § 39-17-1319; or, Possession of handgun while under the influence, T.C.A. § 39-17-1321; (2) The person was not charged with a delinquent offense categorized as a felony under Tennessee law, probation violation, or aftercare violation while the person: was already on probation; or was already awaiting court action on a previously alleged delinquent offense; or was alleged to have escaped or absconded from a juvenile facility, institution, or other court-ordered placement; or, had, within the previous twelve months, failed to appear at any juvenile court hearing or been charged with committing a violent felony delinquent offense involving a risk of serious bodily injury or death; or, had, within the previous twelve months, been adjudicated delinquent of a felony delinquent offense; (3) No court order was issued within 24 hours of the detention, excluding nonjudicial days, documenting "special circumstances" that justified the person's secure detention based on a risk of immediate harm to the person due to issues of dependency, neglect, or abuse if they were not securely detained; (4) The person was not alleged to be an escapee from a secure juvenile

5

9. The Court preliminarily finds, subject to the Fairness Hearing to be held by this Court as described below, that solely within the context of and for the purposes of settlement only, that the Arrest Class and the Detention Class (together the "Classes", as further defined in Section 2.13 of the Agreement) satisfy the requirements of Rule 23(b) of the Federal Rules of Civil Procedure, and specifically that: the Classes are so numerous that joinder of all members is impracticable; there are questions of fact and law common to each Settlement Class; the claims of the Class Representatives are typical of the claims of the members of the Settlement Class; the Class Representatives will fairly and adequately protect the interests of the member of the Classes; common questions of law or fact predominate over questions affecting individual members; and, a class action is a superior method for fairly and efficiently adjudicating the Litigation.

10. Should the Settlement Agreement not receive the Court's final approval, should final approval be reversed on appeal, or should the Settlement Agreement otherwise fail to become effective, the Court's grant of class certification shall be vacated, and the Class Representatives would once again bear the burden of establishing the propriety of class certification. In such case, neither the certification of the Classes for settlement purposes nor any other act relating to the negotiation or execution of the Settlement Agreement shall be considered as a factor in connection with any class certification issue(s).

11. The Court also preliminarily finds that on its face the Settlement Agreement provides the Arrest Class and Detention Class with appropriate relief sought, including significant money damages. It is noted that this is a preliminary finding by the Court that is subject to further

---

facility or institution; (5) The person was not wanted in another jurisdiction for an offense that, if committed by an adult, would be a felony in that jurisdiction; and, (6) The person was not charged with violating a "valid court order" that was already in effect prior to the instant charge giving rise to the detention, and was not a runaway from another jurisdiction.

6

filings and consideration and shall not be considered final until the Court conducts a Fairness Hearing and issues a Final Approval Order. On the face of the Settlement Agreement, and if finally approved the Court, Defendant agrees to total financial payments up to a maximum amount of, and not to exceed in any event, Eleven Million Dollars and no/100 ($11,000,000.00).

a. The total financial payments include funds for a Maximum Arrest Class Settlement Fund in the sum of Five Hundred Sixteen Thousand Six Hundred and Sixty-Six Dollars and 67/100 ($516,666.67) to pay compensable arrest claims approved pursuant to the terms of the Settlement Agreement. Defendant's total payments to the Arrest Class approved claimants shall in no event exceed the amount of funds in the Maximum Arrest Class Settlement Fund. Moreover, as this is a claims-made settlement, the Arrest Class approved claimants, as a whole, may receive less than the maximum amount. However, the Arrest Class approved claimants as a whole shall in no event receive in total less than the sum of the Minimum Arrest Class Settlement Fund, which is One Hundred Twenty-Nine Thousand One Hundred and Sixty-Six Dollars and 67/100 ($129,166.67). The amount paid to the Arrest Class approved claimants will depend on the final number of Approved Arrest Claims.

b. The total financial payments include funds for a Maximum Detention Class Settlement Fund in the sum of Seven Million Two Hundred Thirty-Three Thousand Three Hundred and Thirty-Three Dollars and 33/100 ($7,233,333.33) to pay compensable detention claims approved pursuant to the terms of the Settlement Agreement. Defendant's total payments to the Detention Class approved claimants shall in no event exceed the amount of funds in the Maximum Detention Class Settlement Fund. Moreover, as this is a claims-made settlement, the Detention Class approved claimants as a whole may receive

less than the maximum amount. However, the Detention Class approved claimants, as a whole, shall in no event receive in total less than the sum of the Minimum Detention Class Settlement Fund, which is One Million Eight Hundred and Eight Thousand Three Hundred and Thirty-Three Dollars and 33/100 ($1,808,333.33). The amount paid to Detention Class Members will depend on the final number of Approved Detention Claims.

c.      The total financial payments include funds in the amount not to exceed Two Hundred Ninety Thousand Dollars and no/100 ($290,000.00) for the use of the Settlement Administration ("Settlement Administration Funds"), with Defendant in no event to be responsible for the payment of any additional funds for the administration of the settlement. Any part of the Settlement Administration Funds that are not used shall be returned to Defendant.

d.      The total financial payments include funds in the amount not to exceed One Hundred Ten Thousand Dollars ($110,000.00) as an award to reimburse Class Counsel for costs and expenses incurred in prosecuting the Litigation. Class Counsel has agreed that in no event shall their application for costs and expenses exceed this maximum amount and, in any event, it will not accept more than this maximum amount even if awarded by the Court. As part of the Settlement Agreement, Defendant has agreed that the award of costs and expenses in the foregoing amount is reasonable and will not challenge Class Counsel's application for reimbursement of costs and expenses in this amount.

e.      The total financial payments include funds in the amount not to exceed Two Million Seven Hundred Fifty Thousand and 00/100 ($2,750,000.00) for Class Counsels' fees ("Maximum Fee Award"). It should be noted that while the Parties have agreed that Class Counsel may seek a Fee Award in an amount that will in no event exceed the

Maximum Fee Award from the Court as part of the Settlement Agreement, Defendant has not agreed that the Maximum Fee Award is reasonable or appropriate, and Defendant has specifically reserved the right to object to the amount of the Fee Award sought by Class Counsel. Further, Class Counsel agrees that in no event will it seek, be entitled to, or accept a Fee Award that is greater than the Maximum Fee Award.

f.    The total financial payments include funds in the amount not to exceed, subject to the approval of the Court, Twenty-Five Thousand Dollars ($25,000.00) in service awards for each of the four (4) Named Plaintiffs in recognition of their efforts on behalf of the Classes.

12.    The Court also preliminarily finds that on its face the Settlement Agreement provides the Arrest Class and Detention Class with appropriate permanent injunctive relief. Specifically, if the Settlement Agreement is approved after the Fairness Hearing, a permanent injunction will be entered enjoining Rutherford County from using the Filter System, as defined in the Settlement Agreement, to determine whether juveniles arrested shall be detained in the Rutherford County Juvenile Detention Center pending a detention hearing conducted by the Rutherford County Juvenile Court, and enjoining Rutherford County to follow the requirements set forth in T.C.A. §37-1-114(c), as long as it is in place and remains applicable, to guide its detention decisions at Rutherford County Juvenile Detention Center prior to the detention hearing. (*See* Settlement Agreement, Section 10.2 (the "Permanent Injunction")).    This Permanent Injunction will not apply to juveniles detained at RCJDC pursuant to detention decisions made by jurisdictions outside of Rutherford County.  In addition to the Permanent Injunction, the Settlement Agreement also requires Rutherford County to provide reports and/or information to Class Counsel for monitoring purposes. (*Id.*, Section 10.3.)

9

13.     For all these reasons, the Court preliminarily finds, subject to consideration of any objections timely filed by a Class Member, argument presented at the Fairness Hearing, and any other information appropriately provided to this Court, that the Settlement Agreement is fair, reasonable and adequate to all concerned.

14.     The Settlement Agreement also describes the Notice to be provided to the Classes, how the Notice will be published, and attaches the proposed Notice as an exhibit.  (Settlement Agreement, Sections 2, 6 and 7.)[4]  The Parties move this Court to approve the Notice as part of this Motion.

15.     Following preliminary approval of a class settlement, putative class members must be notified of the settlement. *See* Fed. R. Civ. P. 23(e)(1). "The court must direct notice in a reasonable manner to all class members who would be bound by the proposal." *Id*. "[N]otice must ... fairly apprise ... prospective members of the class of the terms of the proposed settlement so that class members may come to their own conclusions about whether the settlement serves their interests." *Gooch v. Life Investors Ins. Co. of Am.*, 672 F.3d 402, 423 (6th Cir. 2012) (quoting *UAW v. Gen. Motors Corp.*, 497 F.3d 615, 630 (6th Cir. 2007) (internal quotation marks omitted)). To meet this standard, a class notice should "inform the class members of the nature of the pending action, the general terms of the settlement, that complete and detailed information is available from the court files, and that any class member may appear and be heard at the hearing." *Kinder v. Meredith Corp.*, 2016 WL 454441, at *3 (E.D. Mich. 2016) *quoting* Newburg on Class Actions § 8:17 (5th ed.).

16.     The Notice is appropriate and reasonable. It includes the following information: a brief statement of the claims released by the Classes; the date of the Fairness Hearing; a description

---

[4] The proposed Notice is attached to this Order as Exhibit 1.

of the proposed settlement; the deadline for submitting objections to the settlement; information about how to obtain a copy of the Settlement Agreement; the information that must be contained in any objection; attendance at the Fairness Hearing, including the date and time; and, contact information for all counsel to the case, along with directions to contact Class Counsel if they have any questions.

17.     Contingent upon the entry of this preliminary approval order, the Parties have contracted with Settlement Services, Inc. (SSI) to serve as the Settlement Administrator as that term is defined in the Settlement Agreement. To perform its role as Settlement Administrator, SSI necessarily must have access to information regarding potential class members that is otherwise confidential under federal or state law. The Court finds that good cause exists for SSI to have access to such confidential material to administer its roles as Settlement Administrator and the Settlement Administrator shall be bound by the Protective Order filed in the previous case number 3:16-cv-1975 as Document 95, Agreed Protective Order.

18.     The method by which the Notice is proposed to be published and/or distributed also is reasonably calculated to reach members of the Class. The Parties seek Court approval to publish and/or distribute the Notice by several means. As stated above SSI will serve as a third-party Settlement Administrator and up to $290,000.00 is to be paid by Defendants for the administration of the settlement. (*See* Settlement Agreement, §7.1.) The Settlement Administrator will, among other things, oversee providing notice of the proposed Settlement to potential Class Members. (*Id.*, §6.1.) Under the terms of the Settlement Agreement, notice will be provided in a number of ways. First, based upon a list provided by Class Counsel identifying persons they believe are likely to be Class Members (the "Class List"), the Claims Administrator shall mail the Notice, via first-class U.S. Mail to the persons on the list within ten (10) calendar days of the issuance of this Order (the

"Preliminary Approval Order"). (*Id.*, §6.2(a).) This mailing will be made to the last known address(es) of the persons on the list or updated addresses located by the Settlement Administrator using the United States Postal Service's National Change of Address database and/or LexisNexis tracing. (*Id.*) Second, the Settlement Administrator will build and host a website that includes copies of the Preliminary Approval Order, Notice and the Claim Forms for use by potential Class Members. (*Id.*, §6.2(b).) Third, the Settlement Administrator shall perform a LexisNexis trace to locate and identify e-mail addresses for the potential Class Members listed on the Class List. (*Id.*, §6.2(c).) Using the traced email addresses, the Settlement Administrator will e-mail the Notice to all potential Class Members on the Class List, and the e-mail will direct the persons to the Website for more information about the case and how to submit a claim. (*Id.*) Fourth, the Settlement Administrator shall perform a LexisNexis trace to locate cell phone numbers for the potential Class Members listed on the Class List for whom phone numbers are not already provided. (*Id.*, §6.2(d).) Using the phone numbers on the Class List or the traced phone numbers, the Settlement Administrator will attempt to send three text messages, one per day on three separate days, to each potential class member on the Class List, and the text will direct the Class Member to the Website via a hyperlink for more information about the case and how to submit a claim. (*Id.*) The Settlement Administrator shall cause to be published in the Daily News Journal (a local Rutherford County newspaper) an advertisement designed to inform readers of the general nature of this settlement and directing readers to the web address www.rutherfordjuvenilesettlement.com for full details. The advertisement shall be published in two (2) hard copy editions of the paper, with one running on a Sunday and the other running on a Wednesday. (*Id.*, §6.2(e).)

For the reasons stated herein, the Motion is **GRANTED** in whole and **IT IS HEREBY ORDERED AS FOLLOWS:**

12

1.     The Settlement Agreement is preliminarily approved subject to the Court conducting a Fairness Hearing;

2.     For purposes of the settlement only, the Court conditionally certifies the Arrest Class and Detention Class, as defined above and as set forth in the Settlement Agreement;

3.     The Fairness Hearing to consider whether the Settlement Agreement shall be finally approved is hereby set for _____;

4.     The parties proposed Notice of the Fairness Hearing, attached to this Preliminary Approval Order as Exhibit 1 and incorporated by reference, is approved;

5.     In its role as Settlement Administrator, SSI is hereby authorized to receive from Class Counsel and Defendant's Counsel the information described in the Settlement Agreement.  SSI is bound by the Protective Order filed in the previous case number 3:16-cv-1975 as Document 95, Agreed Protective Order;

6.     The parties are directed to publish and distribute the Notice and/or copies of the Settlement Agreement as follows:

   a.   Within three (3) calendar days of the issuance of this Preliminary Approval Order, Class Counsel shall provide to the Settlement Administrator, via e-mail or secure upload, an Excel spreadsheet (the "Class Spreadsheet") that includes the following information regarding the Class List:  name, last known address, phone number, social security number; parents' (or legal guardian's) name(s) as documented in the files of the Rutherford County Juvenile Court, Rutherford County Sheriff's Office, or Rutherford County Juvenile Detention Center; and, if available, e-mail addresses.

   b.   The Parties are to ensure, pursuant to their contract with the Settlement Administrator, to mail the Notice, via first-class U.S. Mail, to the persons on the list within ten (10) calendar days of the issuance of this Preliminary Approval Order.  This mailing will be made to the last known address(es) of the persons on the Class List or using updated addresses located by the Settlement Administrator using the United States Postal Service's National Change of Address database.

   c.   The Parties are to ensure, pursuant to their contract with the Settlement Administrator, that the Settlement Administrator builds and hosts a website (the

13

"Website") that includes copies of the Preliminary Approval Order, Notice and the Claim Forms for use by potential Class Members.

d.   The Parties are to ensure, pursuant to their contract with the Settlement Administrator, that the Settlement Administrator perform a LexisNexis trace to locate and identify e-mail addresses for the potential Class Members listed on the Class List.  Using the traced email addresses, the Settlement Administrator will e-mail the Notice to all potential Class Members on the Class List for whom e-mails were located, and the e-mail will direct the persons to the Website for more information about the case and how to submit a claim.

e.   The Parties are to ensure, pursuant to their contract with the Settlement Administrator, that the Settlement Administrator perform a LexisNexis trace to locate cell phone numbers for the potential Class Members listed on the Class List for who phone numbers are not already provided in the Class List.  Using the phone numbers on the Class List or the traced phone numbers, the Settlement Administrator will send three text messages, one per day on three separate days, to each potential class member on the Class List, and the text will direct the Class Member to the Website via a hyperlink for more information about the case and how to submit a claim.

f.   The Parties are to ensure, pursuant to their contract with the Settlement Administrator, that the Settlement Administrator cause to be published in the Daily News Journal (a local Rutherford County newspaper) an advertisement designed to inform readers of the general nature of this settlement and directing readers to the web address www.rutherfordjuvenilesettlement.com for full details.  The advertisement shall be published in two (2) hard copy editions of the paper, with one running on a Sunday and the other running on a Wednesday.

g.   At least fourteen (14) calendar days before the Fairness Hearing, Counsel for the Parties shall provide a declaration to the District Court attesting that Notice has been disseminated consistent with the Settlement Agreement.

IT IS SO ORDERED, this _____ day of _____, 2021.


_____
WAVERLY D. CRENSHAW, JR.
CHIEF UNITED STATES DISTRICT JUDGE

# Exhibit 6

## to Settlement Agreement

## Rutherford County Juvenile Detention Center
### Yearly Activity Report
### July 1st, 2019 - June 30th, 2020

| Items | July | Aug. | Sept. | Oct. | Nov. | Dec. | Jan. | Feb. | Mar. | April | May | June | Yearly Average |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Population Average | 19 | 18 | 21 | 22 | 20 | 17 | 16 | 17 | 18 | 11 | | | |
| Rutherford Co. Booked In | 10 | 6 | 6 | 6 | 3 | 9 | 8 | 2 | 6 | 2 | | | |
| Males | 8 | 6 | 5 | 6 | 3 | 8 | 7 | 1 | 6 | 1 | | | |
| Females | 2 | 0 | 1 | 0 | 0 | 1 | 1 | 1 | 0 | 1 | | | |
| Out of County Booked | 11 | 17 | 19 | 37 | 34 | 29 | 34 | 49 | 30 | 12 | | | |
| Males | 10 | 13 | 14 | 30 | 24 | 25 | 26 | 35 | 27 | 12 | | | |
| Females | 1 | 4 | 5 | 7 | 10 | 4 | 8 | 14 | 3 | 0 | | | |
| DCS Booked | 0 | 0 | 1 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | | | |
| Males | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | | | |
| Females | 0 | 0 | 1 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | | | |
| Rutherford Co. Bed Days | 153 | 176 | 196 | 209 | 212 | 233 | 251 | 162 | 179 | 162 | | | |
| Male Bed Days | 150 | 176 | 168 | 178 | 152 | 201 | 246 | 150 | 179 | 160 | | | |
| Female Bed Days | 3 | 0 | 28 | 31 | 60 | 32 | 5 | 12 | 0 | 2 | | | |
| Out of County Bed Days | 436 | 386 | 439 | 439 | 388 | 295 | 231 | 327 | 384 | 168 | | | |
| Male Bed Days | 414 | 357 | 407 | 392 | 309 | 270 | 200 | 290 | 378 | 168 | | | |
| Females Bed Days | 22 | 29 | 32 | 47 | 79 | 25 | 31 | 37 | 6 | 0 | | | |
| DCS Bed Days | 0 | 0 | 7 | 31 | 13 | 0 | 0 | 0 | 0 | 0 | | | |
| Males | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | | | |
| Females | 0 | 0 | 7 | 31 | 13 | 0 | 0 | 0 | 0 | 0 | | | |
| RC Released w/ Ct Date | 37 | 44 | 42 | 58 | 50 | 53 | 58 | 42 | 43 | 28 | | | |
| Detainee Assault on Staff | 4 | 0 | 0 | 1 | 1 | 0 | 0 | 0 | 0 | 0 | | | |
| Detainee on Detainee Assault | 0 | 0 | 1 | 0 | 0 | 0 | 0 | 0 | 0 | 1 | | | |
| O.C. Spray Administered | 4 | 0 | 1 | 2 | 1 | 0 | 0 | 0 | 0 | 1 | | | |
| Behavior Intervention | 86 | 23 | 28 | 23 | 9 | 38 | 0 | 5 | 8 | 0 | | | |
| Nurse Call (# seen) | 93 | 48 | 89 | 37 | 47 | 67 | 36 | 34 | 29 | 15 | | | |
| Detainees w/ Rx's (avg.) | 7 | 7 | 10 | 9 | 8 | 6 | 6 | 7 | 5 | 3 | | | |
| Doctor Visits | 1 | 0 | 3 | 6 | 3 | 5 | 0 | 5 | 0 | 0 | | | |
| Emergency Room | 3 | 1 | 1 | 2 | 1 | 1 | 1 | 0 | 0 | 0 | | | |
| Other Transports | 1 | 1 | 0 | 2 | 0 | 0 | 0 | 0 | 0 | 0 | | | |
| Juvenile Court (avg.) | 1 | 2 | 1 | 1 | 1 | 2 | 2 | 1 | 1 | 1 | | | |
| Petitions filed with JC | 19 | 13 | 34 | 30 | 24 | 19 | 19 | 24 | 30 | 13 | | | |
| RCJDC Programming | 163 | 136 | 106 | 132 | 127 | 125 | 165 | 115 | 169 | 98 | | | |
| Attended Church | 23 | 23 | 15 | 21 | 13 | 15 | 27 | 22 | 5 | 8 | | | |
| Population Meals | 1,717 | 1,601 | 1,844 | 1,886 | 1,681 | 1,435 | 1,283 | 1,280 | 1,527 | 944 | | | |

| Month | Agencies Billed | Agencies Received | | Billed YTD | Received YTD |
|---|---|---|---|---|---|
| July | $73,500 | $63,700 | | $73,500 | $63,700 |
| August | $64,750 | $9,800 | | $138,250 | $73,500 |
| September | $73,150 | $131,950 | | $211,400 | $205,450 |
| October | $75,425 | $8,400 | | $286,825 | $213,850 |
| November | $62,825 | $73,325 | | $349,650 | $287,175 |
| December | $46,550 | $70,000 | | $396,200 | $357,175 |
| January | $34,125 | $32,550 | | $430,325 | $389,725 |
| February | $50,225 | $32,025 | | $480,550 | $421,750 |
| March | $61,292 | $67,942 | | $541,842 | $489,692 |
| April | $27,300 | $42,875 | | $569,142 | $532,567 |
| April | | | | | |
| May | | | | | |
| June | | | | | |

Billing Date: 05/07/2020

Balances Due: TN DCS $8,575 + Gibson $1,575 + Marshall $175 + Montgomery $17,325 + Moore $525 + Robertson $1,050 + Sumner $7,350



# Rutherford County Juvenile Detention Center
## RAP Sheet

## Detained

Key: * Felony

| Charges | In Co. SPD | In Co. LPD | Gibson | Montgomery | Robertson | Sumner |
|---|---|---|---|---|---|---|
| **April-20** | | | | | | |
| Agg. Assault* | 1 | | | | | |
| Agg. Robbery* | | | | | | 2 |
| Attempted Murder* | | | 2 | | | |
| Burglary* | | | | 1 | | |
| Domestic Assault | | | | 1 | | |
| False Report to Officer* | | | | | | 1 |
| Murder* | | | | 2 | | |
| Poss. of a Handgun | | 1 | | | | |
| Reckless Endangerment* | | | | | 2 | |
| Theft over $1,000* | | | | 2 | | |
| **April-20** | SPD | LPD | Gibson | Montgomery | Robertson | Sumner |
| **Department Totals** | 1 | 1 | 2 | 6 | 2 | 3 |

## Released

Key: * Felony

| Charges | In County MPD | RCSO | SPD | LPD | Guardian | NCIC |
|---|---|---|---|---|---|---|
| **April-20** | | | | | | |
| Agg. Burglary* | | | 5 | | | |
| Assault | 2 | | | | | |
| Burglary to Auto* | 1 | | | | | |
| Burglary* | 4 | | | | | |
| Domestic Assault | 1 | 2 | | 2 | | |
| DWI | | | 1 | 1 | | |
| Evading Arrest | | 1 | | | | |
| False Report to Officer* | | 1 | | | | |
| Felony Poss. of Marijuana* | | | | 2 | | |
| Robbery* | 2 | | | | | |
| Runaway | | | | | 1 | 1 |
| Simple Poss. of Marijuana | | | 1 | | | |
| **April-20** | MPD | RCSO | SPD | LPD | Guardian | NCIC |
| **Department Totals** | 10 | 4 | 7 | 5 | 1 | 1 |

# Rutherford County Juvenile Detention Center
## STD Stats: April 2020

**Key: C | G | CG = Positive for Chlamydia | Gonorrhea | Chlamydia & Gonorrhea**

| | | Total Tested | | | | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | **Age:** | **14** | | | **15** | | | **16** | | | **17** | | | **18** | | | **Total** |
| **White** | Total Tested: | 1 | | | 1 | | | 1 | | | 1 | | | 0 | | | 4 | | |
| | C \| G \| CG: | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| **Black** | Total Tested: | 0 | | | 1 | | | 5 | | | 1 | | | 0 | | | 7 | | |
| | C \| G \| CG: | 0 | 0 | 0 | 0 | 0 | 0 | 1 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 1 | 0 | 0 |
| **Hispanic** | Total Tested: | 0 | | | 0 | | | 0 | | | 0 | | | 0 | | | 0 | | |
| | C \| G \| CG: | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| **Asian** | Total Tested: | 0 | | | 0 | | | 0 | | | 0 | | | 0 | | | 0 | | |
| | C \| G \| CG: | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| **Other** | Total Tested: | 0 | | | 0 | | | 0 | | | 0 | | | 0 | | | 0 | | |
| | C \| G \| CG: | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| **Males — Total Tested:** | | 1 | | | 2 | | | 6 | | | 2 | | | 0 | | | 11 | | |
| **Total C \| G \| CG:** | | 0 | 0 | 0 | 0 | 0 | 0 | 1 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 1 | 0 | 0 |
| **White** | Total Tested: | 1 | | | 0 | | | 0 | | | 0 | | | 0 | | | 1 | | |
| | C \| G \| CG: | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| **Black** | Total Tested: | 0 | | | 0 | | | 0 | | | 0 | | | 0 | | | 0 | | |
| | C \| G \| CG: | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| **Hispanic** | Total Tested: | 0 | | | 0 | | | 0 | | | 0 | | | 0 | | | 0 | | |
| | C \| G \| CG: | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| **Asian** | Total Tested: | 0 | | | 0 | | | 0 | | | 0 | | | 0 | | | 0 | | |
| | C \| G \| CG: | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| **Other** | Total Tested: | 0 | | | 0 | | | 0 | | | 0 | | | 0 | | | 0 | | |
| | C \| G \| CG: | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| **Females — Total Tested:** | | 1 | | | 0 | | | 0 | | | 0 | | | 0 | | | 1 | | |
| **Total C \| G \| CG:** | | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| **Total — Total Tested:** | | 2 | | | 2 | | | 6 | | | 2 | | | 0 | | | 12 | | |
| **Total C \| G \| CG:** | | 0 | 0 | 0 | 0 | 0 | 0 | 1 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 1 | 0 | 0 |

### April 2020
**Positive Result Percentage Per Age Group**

| Age | Percentage |
|---|---|
| 14 | 0.00% |
| 15 | 0.00% |
| 16 | 16.67% |
| 17 | 0.00% |
| 18 | 0.00% |
| Total: | 8.33% |

### Fiscal Year 2019 - 2020

| | Total Tested | Positive Percentage |
|---|---|---|
| July | 18 | 22.22% |
| August | 16 | 6.25% |
| September | 22 | 4.55% |
| October | 30 | 13.33% |
| November | 32 | 6.25% |
| December | 28 | 7.14% |
| January | 30 | 20.00% |
| February | 34 | 14.71% |
| March | 25 | 8.00% |
| April | 12 | 8.33% |
| May | 0 | 0.00% |
| June | 0 | 0.00% |
| Total | 247 | 11.34% |

# Rutherford County Juvenile Detention Center
## Facility Programming
### Apr-20

### Life Skills

**Purpose:** *In a constantly changing environment, having life skills is an essential part of being able to meet the challenges of everyday life.*

| Date | Instructor | Topic | Males | Females | Total |
|------|-----------|-------|-------|---------|-------|
| 1-Apr | Mike Davis - JDC | Knowledge & Wisdom | 5 | 0 | 5 |
| 2-Apr | Garland/Mike - JDC | Staying Focus Exercise | 2 | 0 | 2 |
| 7-Apr | Mike Davis - JDC | Stopping Bad Habits | 3 | 0 | 3 |
| 9-Apr | Garland/Mike - JDC | Staying Focus Exercise | 3 | 0 | 3 |
| 9-Apr | Mike Davis - JDC | Stopping Bad Habits | 3 | 0 | 3 |
| 14-Apr | Garland/Mike - JDC | Staying Focus Exercise | 5 | 0 | 5 |
| 14-Apr | Mike Davis - JDC | Benefits In Challenges | 3 | 0 | 3 |
| 15-Apr | Mike Davis - JDC | Stopping Bad Habits #2 | 2 | 0 | 2 |
| 16-Apr | Garland/Mike - JDC | Staying Focus Exercise | 4 | 0 | 4 |
| 19-Apr | Mike Davis - JDC | Influence of Music | 7 | 0 | 7 |
| 22-Apr | Garland Henley - JDC | Staying Focus Exercise | 4 | 0 | 4 |
| 23-Apr | Garland/Mike - JDC | Staying Focus Exercise | 4 | 0 | 4 |
| 24-Apr | Garland Henley - JDC | What I Must Change | 2 | 0 | 2 |
| 26-Apr | Mike Davis - JDC | Defining Believe | 5 | 0 | 5 |
| 28-Apr | Garland/Mike - JDC | Staying Focus Exercise | 8 | 0 | 8 |
| 30-Apr | Garland Henley - JDC | What IIt Takes to Succeed | 2 | 0 | 2 |

### 1-On-1 Counselling

**Purpose:** *Allows detainees to speak about the more personal things going on in their lives, privately.*

| Date | Instructor | Topic | Males | Females | Total |
|------|-----------|-------|-------|---------|-------|
| April | Mike Davis - JDC | Self-Reflection | 8 | 0 | 8 |
| April | LaShundra Wynn - VBH | Emotional Support | 5 | 0 | 5 |

### VR Goggles

**Purpose:** *Using virtural reality to assist in the learning of the detainees. The virtual reality goggles allows the detainees to experience learning outside the walls of the detention center.*

| Date | Instructor | Topic | Males | Females | Total |
|------|-----------|-------|-------|---------|-------|
| 21-Apr | Garland Henley - JDC | Educational | 4 | 0 | 4 |

| Computer Lab | | | | | |
|---|---|---|---|---|---|
| **Purpose:** Provides the detainees with online learning opportunities and high school credit recovery access. | | | | | |
| Date | Instructor | Topic | Males | Females | Total |
| Mar. | EA Traci Parra - JDC | Online School | 2 | 0 | 2 |
| Mar. | Natasha Roberts - JDC | Sipplemental Ed. | 2 | 0 | 2 |
| Mar. | Germayle Franklin - JDC | Basic Education | 6 | 0 | 6 |
| Mar. | Garland Henley - JDC | College Course | 1 | 0 | 1 |

*\*\*A total of 5 detainees have completed their high school requirements and graduated high school while being detained in RCJDC since July 2019.*

*RCJDC has a youth who, while in custody, obtained his High School Diploma and is continuing his post secondary education with on-line College Courses to acheive his Associates Degree in Business Administration.*

| Religious Services | | | | | |
|---|---|---|---|---|---|
| **Purpose:** To provide the detainees with weekly access to an optional religious service. | | | | | |
| Dates | Instructor | Topic | Males | Females | Total |
| 5-Apr | Mike Davis - JDC | Bible Study (Mark 5:1-20) | 5 | 0 | 5 |
| 6-Apr | Mike Davis - JDC | Bible Study (Mark 5:1-20) | 3 | 0 | 3 |

| Month | Monthly Programming Numbers Totals | | Totals | Total For |
|---|---|---|---|---|
| July | 163 | January | 165 | Fiscal |
| August | 136 | February | 115 | Year |
| September | 103 | March | 169 | 19 - 20 |
| October | 132 | April | 98 | |
| November | 127 | May | | |
| December | 125 | June | | |